UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YELLOWSTONE POKY, LLC, an Idaho Limited Liability Company, | Case No. 4:16-cv-00316-BLW |
| Plaintiff, | **ORDER STAYING CASE** |
| v. | |
| FIRST POCATELLO ASSOCIATES, L.P., | |
| Defendant. | |
| FIRST POCATELLO ASSOCIATES, L.P., | |
| Counterclaimant, | |
| v. | |
| YELLOWSTONE POKY, LLC, an Idaho Limited Liability Company, and FEATHERSTON HOLDINGS, INC. | |
| Counterdefendant. | |

Defendant First Pocatello Associates, L.P., brought to the Court's attention, through a Motion to Dismiss pursuant to Rule 12(b)(1) (Dkt. 30), that Plaintiff's predecessor-in-interest, Featherston Holdings, Inc. ("FHI"), is a tax-suspended California corporation. Proceedings are pending to revive FHI's corporate status. The Court now considers, *sua sponte*, whether to order a brief stay to allow FHI to pursue reinstatement before considering the pending Motion to Dismiss (Dkt. 30).

## BACKGROUND

This action arises out of an alleged real estate purchase and sale agreement (the "Agreement") between Defendant First Pocatello Associates, L.P., and Featherston Holdings, Inc., a California corporation.[1] FHI allegedly assigned its interest in the Agreement to Yellowstone Poky, LLC, the Plaintiff in this lawsuit. Yellowstone Poky alleges that First Pocatello failed to perform its obligations under the contract and brings claims for breach of contract, unjust enrichment, and promissory estoppel.

On September 30, 2016, First Pocatello filed a Motion to Dismiss for Lack of Jurisdiction under Rule 12(b)(1) (Dkt. 30). Defendant argues primarily that Yellowstone Poky lacks standing to pursue the present action because its predecessor-in-interest, FHI, is a tax-suspended California corporation. The argument is twofold. First, Defendant argues that as a suspended corporation, FHI lacked the capacity to enter into the Agreement and thus it is unenforceable. Therefore, Defendant argues, Yellowstone Poky was not assigned a "legally protected interest" in the Agreement and can show no "injury in fact" necessary to confer standing. The second argument rests on the fact that FHI, as a suspended California corporation, cannot sue or defend a lawsuit. Defendant argues that Yellowstone Poky, as the purported assignee of FHI, is subject to the same defense and

---

[1] The Court recognizes that the parties dispute whether Featherston Holdings, Inc. was an intended party to the alleged agreement. For the purposes of this Order, the Court assumes, but does not decide, that FHI was a party.

(Continued)

therefore lacks "standing" to bring this lawsuit.[2] *See Cal-W. Bus. Servs., Inc. v. Coming Capital Grp.*, 163 Cal. Rptr. 3d 911, 917 (Cal. Ct. App. 2013). If Defendant is correct, this Court lacks subject matter jurisdiction over the lawsuit.

In its response brief, Plaintiff informed the court that proceedings are pending to obtain a "Certificate of Revivor" from the California Franchise Tax Board, which would reinstate FHI's corporate status. The central disagreement between the parties concerns the effect a successful reinstatement would have on Plaintiff's Motion to Dismiss under Rule 12(b)(1). Defendant argues that a Certificate of Revivor would not validate the alleged Agreement or standing deficiencies, meaning a stay would be futile. Plaintiff disagrees, arguing that reinstatement of FHI's corporate rights would retroactively cure the voidability of the agreement and reinstate Yellowstone Poky's capacity to sue

## LEGAL STANDARD

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935). In considering whether to issue a stay, the Court must weigh several "competing interests . . . , [including] the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the

---

[2] This argument is more appropriately characterized as a challenge to Yellowstone Poky's "capacity to sue" under Federal Rule of Civil Procedure 17(b)(2). *See Color–Vue, Inc. v. Abrams*, 52 Cal. Rptr. 2d 443 (Cal. Ct. App. 1996) ("Suspension of corporate powers results in a lack of capacity to sue, not a lack of standing to sue.") (citing *Traub Co. v. Coffee Break Service, Inc.* 425 P.2d 790 (Cal. 1967)); *see also* 6A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure, § 1559 ("Capacity [to sue under Rule 17(b)] has been defined as a party's personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest.").

simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

## DISCUSSION

### 1.   Judicial Economy Favors a Stay

First, the Court must consider whether a stay would further "the orderly course of justice" by simplifying issues, proof, and questions of law in this case. *CMAX*, 300 F.2d at 268. The Court finds that principles of judicial economy strongly dictate in favor of a stay, as a successful reinstatement of FHI's corporate status would render Plaintiff's 12(b)(1) Motion largely moot.

