Jeffrey D. Brunson, ISB No. 6996
John M. Avondet, ISB No. 7438
BEARD ST. CLAIR GAFFNEY PA
2105 Coronado Street
Idaho Falls, Idaho 83404-7495
Telephone: (208) 523-5171
Facsimile: (208) 529-9732
Email: jeff@beardstclair.com
       javondet@beardstclair.com

Attorneys for the Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| YELLOWSTONE POKY, LLC, an Idaho Limited Liability Company, and FEATHERSTON HOLDINGS, INC.;<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST POCATELLO ASSOCIATES, L.P.,<br><br>Defendant.<br><br>FIRST POCATELLO ASSOCIATES, L.P.,<br><br>Counterclaimant,<br><br>vs.<br><br>YELLOWSTONE POKY, LLC, and FEATHERSTON HOLDINGS, INC.,<br><br>Counterdefendants. | Case No.: 4:16-cv-00316-BLW<br><br>FIRST AMENDED COMPLAINT AND JURY DEMAND |

First Amended Complaint and Jury Demand - 1

The Plaintiff, Yellowstone Poky, LLC (Yellowstone Poky), through counsel of record, Beard St. Clair Gaffney PA, complain against the Defendant, First Pocatello Associates, LP, (FPA), as follows:

## PARTIES

1. Yellowstone Poky, LLC is an Idaho limited liability company licensed and authorized to do business in Idaho.

2. Featherston Holdings, Inc., is a California corporation.

3. FPA is a New Jersey Limited Partnership authorized to do business within the state of Idaho.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the parties and this dispute pursuant to Idaho Code Section 5-514.

5. This is the proper venue pursuant to Idaho Code Sections 5-401 and 5-404.

6. The amount at issue in this case exceeds $10,000.00; therefore, jurisdiction is proper in district court.

## FACTUAL ALLEGATIONS

7. FPA is the owner of real property located in Bannock County, Idaho, at 669 Quinn Road, Pocatello, Idaho 83201 (the Property). The property is approximately 150 acres in size, contains 24 buildings, and is a commercial property with tenants. The legal description for the property is contained and set forth in Exhibit A attached hereto. Exhibit A is incorporated by reference as if full set forth herein.

8. Featherston Holdings or Assigns began negotiating the purchase and sale of the Property with FPA in December 2015. Roger Featherston is the principal owner and member of Featherston Holdings, Inc., a California corporation

9. On December 24, 2015, FPA and Featherston Holdings or Assigns, (Featherston) entered into a Real Estate Purchase and Sale Agreement (the Agreement) pertaining to the property. In the Agreement, Featherston agreed to purchase the property for the price of $19,000,000.00 and agreed to pay $225,000.00 as earnest money to be held in escrow by First American Title Company. The Agreement sets the date for the transaction to close as June 28, 2016.

10. FPA raised the purchase price from $19,000,000.00 to $21,000,000.00 on or about December 30, 2015. FPA's authorized agent initialed the changes in the Agreement's terms and Featherston was not made aware of the changes until January 23, 2016.

11. In January 2016, Featherston and his associates toured buildings 10, 16, and 38 located on the Property with Earl Swift, FPA's authorized agent. FPA provided Featherston with limited documents that included only five drawings of the facilities located on the Property.

12. In late January 2016, Featherston contacted anchor tenants from the facilities that were not part of the Agreement to see if they were interest in being purchased as well.

13. Featherston later received drawing of underground utilities from FPA. Swift claimed all the other files were in New Jersey and wrote that everything needed to be requested through the New Jersey office. On information and belief, Swift's

First Amended Complaint and Jury Demand - 3

representations were not correct and the documents Featherston requested are available through the Idaho-based offices.

14. Swift specifically represented to Featherston that he would provide Featherston with traditional bank and institutional lending documents. FPA has never provided this information to Featherston or any of its assigns. Swift did provide access to some documents through dropbox but those documents do not include the original agreement and addendums. Featherston has offered to go back to NJ to help with copying and documenting, but Swift has ignored the requests.

15. In February 2016, FPA entered into new lease agreement with SME Steele, a tenant, in derogation and breach of its contractual obligations arising under the Agreement. The original SME lease agreement was a four-year lease agreement at rates 50% below market.

