IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YELLOWSTONE POKY, LLC, an Idaho Limited Liability Company,<br><br>     Plaintiff,<br><br>vs.<br><br>FIRST POCATELLO ASSOCIATES, L.P., A New Jersey Limited Partnership,<br><br>     Defendant.<br><br>_____<br><br>FIRST POCATELLO ASSOCIATES, L.P.<br><br>     Counterclaimant,<br><br>vs.<br><br>YELLOWSTONE POKY, LLC, and FEATHERSTON HOLDINGS, INC.<br><br>     Counterdefendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 4:16-cv-00316<br><br>Judge Dee Benson |

This case involves a dispute over a contract for the sale of approximately 150 acres of commercial property, including 24 buildings, located in Pocatello, Idaho ("the Property"). The contract was entered into between Defendant, First Pocatello Associates ("FPA"), the seller, and Plaintiff, Yellowstone Poky, LLC ("Yellowstone Poky"), the assignee of the original buyer, Featherston Holdings or Assigns.

1

This matter is before the court on Defendant FPA's Second Motion for Partial Dismissal and Second Motion to Strike Affidavit of Counsel.  (Dkt. 79.)  The court held a hearing on the motions on January 26, 2018.  At the hearing, Jeffrey Brunson represented Plaintiff Yellowstone Poky and Howard Burnett represented Defendant FPA.  Following the hearing, the court took the matter under advisement.  Now, having carefully considered the written memoranda and oral arguments of the parties, as well as the relevant law and facts relating to the motion, the court renders the following Memorandum Decision and Order.[1]

## BACKGROUND

For purposes of ruling on a Rule 12(b)(6) motion to dismiss the court "must accept the Complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the light most favorable to [the Plaintiff]."  *Pinnacle Great Plains Operating Co., LLC v. Wynn Dewsnup Revocable Trust*, 996 F. Supp. 2d 1026, 1030 (D. Idaho 2014).  Accordingly, the relevant facts are taken from the Second Amended Complaint as well as from the Agreement and its various addenda, all of which are expressly incorporated into the Second Amended Complaint by reference.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (providing that under the "incorporation by reference doctrine," a court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [Plaintiff's] pleading").

In late December of 2015, FPA and Yellowstone Poky's predecessor in interest, Featherston Holdings or Assigns, entered into a Real Estate Purchase and Sale Agreement (the

---

[1] Also pending before the court is Plaintiff's Motion to Strike Portions of Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. 69), the Declaration of Earl T. Swift (Dkt. 69-1), and the Declaration of Howard D. Burnett (Dkt. 69-2).  (Dkt. 74, Pl.'s Mot. to Strike.)  The court did not consider the materials that Yellowstone Poky seeks to strike from the record when it denied Plaintiff's motion for Preliminary Injunction (Dkt. 96), and the court has not considered those materials in ruling on the motions now before the court. Because the court has not considered those materials, and because the court finds that they do not necessarily bear on either the Plaintiff's motion for preliminary injunction or Defendant's motion for partial dismissal, the court GRANTS Planitiff's motion to strike.

"Agreement") concerning approximately 150 acres of commercial property with tenants, containing 24 buildings, located in Pocatello, Idaho. (Dkt. 78, Second Am. Comp. at 2.) Pursuant to the Agreement, which includes four addenda, Yellowstone Poky agreed to purchase the Property for $21,000,000 and paid $225,000 in earnest money. The sale was set to close on June 28, 2016. (*Id.* at 3-7.)

The Agreement identified the Property by an address of 669 Quinn Road, Bannock County, Idaho 83201 and by a parcel number, RPCPP02335. The Agreement also had attached as Exhibit A, a "site map" which consisted of two documents: (1) a printed diagrammatic map with hand-drawn lines; and (2) an aerial photograph. (Dkt. 7-2, Swift Decl., Ex. 1 at 1 & 7-8.)