### A.   *Effect of Revival on Plaintiff's Capacity to Sue*

A corporation's capacity to sue or be sued is determined "by the law under which it was organized." Fed. R. Civ. P. 17(b). Under California law, a California corporation whose powers have been suspended for failure to pay taxes lacks the capacity to sue or defend a lawsuit. *See Bourhis v. Lord*, 295 P.3d 895 (Cal. 2013); Cal. Rev. & Tax Code § 23301. However, the California Supreme Court has held that once a suspended corporation pays its taxes and obtains a Certificate of Revivor, the corporation may continue an action filed during the period of suspension and not previously dismissed. *See Peacock Hill Assn. v. Peacock Lagoon Constr. Co.*, 503 P.2d 285 (Cal. 1972) ("[Our] authorities make clear that as to matters occurring prior to judgment the revival of corporate powers has the effect of validating the earlier acts and permitting the corporation to proceed with the action.").

Therefore, the Court finds that a successful reinstatement of FHI's corporate status

would render moot the challenge to Yellowstone Poky's capacity to sue.

### B.    *Effect of Revival on Validity of the Purported Agreement*

Under California law, contracts entered into during the time of suspension are "voidable at the request of any party to the contract other than the taxpayer." Cal. Rev. & Tax. Code § 23304.1(a). However, the 1990 amendments to this statute made clear that the rights under a contract made while a corporation is suspended are not affected "except to the extent expressly provided by a final judgment of the court, which shall not be issued unless the taxpayer is allowed a reasonable opportunity to cure the voidability." Cal. Rev. & Tax. Code § 23304.5; *see also id.* § 23305.1 (setting forth the requirements for obtaining a "Certificate of Relief from Voidability" from the California Franchise Tax Board); Arthur F. Coon, *Dead or Revived? An Examination of California Revivor Law's Terminal Void in Corporate Existence*, 24 Pac. L.J 1, 13–17 (1992) (noting that California, in contrast with other states, clearly permits retroactive validation of contracts entered into during suspension). By California statute, therefore, contracts made during suspension remain in full force and are merely voidable at the other party's instance. Suspension does not deprive a corporation of the capacity to contract.

Defendant ignores the plain language of the statute, focusing instead on case law interpreting the retroactive validation of other non-contractual corporate acts. Such acts are generally retroactively valid, subject to a broad savings clause, which states that a corporation's reinstatement is:

without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture, *except that contracts which were voidable pursuant to Section 23304.1, but which have not been rescinded pursuant to Section 23304.5, may have that voidability cured in accordance with Section 23305.1.*

Cal. Rev. & Tax. Code § 23305a (emphasis of contract exception added).

In interpreting the scope of that savings clause, California courts apply a substantive-procedural distinction to determine which acts can be retroactively validated. The great majority of these cases deal with the effect of reinstatement on steps taken by a corporation in pending litigation, and thus they leave open the applicability of a substantive-procedural distinction in other areas. More importantly, however, the savings clause and this line of cases is simply inapplicable to contracts entered into during suspension. The savings clause expressly excludes contracts from its scope, as stated by the italicized portion of the savings clause reproduced above. The reinstatement of contract rights is governed by the more specific provisions of Sections 23304.1, 23304.5, and 23305.1.

Here, Yellowstone Poky has not sought to void the parties' purported Agreement. Under California law, therefore FHI's suspension did not render unenforceable any "legally protected" interest Yellowstone Poky may have in the purported Agreement. Furthermore, any claim regarding the voidability of the Agreement would be rendered moot by FHI's reinstatement.

There appears to be some dispute as to whether the question of FHI's capacity to

contract should be decided by reference to Idaho or California law.[3] However, the Court reaches the same conclusion under the law of either jurisdiction. The parties point to no provision under Idaho Law that would deprive FHI of its capacity to contract under the circumstances. First Pocatello skips a step when pointing out that "Idaho law [provides] . . . no cure for Plaintiff's lack of capacity to enter into or assign the Agreement." *Def. Resp. to Pl. Mot. to Supplement* at 8–9, Dkt. 37. Defendant has not cited and the Court is not aware of an Idaho law that would render FHI incapable to contract in the first instance. Idaho's corporate suspension statute applies only to "[a] domestic filing entity that is dissolved administratively under section 30-21-602, Idaho Code." I.C. § 30-21-603. FHI, as a California corporation, would not fall within the purview of that statute. It is conceivable that Idaho courts would determine a foreign corporation's capacity to contract by reference to the local law of the state of incorporation. In that case, one returns to the conclusion above that California law does not deprive a tax-suspended