16. Also, in February 2016, Featherston sent FPA a list of requesting environmental documents, business bank statements, tax returns, estoppels from the tenants, and the remaining 17 leases for tenants of the Property. FPA has only provided Featherston with 18 of the 35 known lease agreements.

17. On February 29, 2016, FPA informed Featherston that it would not release the 17 other lease agreements, balance sheets, or cost/expenses ledgers. Up to that point, Featherston had received only a five-year consolidated expense sheet with entries until October 2015 and failed to identify the individual or company that prepared the consolidated expense sheet. Featherston then requested and profit/loss sheet. The information provided was nonsensical, listing utilities as both income and expenses and

First Amended Complaint and Jury Demand - 4

overstating income. Featherston later received one year of bills from FPA and Idaho Power. The bills established that FPA lost $250,000 on electricity.

18. Featherston sat in on a meeting between Swift and eight Idaho Power representatives where the Idaho Power representatives presented a proposal for $4,500 worth of changes. Featherston requested that no infrastructure changes be made according to the Agreement. The transaction's Broker acknowledged in writing that they would not proceed with any infrastructure changes or construction. However, notwithstanding the representations by the Broker and FPA Roger Featherston discovered during the week of June 20, 2016, that trench work was performed and a new panel was put up on building 10.

19. Featherston received electricity and water details for the year 2014, but did not receive all the required documentation. He also requested information about the specific pesticides used each spring, which amount to $2400 in costs. He also asked for a list of motorized vehicles, forklifts, scissor lifts, locomotive engine, snowplows, backhoe. He has also requested titles and car key locations, as the inventory provided by FPA is inadequate.

20. In May 2016, Featherston signed for environmental package from FPA. The cover letter stated that FPA had received it at an earlier date. It was the first documentation he received with expanded balance sheets for 2014-2015. The package did not contain a single, environmental document dated in the 2000s, with the most current document being dated in January 1997. The information was not useful to the due diligence process because Featherston required information for the immediately preceding three-years.

21. The Agreement provides for a period of time in which Featherston can perform due diligence pertaining to the sale. The Agreement provides deadlines for the performance of due diligence. The Agreement provides a due diligence deadline of 90 days following the signing of the Agreement and also states that Featherston has a one-time option to extend the due diligence deadline for sixty days with five-day written notice.

22. Section 15 of the Agreement requires that FPA disclose and provide copies if available to Featherston of "any studies and/or reports that have previously been performed in connection with or for the PROPERTY, including without limitation, environmental reports, soil studies, seismic studies, site plans and surveys." Section 15 also requires disclosure of "any notices relating to a violation of applicable law including, without limitation, environmental law and laws relating to land use, zoning or compliance with building codes."

23. Section 17 of the Agreement provides Featherston with a right of due diligence for Featherston. Featherston possessed the right to perform tests, investigations, surveys, and other activities to perform his due diligence. Featherston also had the right to request additional documents from FPA.

24. Section 20 prohibits FPA during the pendency of the Agreement, from executing leases or modifying existing leases, making substantial alterations or improvements to the Property, and creating new monetary obligations or liens on the property.

25. The parties executed a First Addendum to the Agreement on December 30, 2015, wherein the purchase price was increased to $21,000,000.00.

26. On December 31, 2015, the parties executed a Second Addendum to the Agreement.

27. The parties prepared two additional addenda to the Agreement, one with an effective date of December 23, 2015 and another with effective date of December 30, 2015. The addenda were not signed by the parties.

28. The parties prepared a document entitled Addendum No. 4 to Real Estate Purchase and Sales Agreement, effective December 30, 2015, wherein the parties modified the earnest money paragraph to provide that Featherston had an option to extend the due diligence deadline by sixty days by paying $125,000.00 as Earnest money.

29. Featherston Holdings, Inc. assigned and transferred all of its interest in the Agreement to Yellowstone Poky. Roger Featherston is the principal owner and manager of Yellowstone Poky and the president of Featherston Holdings, Inc. Roger Featherston has authority to bind both entities. Roger Featherston entered into the assignment on behalf of Featherston Holdings, Inc. and assigned and transferred all of Featherston Holdings' interest in the Agreement effective March 15, 2016.