The Agreement provided Yellowstone Poky with the right to perform due diligence including the right to perform tests, investigations and surveys, and the right to request additional documents from FPA. (Dkt. 78, Second Am. Comp. at 6.) To facilitate the process, FPA agreed to let Yellowstone Poky use office space in Building 3 on the property, wherein Yellowstone Poky maintained personal property including "office furniture, computers, personal business papers and effects, intellectual property, and confidential/proprietary information pertaining to [Yellowstone Poky's] involvement with the property." (*Id.* at 10.)

In the months leading up to the closing, however, things began to sour. Among other things, Yellowstone Poky alleges that FPA failed and refused to provide information necessary for Yellowstone Poky to conduct its due diligence. Yellowstone Poky also alleges that FPA locked Yellowstone Poky out of the office space, improperly denying Yellowstone Poky access to the property. (*Id.* at 8-10.) Yellowstone Poky claims that as a consequence of FPA's conduct, it was "deprived of property and information related to the transaction preventing it from closing." (*Id.* at 11.)

3

On June 28, 2016, the date initially agreed upon for closing, Yellowstone Poky instead filed suit in Idaho state court alleging that Defendant FPA failed to perform its obligations under the Agreement.  Yellowstone Poky's Complaint asserted claims for breach of contract, unjust enrichment and promissory estoppel.  Plaintiff Yellowstone Poky also filed a Notice of Lis Pendens and recorded the Notice in Bannock County.  (Dkt. 55 at 21.)

On July 13, 2016, FPA removed the action to this court.  (Dkt. 1.)  On July 28, 2017, FPA filed Defendant's Motion for Partial Dismissal, seeking dismissal of Count One (Plaintiff's claim for Breach of Contract) on the ground that the Agreement is unenforceable because it does not satisfy Idaho's statute of frauds.  (Dkt. 7.)

A series of additional motions followed, including two motions filed by Plaintiff seeking to amend the Complaint (Dkts. 24 & 61), which the court granted in part and denied in part. (Dkt. 71, Memorandum Decision and Order at 13-18.)  The court then determined that "[i]n light of the forthcoming filing of a second amended complaint, [FPA's] pending Motion for Partial Dismissal and related Motion to Strike Affidavit of Counsel will be denied as moot, without prejudice."  (*Id.* at 18.)

On September 6, 2017, Plaintiff filed the Second Amended Complaint, once again setting forth a claim in Count One for "Breach of Contract/Breach of the Implied Covenant of Good Faith and Fair Dealing."  (Dkt. 78, Second Am. Comp. at 11.)

On September 8, 2017, FPA filed the motion now before the court – Defendant's Second Motion for Partial Dismissal.  (Dkt. 79.)  In the motion, Defendant renews its argument that the Agreement is unenforceable because it does not adequately describe the real property that is the subject of the Agreement and, therefore, does not satisfy Idaho's statute of frauds.  (*Id.* at 2.) FPA also moved, for a second time, to strike the August 19, 2016 Affidavit of [Plaintiff's]

Counsel (Dkt. 13-1), on the basis that the affidavit and attachments should not be considered by the court because they contain facts and exhibits "not alleged on the face of the complaint or contained in documents attached to the complaint," and not "incorporated into the Complaint by reference."  (Dkt. 16 & 79.)

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted."  "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted).  In considering a Rule 12(b)(6) motion, the court must view the "complaint in the light most favorable to" the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inferences drawn from them."  *Id.* at 1122.

"When interpreting state law," as the court must do here, "federal courts are bound by decisions of the state's highest court."  *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (citation omitted).  In the absence of a clear ruling "a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."  *Id.*

Under Idaho law, "[t]he elements for a claim for breach of contract are: (a) the existence of [a valid, enforceable] contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages."  *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (2013).  As stated previously, Defendant FPA argues that Yellowstone Poky's breach of

5

contract claim fails as a matter of law because the Agreement in this case is not a valid and enforceable contract because it fails to comply with Idaho's statute of frauds.