---

[3] The Court need not reach the more difficult choice of law question: that is, whether FHI's capacity to contract should be determined by reference to Idaho or California law. Choice of law principles suggest, however, that California law should apply to the question of FHI's capacity to contract. The validity of a land sale contract is generally governed by the law where the land is situated—here, Idaho. In contrast, the substantive law governing the powers of a corporation are generally derived from the state in which it was incorporated—here, California. *See* Restatement (Second) of Conflict of Laws § 299 (1971) ("The termination or suspension by the state of incorporation will be recognized for most purposes by other states."). Furthermore, courts often determine contractual capacity by applying the law of the party's domicile or place of incorporation, rather than the law that would otherwise govern the contract's validity, based on the respective interests of the two states. *See id.* § 301. Here, Idaho has no policy interest in penalizing a California corporation for failure to pay California taxes, especially where that corporation has been reinstated and California would impose no such penalty. Furthermore, California's policy interest in inducing tax payments is best served by allowing a corporation to cure its suspension by payment of back taxes. *See Cadle Co. v. World Wide Hospitality Furniture, Inc.*, 50 Cal. Rptr.3d 480, 486 (2006) ("The suspension statutes are not intended to be punitive. Once the statutory goals underlying suspension are met, no purpose is served by imposing additional penalties.").

entity of the capacity to contract.

In summary, the reinstatement of FHI's corporate status may very well moot the issues of capacity to sue and contract presented in Defendant's Motion to Dismiss. In the interests of judicial economy, and to prevent the parties from incurring unnecessary litigation costs, the Court finds that this first factor weighs in favor of granting stay.

## 2.    Balance of Hardships Favors a Stay

The Court must also balance the "possible damage [to Defendant] which may result from the granting of a stay," with "the hardship or inequity which [Plaintiff] may suffer in being required to go forward." *CMAX*, 300 F.2d at 268. Here, any hardship or prejudice to Defendant would be minimal, because the duration of the stay would be brief. The Court finds that four (4) weeks would be sufficient time for FHI to pursue reinstatement, especially given that Plaintiff has been on notice of the corporate status issue since at least August 18, 2016, when First Pocatello filed its Answer and Counterclaim.

On the other hand, Defendant faces the prospect of significant hardship if the stay is not granted. FHI's present corporate status could well deprive Yellowstone Poky of standing to pursue its case and require the Court to dismiss the present action. Furthermore, a dismissal for lack of jurisdiction should ordinarily be without prejudice to renew. Thus, dismissing the case would impose upon Yellowstone Poky the burden of filing a new complaint and potentially subject the court and all parties to duplicative proceedings.

### 3.     California Policy and Principles of Comity

Finally, principles of comity also counsel in favor of a brief stay. When a corporation's status comes to light, "the normal practice is for the [California] trial court to permit a short continuance to enable the suspended corporation to effect reinstatement (by paying back taxes, interest and penalties) to defend itself in court." *Timberline, Inc. v. Jaisinghani*, 64 Cal. Rptr. 2d 4, 6–7 (Cal. Ct. App. 1997) (citing *Schwartz v. Magyar House, Inc.*, 335 P.2d 487 (Cal. 1959)). Furthermore, the Ninth Circuit has held on at least one occasion that it is an abuse of discretion to deny a corporation's request for a continuance in such circumstances. *United States v. 2.61 Acres of Land, More or Less, Situated in Mariposa Cty., State of Cal.*, 791 F.2d 666, 671 (9th Cir. 1985).

Allowing FHI to pursue reinstatement is also consistent with California courts' interpretation of the purpose of corporate suspension—"to put pressure on the delinquent corporation to pay its taxes" but not to punish the corporation once it has done so. *See Peacock Hill Assoc. v. Peacock Lagoon Constr. Co.*, 503 P.2d 285, 286 (Cal. 1972); *accord Traub Co. v. Coffee Break Service, Inc.*, 425 P.2d 790 (Cal. 1967) (finding that "lack of capacity of a corporation to maintain an action by reason of suspension of corporate powers for nonpayment of taxes is a plea in abatement which is not favored in the law[.]").

### CONCLUSION

The Court finds, *sua sponte*, that a brief stay is warranted in light of the distinct possibility of mootness, the principle of judicial economy, the balance of hardships to the parties, and the policy interest underlying California's suspension law.

# ORDER

**IT IS HEREBY ORDERED:**

1.      This action shall be **STAYED** until December 5, 2016. During the stay, the parties shall refrain from potentially unnecessary expense and responsive briefing.

2.      Plaintiff is directed to provide the Court with a status report within four (4) days of FHI's receipt of a Certificate of Revivor or other competent evidence proving that FHI's corporate powers have been reinstated. Plaintiff shall provide a status report on or before December 5, 2016 if the matter has not been resolved by that date. Plaintiff's status report shall include a declaration and supporting documentation showing what notices were sent by the Secretary of State, the California Franchise Tax Board, or by any other entity regarding FHI's suspension. Plaintiff may file the accompanying documentation under seal, if necessary, to protect its privacy.

3.      The motion hearing currently set for November 10, 2016 is **VACATED**.

DATED: November 7, 2016

B. Lynn Winmill
Chief Judge
United States District Court