30. Featherston Holdings, Inc. has appeared as a Counterdefendant in these proceedings. Should it be determined that the assignment is somehow invalid or that Yellowstone Poky otherwise lacks standing, Featherston Holdings, Inc. shall be designated as a Plaintiff in this action. This allegation is made in the alternative as Yellowstone Poky maintains it has standing. However, there is no prejudice to any party making Featherston Holdings, Inc. a Plaintiff as it is already a party to these proceedings. To the extent the allegations in this Complaint refer solely to Yellowstone Poky it is intended to collectively refer to Yellowstone Poky and Featherston Holdings, Inc.

31. Roger Featherston paid an additional $125,000.00 to FPA in earnest money to extend the due diligence deadline.

32. Following the execution of the Agreement, Yellowstone Poky attempted to collect documents pertaining to the Property from FPA in order to conduct its due diligence. Yellowstone Poky made several requests for information pertaining to the due diligence and FPA has refused to provide the information requested.

33. FPA failed to provide its Seller Disclosures within 20 days of entering into the Agreement as identified in Section 15.

34. FPA has not produced information identified in Section 15(a) or 15(b) of the Agreement.

35. FPA produced only a small number of leases notwithstanding the fact that the Property has a number of tenants occupying various parts of the Property. Yellowstone Poky has requested information about the status of those tenants and their respective leases; yet, nothing has been produced by FPA.

36. FPA has failed to produce accurate financial information concerning the property. FPA has failed to provide backing information for the financial information that it has provided notwithstanding requests for FPA to provide the information.

37. Upon information and belief, FPA has entered into lease extensions or modifications with tenants after the parties had entered into the Agreement. For example, in February 2016, Yellowstone Poky received a copy of a lease between FPA and a tenant, SME Steel Contractors. The lease had been extended for two years when the prior lease was set to expire October 16, 2016. The new lease is undervalued and Yellowstone

Poky was denied the opportunity to negotiate terms with SME notwithstanding the prohibitions on FPA to entered into new or modified lease terms with tenants.

38. Upon information and belief, FPA is considering entering into additional lease modifications.

39. Upon information and belief, FPA has entered into a new loan agreement affecting the Property in the approximate amount of $10,000,000.00.

40. FPA has commenced installation of a new power controller panel off of Pole Line Road in violation of Section 20(d) of the Agreement.

41. FPA and Yellowstone Poky additionally agreed to allow Yellowstone Poky to use office space located at the Property during the Agreement's pendency. Yellowstone Poky has fully complied with its obligations concerning the use of the office space located at on the Property. Notwithstanding Yellowstone Poky's performance of its obligations to FPA concerning the use of the office space, FPA has unlawfully locked Yellowstone Poky out of the space provided and has failed to comply with Idaho law. The wrongful eviction and return of Yellowstone Poky's property is the subject of a companion case, Bannock County Civil Case No. CV-2016-2213-OC.

42. Yellowstone Poky maintained the records it did receive from FPA at the office space. As a result of the FPA's unlawful conduct and wrongful eviction of Yellowstone Poky, Yellowstone Poky has been deprived of its property and information related to the transaction preventing it from closing.

## COUNT ONE: BREACH OF CONTRACT/BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

43. Yellowstone Poky incorporates all prior paragraphs as if fully set forth herein.

44. Yellowstone Poky and FPA entered into the Agreement and the addenda as set forth, *supra*.

45. Yellowstone Poky has fully performed its obligations arising under the Agreement and is not in material breach.

46. FPA has failed to perform its obligations arising under the Agreement and has breached the contract by failing to provide documents and information requested by Yellowstone Poky to perform due diligence as contemplated and set forth in the Agreement and its addenda.

47. Implied in every contract is a covenant of good faith and fair dealing.

48. FPA's conduct has breached the implied covenant of good faith and fair dealing by failing to provide the requested, necessary documentation and information to Yellowstone Poky in order for Yellowstone Poky to perform its due diligence and close on the transaction on time.

49. FPA has also breached the implied covenant of good faith and fair dealing by also withholding Yellowstone Poky's personal property containing information vital to the transaction.

50. FPA's breaches of contract are the proximate causes of Yellowstone Poky's harms.

51. Yellowstone Poky is entitled to receive specific performance of the Agreement insofar as it involves the sale of unique, real property and specific performance is an appropriate remedy in such circumstances.

52. Alternatively, Yellowstone Poky has been damaged in an amount to be established at trial and in excess of the jurisdictional minimum of the district court.