A.  The Statute of Frauds

"Agreements for the sale of real property that fail to comply with the statute of frauds are unenforceable both in an action at law for damages and in a suit in equity for specific performance."  *Ray v. Frasure*, 200 P.3d 1174, 1177 (2009).  Under the statute of frauds an agreement for the sale of real property must (1) be in writing; (2) be signed by the party to be charged; and (3) "contain a description of the property, either in terms or by reference, so that the property can be identified without resort to parole evidence."  *Id.*

"A description of real property must adequately describe the property so that it is possible for someone to identify 'exactly' what property the seller is conveying to the buyer."  *Id.* at 1178 (quoting *Garner v. Barschi*, 80 P.3d 1031, 1036 (Idaho 2003)).  A description "will be sufficient so long as quantity, identity or boundaries of property can be determined from the face of the instrument, or by reference to extrinsic evidence to which it refers."  *Id.* (quoting *City of Kellogg v. Mission Mountain Interests Ltd., Co.*, 16 P.3d 915, 920 (Idaho 2000)).

> Whether a description is such that the property can be 'exactly' identified is an objective determination made by the court.  This objective determination is not affected by the understanding or intentions of the contracting parties at the time they drafted the property description.  Such considerations are irrelevant.  They do not aid the court in determining whether the document itself, standing alone (including any outside materials directly referenced therein) meets the necessary qualifications.

*The David and Marvel Benton Trust v. McCarthy,* 384 P.3d 392, 398 (Idaho 2016).

The Idaho Supreme Court has made clear that these principles are both well-established and long-standing:  "For over 100 years, this Court has held that a contract for the sale of real property must speak for itself and that a court may not admit parole evidence to supply any of the terms of the contract, including the description."  *Ray v. Frasure*, 200 P.3d at 1177; *see also*

*Magnolia Enters., LLC v. Schons*, No. 08CV376, 2009 WL 1658022, at *3-4 (D. Idaho June 11, 2009) (recognizing that "[t]his standard [that the property be identified without resort to parole evidence] is as strict as it appears," and [t]he decisions of the Idaho Supreme Court indicate that this requirement is exacting)).

The Agreement at issue in this case identifies the Property in three ways: (1) listing the physical address; (2) listing a parcel number; and (3) attaching as Exhibit A to the contract a "Site Map" consisting of (a) a printed diagrammatic map with hand-drawn lines, and (b) an aerial photograph taken from the Bannock County's website.  Applying the well-established standards of the Idaho Supreme Court to the property description in this case and for the reasons set forth below, the court concludes that these methods – whether considered individually or collectively – do not "exactly" describe the property intended to be conveyed and therefore fail to satisfy the strict standard under Idaho law.

### 1.  Physical Address

The parties do not dispute and the Idaho Supreme Court has definitively "conclude[d] that a property description in a real estate contract consisting solely of a physical address does not satisfy the statute of frauds."  *Ray v. Frasure*, 200 P.3d 1174, 1177 (Idaho 2009).  Thus, the physical address of the Property, listed on the contract as 669 Quinn Road Pocatello, Idaho 83201, does not satisfy the statute of frauds.[2]

### 2.  Parcel Number

Next, Defendant FPA asserts that the mere listing of a parcel number in the Agreement cannot satisfy the statute of frauds because a parcel number by itself does not describe the property; a parcel number is not a document that can be incorporated into the agreement; and a

---

[2] Additionally, the Agreement refers to the property only as "669 Quinn Road" rather than as "669 West Quinn Road."  (Dkt. 89 at 3 n.2.)

parcel number is not a reference to a document or other extrinsic evidence.  (Dkt. 17 at 2.)

Defendant argues that a parcel number is merely another type of name for a property, "not a

'clear and unambiguous' reference to or incorporation of any extrinsic document that provides a

legally sufficient description of the property."  (Dkt. 7 at 5 (citing *Magnolia Enterprises*, 2009

WL 1658022, at *4 ("The statute of frauds may be satisfied by a legal description contained in a

document extrinsic to the contract, but the contract must contain a clear and unambiguous

reference to that extrinsic document.")).)  Defendant argues that "[a]t best, a bare reference to a

parcel number requires a party to take multiple steps to identify and locate additional documents

or records that *indirectly* then may lead to a proper legal description … [and] this multi-step

approach to locating a complete legal description of the property is precisely the type of practice

Idaho's string rule is designed to prevent."  (Dkt. 89 at 6.)