53. Yellowstone Poky is entitled to its full, reasonable attorney fees and costs pursuant to the Agreement and Idaho Code § 12-120(3).

## COUNT TWO: UNJUST ENRICHMENT

54. Yellowstone Poky incorporates all prior paragraphs by reference.

55. Yellowstone Poky has conferred a substantial benefit on FPA and it would be unjust for FPA to retain the value of the benefit conferred by Yellowstone Poky.

56. The benefit conferred on FPA includes all sums paid as earnest money that may be deemed to be non-refundable, plus prejudgment interest.

57. FPA has knowingly and voluntarily accepted the benefit conferred by Yellowstone Poky.

58. Yellowstone Poky is entitled to recover the value of the benefit conferred on FPA.

59. Yellowstone Poky is entitled to its full, reasonable attorney fees and costs pursuant to Idaho Code § 12-120(3).

## COUNT THREE: PRELIMINARY INJUNCTION

60. Yellowstone Poky incorporates all prior paragraphs by reference.

61. FPA has undertaken actions to undermine the Agreement by entering into lease modifications with tenants and incurring additional, financial obligations secured by the property in the amount, upon information and belief, of approximately $10,000,000.00.

62. On information and belief, FPA intends to modify additional leases during the pendency of the Agreement.

63. Pursuant to Rule 65 of the Idaho Rules of Civil Procedure, Yellowstone Poky requests the entry of a preliminary injunction as follows:

    a. Preventing FPA from executing leases affecting the Property, modifying existing leases, and creating or forcing to be created any further monetary liens on the Property will cause great or irreparable harm to Yellowstone Poky;

    b. Requiring FPA to provide the required information pursuant to the parties' contract;

    c. Ordering FPA to return the items it unlawfully obtained by locking Yellowstone Poky out of its building.

64. Yellowstone Poky is entitled to the relief demanded in this Complaint and the relief demanded.

65. Yellowstone Poky is entitled to its full, reasonable attorney fees and costs pursuant to the Agreement and Idaho Code § 12-120(3).

### PRAYER FOR RELIEF

WHEREFORE, Yellowstone Poky prays for the following relief:

1. Entry of judgment for Yellowstone Poky and against FPA in an amount to be determined at trial.

2. Entry of judgment ordering the specific performance of the Agreement on the grounds that specific performance is an appropriate remedy in suits involving real property.

3. Entering a preliminary injunction enjoining FPA from the following actions during the pendency of this action:

    a. Entering into lease modifications with current tenants;

    b. Entering into new lease agreements with new tenants;

      c. Altering any terms of existing lease agreements with tenants;

      d. Creating, or causing to be created, any further monetary liens on the Property; and,

      e. Making any substantial alterations or improvements to the Property;

4. Awarding Yellowstone Poky its full, reasonable attorney fees and costs pursuant to Idaho Rule of Civil Procedure 54, the Agreement, and Idaho Code § 12-120(3).

5. Awarding Yellowstone Poky any additional and further relief deemed just and equitable under the circumstances.

## JURY DEMAND

Yellowstone Poky demands trial by jury pursuant to Rule 38 of the Idaho Rules of Civil Procedure.

DATED: March 22, 2017

*/s/ Jeffrey D. Brunson*
Jeffrey D. Brunson
John M. Avondet
Of Beard St. Clair Gaffney PA
Attorneys for the Plaintiff

First Amended Complaint and Jury Demand - **13**

EXHIBIT "A"   4-3

99018377

A parcel of land located in the E1/2 of Section 15, Township 6 South, Range 34 East, Boise Meridian, Bannock County, Idaho, a portion of the land described in instrument no. 724647 of the records of Bannock County, Idaho, being more particularly described as follows:

Commencing at the North one quarter corner of Section 15, Township 6 South, Range 34 East, Boise Meridian, said corner marked with an aluminum capped monument; thence North 89°28'06" East 65.30 feet to a point in the East right of way line of Pole Line Road; thence South 01°18'55" East along the East right of way line of Pole Line Road 25.0 feet;

thence continuing South 01°18'55' East 199.13 feet to an angle point; thence continuing along the East right of way line of Pole Line Road South 00°32'32" East 627.31 feet to the Southwest corner of the land described in instrument no. 732922 and depicted on the Record of Survey recorded as instrument no. 733159 of the records of Bannock County, Idaho, said corner marked by a 1/2-inch iron pin tagged LS-2652, the true point of beginning;

thence following the South and East boundaries of the said land described in instrument no. 732922 for the next five courses:

North 89°25'44" East 662.29 feet (recorded as North 89°28'06" East 662.24 feet) to a 1/2-inch iron pin tagged LS-2652; thence North 65°25'29" East 327.72 feet (recorded as North 65°25'05" East 327.76 feet) to a 1/2-inch iron pin tagged LS-2652; thence North 00°31'05" West 274.76 (recorded as North 00°32'32" West 274.85 feet) to a 1/2-inch iron pin tagged LS-2652;

thence South 89°24'46" West 64.24 feet (recorded as South 89°28'06" West 64.25 feet) to a 1/2-inch iron pin tagged LS-2652; thence North 00°33'46" West 417.75 feet (recorded as North 00°32'32" West 418.0 feet) to a point in the South right of way line of Infirmary Road (commonly referred to as Quinn Road), said point marked with a 1/2-inch iron pin tagged LS-2652;

thence North 89°28'06" East 354.97 feet along the South right of way line of Infirmary Road to an angle point, said point marked with a 5/8-inch iron pin tagged PE/LS-2652; thence continuing along the South right of way line of Infirmary Road North 87°45'06" East 470.47 feet (recorded as 470.62 feet) to the Northwest corner of the Armed Forces Reserve Training Area, said corner marked with a 1/2-inch iron pin tagged LS-977, a distance of 2.3 feet Easterly of a State of Idaho right of way monument identified as being 55 feet left of centerline station 93+60 of the Yellowstone Highway-Quinn Road Project;

thence South 00°02'34" East 324.22 feet (recorded as South 00°01'29" East 324.93 feet) to the Southwest corner of the said training area, said corner marked with a "PK" nail tagged LS-977; thence North 89°57'26" East 614.32 feet (recorded as North 89°58'00" East 614.59 feet) to a brass cap monument set in concrete, marking the Southeast corner of the said training area.


EXHIBIT A

4-4

EXHIBIT "A"
(Continued)

99018377

thence South 08°46'34" East 1568.57 feet (recorded as South 08°45'29" East 1568.22 feet) along the Westerly right of way line of the Union Pacific Railroad to a point of curvature, said point marked with an untagged 1/2-inch iron pin, from which the center of the curve bears South 81°22'51" West;

thence continuing along the Westerly right of way line of the Union Pacific Railroad, following an 1860 foot radius nontangent curve, concave to the West, through a central angle of 21°34'18" for an arc distance of 700.28 feet (recorded as 700.4 feet) to a concrete monument marking the Northeast corner of N.O.P. Park (a City of Pocatello Park), from which the East one quarter corner of Section 15 bears South 86°53'02" East 109.83 feet;

thence South 89°20'26" West on a nontangent line 1771.96 feet (recorded as South 89°21'27" West 1771.60 feet) to the Northwest corner of N.O.P. Park, said corner marked with a 1/2-inch iron pin tagged LS-977; thence South 00°04'43" West along the West boundary of N.O.P. Park 1325.68 feet to a point on the centerline of Eldredge Road;

thence South 89°21'43" West along the centerline of Eldredge Road 739.45 feet to a point in the East right of way line of Pole Line Road; thence North 00°32'32" West 3067.61 feet to the point of beginning.

EXCEPTING THEREFROM: A parcel of land dedicated to the City of Pocatello for a municipal well, located within the bounds of the above described parcel and being more particularly described as follows:

Commencing at the North 1/16th corner on the East line of Section 15, Township 6 South, Range 34 East, Boise Meridian, Bannock County, Idaho; thence South 89°13' West along the North 1/16th line of the said Section a distance of 570.2 feet to the West side of Ducey Street; thence North along the West side of Ducey Street and extended 906.2 feet to the South side of Patterson Street extended;

thence West along the said South side of Patterson Street and extended 362.60 feet to the East side of Ruddock Street; thence South along the East side of Ruddock Street a distance of 155.0 feet; thence South 75°55' West 663.5 feet to a point on the North side of Duckett Street; thence North 129.5 feet to the point of beginning;

thence continuing North 79.5 feet; thence West 30.4 feet; thence South 57°52' West 79.3 feet; thence South 37.32 feet; thence East 97.55 feet to the point of beginning.