Yellowstone Poky, on the other hand, asserts that the Agreement's listing of a parcel

number should be deemed a clear and unambiguous reference to Bannock County records

identified by that number, as well as any records that could be obtained by using that number as a

starting point, either by visiting the county assessor's office or by accessing online county

Geographic Information System (GIS) information.  (Dkt. 83 at 4.)  In support of this position,

Plaintiff relies on the Idaho Court of Appeals decision in *Haney v. Molko*, 844 P.2d 1382 (Idaho

Ct. App. 1992), and a concurring opinion of Idaho Supreme Court Justice Jim Jones in *Hoke v.

Neyada, Inc.*, 387 P.3d 118 (Idaho 2016).

In *Haney v. Molko*, the Idaho Court of Appeals found that the property descriptions in the

Certificate of Sale and the IRS Deed, which indicated a section number, township and range and

tax parcel numbers were adequate to convey title.  The Idaho Court of Appeals reasoned that by

referring to the legal descriptions of the tax parcel numbers that were provided, it was possible

for someone to identify exactly what property was being conveyed.  *Haney*, 844 P.2d at 1386.

The *Haney* court reached that conclusion using a "reasonable certainty" standard, i.e., that a

property description will be sufficient if it "describe[s] with *reasonable certainty* the property it

purports to convey."  *Id.* (emphasis added).

However, *Haney* was expressly disavowed by the Idaho Supreme Court in *Ray v.*

*Frasure,* 200 P.3d 1174 (Idaho 2009).  The Idaho Supreme Court stated:  "this Court has not

adopted the language from *Haney* stating that a property description need only designate real

property with reasonable certainty.  Instead, we have required that a property description

designate 'exactly' what property the seller is conveying to the buyer."  *Id.* at 1179-80.  Thus, to

the extent the Idaho Court of Appeals addressed the adequacy of parcel numbers in *Haney*, it did

so under the wrong standard.

Plaintiff also relies on Justice Jim Jones' concurrence in *Hoke v. Neyada, Inc.*, 387 P.3d

118 (Idaho 2016).  The majority in *Hoke* declined to address the statute of frauds, instead

resolving the appeal under the doctrine of part performance.  *Id.* at 121-22 ("[W]e do not express

any opinion as to the district court's conclusion regarding the adequacy of the Property

description found in the Lease, Option or combination thereof.")  However, Justice Jones wrote a

separate concurrence "to comment on the adequacy of the property description in the Option to

Purchase."  *Id.* at 122.  The property description in *Hoke* referred, in part, to "tax lot 2 in lot 9 of

the subdivision and tax lots 05292 and 05293 in block 9 of the subdivision."  *Id.* at 123.  Justice

Jones opined that, "[a]lthough the Option [to Purchase] d[id] not provide the metes and bounds

descriptions of the tax lots," the description was nonetheless adequate to meet the requirements

of the statute of frauds.  *Id.*  Justice Jones explained that in his experience, when preparing real

estate purchase contracts, "[i]t was always preferable to obtain a metes and bounds description

appearing in the recorded real county property records, such as a subdivision lot, but when such

was not immediately available, a tax lot would suffice because the county assessor usually had a

serviceable legal description on hand." *Id.*

As stated above, the majority opinion in *Hoke* did not address the adequacy of the legal

description of the property, and Justice Jones' concurring opinion was not joined by any other

member of the Idaho Supreme Court.  Thus, his concurrence is little more than his personal

opinion.  At best, it provides insight as to what Justice Jones might consider a sufficient

reference to extrinsic evidence given the facts of that particular case, but it does not constitute

binding authority or Idaho law.

In the absence of clear and controlling precedent to the contrary, this court is unwilling to

stray from the long-standing and strict standard established by the Idaho Supreme Court in *Ray v.*

*Frasure*:

> This Court's precedent from the past 100 years permits a party to ascertain a property
> description from extrinsic evidence *only when the contract or deed references the*
> *extrinsic evidence*.  The instant contract does not reference the records at the Ada County
> Recorder's Office or the prior deed conveying the property to Frasure.  Therefore, the
> statute of frauds does not permit Respondents to supplement the real property description
> in the contract with the proffered extrinsic evidence.

*Ray*, 200 P.2d at 1179; *see also David and Marvel Benton Trust v. McCarty*, 384 P.3d 392, 399

(Idaho 2016) ("Indeed, [the Idaho Supreme Court] put the issue to rest in *Ray* when it stated that

'[t]his  Court's  precedent  from  the  past  100  years  permits  a  party  to  ascertain  a  property

description  from  extrinsic  evidence  only  when  the  contract  or  deed  references  the  extrinsic

evidence.'").

Following the Idaho Supreme Court's direction in *Ray*, the court concludes that the

Agreement in this case does not reference extrinsic evidence.  Said another way, the court finds

that the mere listing of a parcel number is not a clear and unambiguous reference to extrinsic

evidence, namely, records at the County Assessor's Office.  Therefore, as in *Ray*, the statute of frauds does not permit Plaintiff in this case to supplement the real property description in the Agreement with extrinsic evidence.

Moreover, even assuming *arguendo* that listing a parcel number could, in certain instances, be considered a clear and unambiguous reference to records in the County Assessor's Office, it would not change the outcome in this case because the County record ultimately produced, using the listed parcel number, remains insufficient to satisfy the statute of frauds.

Before addressing this, however, the court must first rule on Defendant's Motion to Strike Affidavit of Counsel.  (Dkt. 16 & 79.)  In response to Defendant FPA's motion for partial dismissal, Yellowstone Poky submitted an affidavit of counsel along with several exhibits attempting to show that a search of Bannock County records, using the parcel number listed in the Agreement, provides a sufficient description of the property.  (Dkt. 13-1 & 83-3 & 4.)[3]  The exhibits to Plaintiff's affidavit include the following: a one-page "Parcel Master Inquiry" for parcel number RPCPP023305 from Bannock County; a screen capture of the Bannock County Planning Interactive Map showing the resulting image for parcel number RPCPP023305; a screen capture of a Google Maps image for 699 Quinn Road; a screen capture of a Google Maps image for 1499 Partridge Cove, Pocatello, Idaho; and a screen capture of the Bannock County Planning Interactive Map showing section numbers in relation to Pocatello City's boundaries. (*See* Dkt. 83-3 & 4, Exs. A-F.)

Defendant FPA moved to strike all of the exhibits and the corresponding paragraphs of the affidavit arguing that "when ruling on a motion to dismiss, [courts] must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the

---

[3] Plaintiff  initially filed the affidavit and exhibits on August 19, 2016 as Exhibit 1 to Plaintiff's Memorandum in Opposition to the Motion to Dismiss.  (Dkt. 13-1.)  Following objections raised in Defendant's Reply, Plaintiff filed a modified "replacement" affidavit and exhibits.  (Dkt. 83-3 & 4.)

complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  However, the "incorporation

by reference" doctrine "permits [courts] to take into account documents 'whose contents are

alleged in a complaint and whose authenticity no party questions, but which are not physically

attached to the [plaintiff's] pleading.'"  *Id.* (quoting *In re Silicon Graphics Inc. Sec. Litig.,* 183

F.3d 970, 986 (9th Cir. 1999).)  Additionally, a "court may [also] take judicial notice of 'matters

of public record' without converting a motion to dismiss into a motion for summary judgment."

*Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  "But a court may not take judicial

notice of a fact that is 'subject to reasonable dispute.'"  *Id.*

Applying these standards, the court takes judicial notice of Exhibit B, the results of the

"Parcel Master Inquiry" for parcel number RPCPP023305, finding the document to be a matter

of public record made available by the Bannock County Assessor's Office.  Similarly, the court

takes judicial notice of the Google map images (Exhibits D and E) on the basis that the accuracy

and source cannot reasonably be questioned, but the court finds them to be of limited value as

they indicate only the location of a particular property based on the listed physical address.  *See*

*United States v. Perea-Rey* , 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) (taking judicial notice of

Google map image as a "source[] whose accuracy cannot reasonably be questioned" for purposes

of determining the general location of a home).  As to the remaining exhibits, the court grants

FPA's motion to strike.[4]

Turning then to the one-page "Parcel Master Inquiry" results from Bannock County

relating to parcel number RPCPP023305, the document describes the property as follows:

---

[4] The Bannock County website contains a disclaimer stating that the County provides zoning maps "as a service to the public . . . for informational purposes only."  Bannock County Planning & Zoning Maps, https://www.bannockcounty.us/zoning/ (last visited Oct. 30, 2017).  It warns that information on the maps "may not be completely accurate and/or up to date."  Accordingly, it advises users "to consult with Bannock County Planning and Development . . . to assure the accuracy of any information" contained on the online interactive maps.  This disclaimer indicates that the online zoning maps may be subject to reasonable dispute and the court should rely on the Bannock County records as opposed to the screenshots of the interactive maps found on the Bannock County website.  Accordingly, with regard to Exhibits C and F, Defendant's  motion to strike is GRANTED.

[S15-T6s-R34E COUNT PROP IN POC]
[TAX 422 13.98 A; TAX 526 50.96 A]
[TAX 439 9.61 AC; TAX 440 4.03 A]
[TAX 447 5.30 A; TAX 448 25.05 A]
[TAX 449 9.865 A; TAX 450 9.865 A]
[TAX 414 0.92 AC; TAX 492 19.33 A]

(Dkt. 83-4, Ex. B.)

This description indicates that the Property is in Section 15, Township 6 south, Range 34 east, and provides the court with a general idea of where the property is located.  It then lists several separate tax numbers for which there is no information.  Although, presumably an individual could make an additional trip to the Bannock County Assessor's office to obtain the exact description of each of the separate tax numbers, that information is not before the court and there is no way for the court to determine whether each of those additional records contain adequate legal descriptions.  In sum, the document itself does not provide a complete legal description.

Thus, even if the court were to deviate from the long-standing precedent of *Ray v. Frasure* and conclude that a parcel number is a reference to extrinsic evidence, namely, Bannock County records, the statute of frauds would still not be satisfied in this case because the Bannock County record produced by a search of the parcel number does not contain all of the relevant information.  Specifically, it does not provide the legal description of the multiple lots that comprise parcel RPCPP023305, and there is no assurance that the property descriptions contained in each of those additional records are complete and accurate.

Site Maps

Finally, Exhibit A – consisting of (a) a printed diagrammatic map with hand-drawn lines and (b) an aerial photograph – is insufficient to save the Agreement from the statute of frauds.  The attached maps generally fail to identify the quantity, identity or boundaries of the property.

13

There is no indication on either map of the exact perimeter of the property, and the boundary lines contained in the two maps are inconsistent.  Moreover, neither the Agreement nor the maps contain any type of legend to clarify what the various hand-drawn lines on the diagrammatic map signify, and the printed letters are illegible.  *See, e.g.*, *Bauchman-Kingston P'ship, LP v. Haroldsen*, 233 P.3d 18, 23 (Idaho 2008) (upholding district court's conclusion that hand-drawn map was inadequate to describe property).

Plaintiff expressly acknowledges and, for the most part, does not refute Defendant's "complaints" regarding the inadequacy of the maps.  Additionally, Plaintiff appears to concede that Exhibit A, alone, is insufficient to satisfy the statute of frauds. (Dkt. 13 at 7.)  Instead, Plaintiff argues that "[a]ll three sources of information provided in the agreement work together" to establish the property to be conveyed, and [t]aken as a whole, the Agreement more than satisfies the requirement of the statute of frauds."  (*Id.* at 8.)

The court disagrees with Plaintiff's assertion that the combination of an address, parcel number and attached maps sufficiently describes the property.  As Defendant points out, "there is no authority for relaxing the exacting statute of frauds standard . . . where the agreement happens to have multiple identifiers, instead of just one, that could be used to hunt down a full legal description of the property."  (Dkt. 17 at 5.)  None of the Property "identifiers" listed in the Agreement contain an adequate description of the Property, and none of the "identifiers" are references to extrinsic documents that themselves contain an adequate description of the property.  Even combining all of the "identifiers" in the Agreement, an adequate description of the property would still require extrinsic evidence not expressly referenced in the Agreement, which would be in violation of the statute of frauds.[5]

---

[5] Yellowstone Poky appears to recognize, on some level, that the attempts to identify the property in the Agreement are inadequate.  When Yellowstone Poky subsequently filed its Notice of Lis Pendens and Complaint in this matter,

14

Accordingly, the court concludes that the Agreement fails to provide a legally-sufficient description of the Property. Therefore, the Agreement is not a valid and enforceable contract for the sale of property because it fails to satisfy the statute of frauds.[6]

B.  Defense to the Statute of Frauds – Partial Performance & Equitable Estoppel

Plaintiff asserts that even if the court concludes that the Agreement violates the statute of frauds, the Agreement should nevertheless be enforced pursuant to the doctrines of part performance and equitable estoppel.  (Dkt. 13, Pl.'s Opp'n at 10.)

The doctrine of part performance provides that when the parties to an agreement fail to satisfy the statute of frauds, the agreement may nevertheless be enforced when the purchaser has partly performed the agreement. *Chapin v. Linden*, 162 P.2d 772, 775 (Idaho 2007).

> The doctrines of equitable estoppel and part performance are viewed together.  Under Idaho law, part performance per se does not remove a contract from the operation of the statute of frauds.  Rather, [t]he doctrine of part performance is best understood as a specific form of the more general principle of equitable estoppel.

*Lettunich v. Key Bank Nat. Ass'n*, 109 P.3d 1104, 1109 (Idaho 2005) (internal quotation marks omitted).  "Therefore, the question whether part performance allows [a party] to avoid application of the statute of frauds depends upon whether the part performance is such as to equitably estop [the other party] from relying upon the statute as a defense." *Treasure Valley Gastroenterology Specialists, P.A. v. Woods*, 20 P.3d 21, 25-26 (Idaho Ct. App. 2001).  Accordingly, the question in this case is whether Yellowstone Poky's alleged part performance

---

Yellowstone Poky did not attach the parties' Agreement, presumably because of the inadequate legal description contained therein.  Rather, Yellowstone Poky attached as Exhibit A to the Notice of Lis Pendens and Complaint a detailed, two-page legal description of the Property.  (Dkt. 1-3, Notice of Lis Pendens at 4-5; Dkt. 1-2, Complaint Ex. A.)

[6] Having determined that the original Sale Agreement does not satisfy the statute of frauds, the court need not address the Defendant's additional argument that an addendum to the Sale Agreement also does not satisfy the statute of frauds because it excluded certain real property from the sale without giving a sufficient legal description of the excluded property.  (Dkt. 7 at 4.)

demonstrates reliance sufficient to equitably estop FPA from asserting the statute of frauds defense.

"What constitutes part performance must depend on the particular facts of each case and the sufficiency of particular acts is a matter of law." *Boesiger v. Freer*, 381 P.2d 802, 804 (Idaho 1963). In the context of an agreement to convey real property, "[t]he most important acts which constitute a sufficient part performance [to avoid the statute of frauds] are actual possession, permanent and valuable improvements and these two combined." *Bear Island Water Ass'n, Inc. v. Brown*, 874 P.2d 528, 533 (Idaho 1994). These acts "must be proven by clear and convincing evidence." *Id.* In order for "the possession of land to constitute a part performance of a contract invalid under the statute of frauds, [the possession] must be actual, notorious and in pursuance of the contract." *Boesiger*, 381 P.2d at 805. In order for "[i]mprovements . . . to constitute part performance, [the improvements] must be substantial in relation to the value of the property." *Bear Island Water*, 874 P.2d at 534.

In light of these legal principles, the court finds that Yellowstone Poky has not alleged facts to show that it had "actual possession" or made "permanent and valuable improvements" to the property. Yellowstone Poky has alleged that FPA "allow[ed] Yellowstone Poky to use office space at the Property in Building 3" and that Yellowstone Poky "used Building 3 to house all of [its] documents and plans related to this project" (Dkt. 78, Second Am. Compl. ¶ 40-41.) However, the mere use of office space in one building, out of 24 buildings, on a property of approximately 150 acres, simply to "house . . . documents and plans related to this project" prior to the closing date, does not amount to actual possession sufficient to constitute part performance to prevent the statute of frauds.

Yellowstone Poky has also not alleged that it made permanent and valuable improvements to the property. At most, Yellowstone Poky has alleged that it "expended significant time and resources complying with the agreement and preparing the property for additional and further development." (Dkt. 13 at 11 (citing Original Complaint ¶¶ 10-13, 16-19, 30, 33, 35, 43, 54).) Whatever is meant by this vague and conclusory allegation, it does not amount to a permanent improvement that was "substantial in relation to the value of the property," *Bear Island Water,* 874 P.2d at 534, particularly where the Property was to be sold for $21,000,000. Consequently, Yellowstone Poky has failed to allege the two most important acts – actual possession and permanent and valuable improvements – that could constitute sufficient part performance or reliance to avoid the effect of the statute of frauds.

Yellowstone Poky's main allegation to support its claim of part performance – that it paid $225,000 in earnest money for the property – also does not constitute adequate part performance or reliance. As Defendant asserts, "if merely paying earnest money would remove the legal requirement of complying with the statute of frauds, then the statute would become meaningless because a substantial portion of real property transactions involve the pre-closing payment of earnest money from the buyer." (Dkt. 17, Def.'s Reply at 9.) Moreover, the Idaho Supreme Court has repeatedly held that the payment of earnest money, or even the entire purchase price, in a sale of real property does not avoid the statute of frauds. *See, e.g., Ray v. Frasure*, 200 P.3d 1176, 1179 (Idaho 2009) (holding the agreement violated the statute of frauds in case where buyer had "deposited all funds due with the escrow company"); *Lexington Heights Dev. LLC v. Crandlemire*, 92 P.3d 526, 529 & 535 (Idaho 2004) (holding that the contract for sale of real property violated the statute of frauds in case where buyer had paid $300,000 in earnest money).

Accordingly, the court concludes that Plaintiff has failed to allege facts sufficient to show part performance and reliance sufficient to save the Agreement from the statute of frauds or to estop FPA from asserting the defense.

## CONCLUSION

For the reasons set forth above, the court GRANTS Defendant's Second Motion for Partial Dismissal and dismisses with prejudice Count One of Plaintiff's Second Amended Complaint on the grounds that the Real Estate Purchase and Sale Agreement is unenforceable because it does not adequately describe the real property that is the subject of the Agreement and, therefore, does not satisfy Idaho's statute of frauds.  (Dkt. 79.)  Having granted Defendant's motion, the court further orders that the Lis Pendens on the Property be VACATED.

The court GRANTS IN PART and DENIES IN PART Defendant's Motion to Strike Affidavit of Counsel.  (Dkts. 16 & 79.)  The court GRANTS Defendant's motion with respect to Dkt. 83-4, Exhibits C and F.  The court takes judicial notice of Dkt. 83-4, Exhibits A, B, D and E.

The court GRANTS Plaintiff's Motion to Strike Portions of Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. 69), the Declaration of Earl T. Swift (Dkt. 69-1), and the Declaration of Howard D. Burnett (Dkt. 69-2). (Dkt. 74.)

IT IS SO ORDERED.

Dated this 27th day of February, 2018.

BY THE COURT:

_____
Dee Benson
United States District Judge

18