Howard D. Burnett, ISB No. 3377
HAWLEY TROXELL ENNIS & HAWLEY LLP
412 West Center Street, Suite 2000
P.O. Box 100
Pocatello, ID 83204
Telephone: 208.233.0845
Facsimile: 208.233.1304
Email: hburnett@hawleytroxell.com

Justin Cranney, ISB No. 8061
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208.954.5248
Email: jcranney@hawleytroxell.com

Austin Strobel, ISB No. 9803
HAWLEY TROXELL ENNIS & HAWLEY LLP
2010 Jennie Lee Drive
Idaho Falls, ID 83404
Telephone: 208.529.3005
Facsimile: 208.529.3065
Email: astrobel@hawleytroxell.com

Attorneys for Defendant/Counterclaimant
First Pocatello Associates, L.P.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YELLOWSTONE POKY, LLC, an Idaho Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST POCATELLO ASSOCIATES, L.P., a New Jersey limited partnership,<br><br>Defendant. | Case No. 4:16-CV-00316-DVB<br><br>MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3 DOCUMENTS |

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 1

FIRST POCATELLO ASSOCIATES, L.P.,

    Counterclaimant,

vs.

YELLOWSTONE POKY, LLC,
FEATHERSTON HOLDINGS, INC., and
ROGER FEATHERSTON,

    Counterdefendants.

Defendant/Counterclaimant First Pocatello Associates, L.P. ("First Pocatello") respectfully submits this memorandum in support of Defendant/Counterclaimant's Motion for Order Re: Copying and Delivery of Building 3 Documents.

## I.
## INTRODUCTION

The purpose of First Pocatello's accompanying motion is to finally resolve what has turned out to be a nearly two-year long dispute between the parties pertaining to the documents (the "Building 3 Documents") accumulated by Roger Featherston ("Mr. Featherston") during his temporary use, strictly as a favor granted by First Pocatello, of a single office in Building 3 of First Pocatello's Gateway West Industrial Center ("GWIC"). First Pocatello made diligent and repeated attempts to return these documents to Mr. Featherston dating back to June of 2016, and Mr. Featherston rebuffed all of those efforts. However, on September 14, 2016, Plaintiff/Counterdefendant Yellowstone Poky, LLC ("Yellowstone Poky") sought leave to amend its complaint to add a claim for misappropriation of trade secrets. At that point, to establish and preserve the actual pre-existing content of the Building 3 Documents in light of Yellowstone Poky's decision to inject into the litigation a trade secret misappropriation claim

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 2

48627.0003.11069669.3

based on those very documents, First Pocatello took the position that it should be allowed to obtain a set of copies of the Building 3 Documents prior to delivering the original of the documents to Mr. Featherston, subject to reasonable confidentiality protections. From the outset of this litigation, Mr. Featherston and Yellowstone Poky in various ways have used First Pocatello's continued, though *unsought*, possession of the Building 3 Documents as a means of discrediting, and attempting to exert perceived leverage against, First Pocatello. The time has come for the gamesmanship to end.

The Building 3 Documents issue previously was before this Court at the January 26, 2018 hearing on the various then-pending motions in this case. At that hearing, the Court ruled from the bench that the Building 3 Documents that had been securely stored by First Pocatello since June of 2016 were to be returned to Yellowstone Poky, provided, however, that in light of Yellowstone Poky having amended its original complaint to assert against First Pocatello a misappropriation of trade secrets claim – apparently premised on the Building 3 Documents – First Pocatello would be allowed to copy the Building 3 Documents at its own expense before delivering them to Yellowstone Poky. The parties' respective counsel agreed with the Court during the January 26, 2018 hearing that the copying, delivery, and confidentiality issues could be worked out informally without the need for a court order. However, contrary to the good faith expectations of First Pocatello's counsel and Yellowstone Poky's then-counsel, the parties have since been unable to reach an informal resolution for the copying and delivery of the Building 3 Documents.

The same operative background facts that were before the Court at the time of the Court's January 26, 2018 ruling from the bench, as now supplemented by additional relevant facts and

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 3

48627.0003.11069669.3

communications that have occurred since the January 26, 2018 hearing, are set forth below in Section II.

## II.
## STATEMENT OF FACTS

1.  In the early months of 2016 during the due diligence period of the anticipated purchase and sale of the GWIC, First Pocatello allowed Mr. Featherston to temporarily use, strictly as a favor, a single office in the then-unoccupied Building 3. Declaration of Earl T. Swift ("Swift Decl.") [Dkt. 69-1] at ¶ 9 (filed August 17, 2017).

2.  During the time Mr. Featherston was using Building 3, First Pocatello discovered that Mr. Featherston had been improperly entering other buildings at GWIC besides Building 3, including areas rented by other tenants, after hours and without notification to or authorization from First Pocatello. *Id.*

3.  As a result, on June 2, 2016, First Pocatello notified Mr. Featherston in writing that, because of his improper actions in Building 3 and other areas of GWIC, he could no longer use Building 3, that he was to vacate Building 3, and that the locks to Building 3 would be changed and locked at the end of business on June 3, 2016. The locks were, in fact, changed and locked at the end of business on June 3, 2016. *Id.*

4.  First Pocatello then gathered the documents and other personal items left in Building 3 (there was no computer among those items, only a monitor), consolidated all of it in labeled boxes for retrieval by Mr. Featherston, and securely stored it in the vestibule of Building 3 awaiting arrangements to be made by Mr. Featherston to retrieve it. *Id.* First Pocatello, its counsel, and others repeatedly informed Mr. Featherston and his counsel, orally

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 4

and in writing, that Mr. Featherston could arrange for the retrieval of the stored materials. *Id.*; Declaration of Roger Featherston ("Featherston Decl."), Exh. A [Dkt. 67-3] at 7 (filed July 27, 2017). Specific efforts to arrange for the retrieval or delivery of the Building 3 Documents by or to Mr. Featherston included:

    a.    A letter from Hawley Troxell attorney Mike Baldner to Jason S. Crandall (former counsel for Mr. Featherston) dated June 17, 2016 indicating that the Building 3 Documents had been carefully transferred into labeled banker's boxes and that "[t]he labeled boxes containing your client's documents currently are locked in the vestibule of Building No. 3, and my client, working through [local real estate broker] Don Zebe, promptly will make arrangements for your client to retrieve or otherwise take delivery of those boxes of documents." Featherston Decl., Exh. A [Dkt. 67-3] at 4.

    b.    A letter from Hawley Troxell attorney Howard D. Burnett ("Mr. Burnett") to Jared M. Harris (another former counsel for Mr. Featherston) dated June 30, 2016 notifying Mr. Harris that all of the Building 3 Documents "have been fully available for pick up by, or delivery to, Mr. Featherston since Thursday, June 16, 2016 – however, Mr. Featherston steadfastly and repeatedly has refused either to pick up these materials or to allow them to be delivered to him." *Id.* The letter continued, "in short, as he has been explicitly and repeatedly told by the real estate broker and our client's staff personnel, all Mr. Featherston has had to do since June 16 to retrieve or accept delivery of all of his documents and other items that were in Building 3 is contact the administrative personnel at the Gateway West Industrial Center office during regular business hours, and the retrieval or delivery of all of those materials will immediately be completed. Mr. Featherston simply will not do so, and he instead has been heard

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 5

to respond with a comment along the lines of 'I'm playing a different deck of cards right now.' We sincerely hope that you will be able to persuade Mr. Featherston to reconsider that course of action." *Id.* at 9-10.

        c.     A letter from former Hawley Troxell attorney John K. Olson dated July 15, 2016 to Jared M. Harris, Jeffrey D. Brunson, John M. Avondet, and Jason Crandall (all former counsel for Mr. Featherston) stating that Mr. Featherston's "documents and personal effects that had been in Building 3 of the Property have been and continue to be fully available for pick up by, or delivery to, Mr. Featherston" and to "[p]lease contact Howard Burnett to make arrangements to have the materials picked up during regular business hours or, in the alternative, to have the materials delivered to Mr. Featherston in Pocatello." *Id.* at 1-2.

5.     Despite these repeated efforts by First Pocatello to have Mr. Featherston pick up or accept delivery of the Building 3 Documents, Mr. Featherston refused to retrieve the Building 3 Documents or to instruct First Pocatello regarding the delivery of the Building 3 Documents. Swift Decl. [Dkt 69-1] at ¶ 9.

6.     On September 14, 2016, Yellowstone Poky filed Plaintiff's Motion to Amend Complaint [Dkt. 24], Plaintiff's Memorandum in Support of Motion to Amend Complaint [Dkt. 24-1], and the Affidavit of John M. Avondet [Dkt. 24-2], seeking leave to amend Yellowstone Poky's Complaint to assert a claim for misappropriation of trade secrets. In an initial Memorandum Decision and Order [Dkt. 50], Chief District Judge B. Lynn Winmill reserved ruling on the issue of leave to amend to assert a claim for misappropriation of trade secrets. However, in a subsequent Memorandum Decision and Order [Dkt. 71], Judge Winmill granted Yellowstone Poky leave to assert a claim for misappropriation of trade secrets. Plaintiff's

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 6

Second Amended Complaint [Dkt. 78], which is the current operative complaint, contains a claim for misappropriation of trade secrets.

7. Upon Yellowstone Poky's initial September 14, 2016 injection of a misappropriation of trade secrets claim into this matter, First Pocatello took the position that it should be allowed to obtain a set of copies of the Building 3 Documents for the evidentiary purpose of preserving the actual pre-existing and undisturbed contents of the Building 3 Documents, and for the prophylactic purpose of defending itself against Yellowstone Poky's new trade secrets misappropriation claim purportedly based, in whole or in part, on the Building 3 Documents. Declaration of Howard D. Burnett [Dkt. 69-2] at ¶ 3 (filed August 17, 2017).

8. The Building 3 Documents issue came before this Court during the January 26, 2018 hearing on the various then-pending motions. At that hearing, the Court ruled from the bench that the Building 3 Documents and personal items that had been securely stored by First Pocatello since June of 2016 were to be returned to Mr. Featherston, but that First Pocatello would first be allowed to make copies of the documents, with the copying, delivery, and confidentiality logistics and issues to be worked out between counsel informally without the need for a court order.

9. Thereafter, on February 2, 2018, Mr. Burnett was told by Jeffrey Brunson ("Mr. Brunson") (former counsel for Yellowstone Poky) in a telephone conversation that Mr. Featherston had advised him in the interim that proof of the requisite financing for a new purchase and sale transaction was imminent, that Mr. Featherston didn't want First Pocatello to go to the expense of copying the Building 3 Documents if there still existed any possibility of doing a purchase and sale deal with respect to the GWIC, and that the document copying

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 7

48627.0003.11069669.3

logistics should be put on hold. Mr. Burnett and Mr. Brunson thereupon agreed to such a hold. Declaration of Howard D. Burnett in Support of Defendant/Counterclaimant's Motion for Order Re: Copying and Delivery of Building 3 Documents ("Burnett Decl.") at ¶ 2 (filed concurrently herewith). Mr. Burnett and Mr. Brunson further agreed that the Building 3 Documents would continue to be securely locked up, with no one reviewing them, until it was determined whether further action with respect to the Building 3 Documents would be necessary. *Id.* The Building 3 Documents have remained locked up and un-reviewed. *Id.* However, no proof of Mr. Featherston's requisite financing ever materialized. *Id.*

10. On February 27, 2018, this Court entered its Memorandum Decision and Order [Dkt. 97] dismissing with prejudice Count One of the Second Amended Complaint (Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing) on the grounds that the Real Estate Purchase and Sale Agreement at issue is unenforceable because it does not adequately describe the real property that is the subject of the Agreement and, therefore, does not satisfy Idaho's statute of frauds. Thereafter, on March 7, 2018, Blake S. Atkin ("Mr. Atkin") was substituted as counsel of record in the litigation for Yellowstone Poky and for the other Counterdefendants, Featherston Holdings, Inc. and Roger Featherston. Substitution of Counsel [Dkt. 98].

11. On April 2, 2018, Mr. Burnett sent an e-mail to Mr. Atkin requesting that Mr. Atkin call Mr. Burnett at his very earliest convenience to work out the logistics for the parties' counsel to have copied, and then delivered to Mr. Atkin, the Building 3 Documents. Burnett Decl. at ¶ 3.

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 8

48627.0003.11069669.3

12. In an April 4, 2018 telephone conference with Mr. Atkin, Mr. Burnett explained to Mr. Atkin the history of the Building 3 documents and First Pocatello's proposal to copy and deliver those documents in fulfillment of the Court's directive at the January 26, 2018 hearing. Mr. Atkin said that his client Mr. Featherston had given him a somewhat different account with respect to the Building 3 Documents, but that Mr. Atkin understood the issue. Mr. Atkin stated that he obviously hadn't yet seen the Building 3 Documents, and that if he had a period of time after taking delivery of the originals of the documents to review and designate them as "attorneys' eyes only," or just "confidential," or some other designation, then he would be agreeable to the proposed document copying and delivery procedure. Mr. Atkin said that he would undertake to draft a form of protective order and send it to Mr. Burnett the next day for Mr. Burnett's consideration. Mr. Atkin also advised that he would make himself available to travel from his office in Clifton, Idaho to Pocatello, Idaho to observe the proposed transfer of the documents to the FedEx copying service. Burnett Decl. at ¶ 4.

13. On April 5, 2018, Mr. Atkin's legal assistant forwarded to Mr. Burnett a draft form of a "Stipulation for Protective Order" ("Stipulation") pertaining to the Building 3 Documents. *Id.* at ¶ 5, Exh. B. However, the proposed Stipulation was overbroad in its scope, encompassed procedural complexities far greater than were necessary, and unfairly would have relieved Yellowstone Poky of any burden of establishing protectable status for documents (and instead would have imposed on First Pocatello a burden to challenge Yellowstone Poky's conclusory designation of protectable status) in ways that were not suitable for the simple, near-term task at hand of copying and delivering the Building 3 Documents in accordance with the Court's January 26, 2018 directive from the bench. *Id.* In fact, only a single unnumbered second

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 9

paragraph of Section 13 of the lengthy 11-page proposed Stipulation even mentioned the conceptually very narrow result to be accomplished with specific respect to the Building 3 Documents. *Id.*

14. In response to Mr. Atkin's April 5, 2018 proposed Stipulation, Mr. Burnett sent a letter to Mr. Atkin dated April 9, 2018 entitled *Logistical Proposal for the Copying and Delivery of the Building 3 Documents*, which proposed a vastly simpler and more streamlined three-paragraph protocol for promptly accomplishing the copying and delivery of the Building 3 Documents, complete with appropriate mechanisms for Yellowstone Poky to protect any genuinely confidential financial and/or trade secret information contained in the Building 3 Documents. *Id.* at ¶ 6, Exh. C.

15. Mr. Atkin responded initially to Mr. Burnett's April 9, 2018 letter proposal via an e-mail dated April 17, 2018, stating that "work on a protective order needs attention" and that "[w]e have a very different perspective" regarding the Building 3 Documents. *Id.* at ¶ 7, Exh. D. Mr. Burnett responded to Mr. Atkin's April 17, 2018 e-mail with an e-mail of the same date, stating that issues pertaining to the viability of Mr. Featherston's purported funding source for any kind of transaction were "unrelated to – and should not impede – immediate arrangements (in fulfillment of Judge Benson's directive at the January 26, 2018 hearing)…to copy and return to you the Building 3 [D]ocuments." *Id.* at ¶ 7, Exh. E. Mr. Atkin responded on April 18, 2018 with an e-mail setting forth additional observations with respect to Mr. Burnett's April 9, 2018 proposal. *Id.* at ¶ 7, Exh. F.

16. On April 20, 2018, during a trip to Seattle on other matters, Mr. Burnett spoke by telephone with Mr. Atkin about his April 18, 2018 e-mail concerning the Building 3 Documents

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 10

48627.0003.11069669.3

issues. *Id.* at ¶ 7. Mr. Burnett advised Mr. Atkin that Mr. Burnett disagreed that the parties needed to engage in the negotiation of a full-blown mutual protective order to deal in the near-term with the Building 3 Documents, that the parties are currently operating under a specific January 26, 2018 directive from the Court to arrange for the copying and delivery of the Building 3 Documents, and fulfilling that directive should be the parties' only focus at this point. *Id.* Mr. Burnett also expressed concern that if Mr. Featherston were simply to designate *all* of the Building 3 Documents (regardless of actual content) as deserving "attorneys' eyes only" treatment or other confidential treatment, then it would be viewed by First Pocatello as yet another delay tactic in furtherance of Mr. Featherston's repeated threats to drag out the litigation as long as possible (a tactic in which Mr. Atkin responded he was not himself at all interested). *Id.* Mr. Burnett advised Mr. Atkin that First Pocatello's representatives had made clear that they would not engage in even entertaining any new transactional offer pertaining to the Gateway West Industrial Center until the Building 3 Documents have been copied and delivered to Mr. Featherston. *Id.* Mr. Atkin requested that, because he had been "getting a different story" from Mr. Featherston about the Building 3 Documents, Mr. Burnett should send to Mr. Atkin copies of the earlier correspondence in the case pertaining to the repeated requests that had been made to Mr. Featherston and his prior attorneys for Mr. Featherston to retrieve, or accept delivery of, the Building 3 Documents. *Id.* Mr. Atkin said that in his April 18, 2018 e-mail, he had suggested that a broader protective order is inevitably going to be necessary, and he also suggested an alternative possibility of an "attorneys' eyes only" designation for the Building 3 Documents that would control until such time as a generally-applicable protective order were negotiated and entered in the case, after which the Building 3 Documents would be governed by such a

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 11

generally-applicable protective order. *Id.* However, Mr. Burnett and Mr. Atkin did not reach any agreement, and Mr. Burnett concluded the conversation by advising Mr. Atkin that he would further consider the issues and get back in touch with him after returning to Pocatello from Seattle the following week. *Id.* Mr. Atkin sent Mr. Burnett a follow-up status inquiry e-mail on April 24, 2018. *Id.* at ¶ 8, Exh. G.

17. On April 25, 2018, Mr. Burnett sent a comprehensive e-mail to Mr. Atkin providing additional background information and attaching multiple supporting documents related to the Building 3 Documents issue. *Id.* at ¶ 9, Exh. H.

18. On April 30, 2018, Mr. Burnett sent a follow-up status inquiry e-mail to Mr. Atkin, stating that "fulfillment of Judge Benson's directive concerning the copying and delivery of the Building 3 [D]ocuments remains a threshold requirement at this point" and that "the April 9, 2018 letter provides an efficient protocol for achieving that result." *Id.* at ¶ 10, Exh. I.

19. On May 1, 2018, Mr. Burnett sent another follow-up status inquiry e-mail to Mr. Atkin asking if "we can promptly commence the copying of the Building 3 [D]ocuments pursuant to Judge Benson's January 26, 2018 directive … in accordance with the protocol set forth in my April 9, 2018 letter to you." *Id.* at ¶ 11, Exh. J.

20. On May 3, 2018, Mr. Atkin responded to Mr. Burnett's April 25, 2018 e-mail and follow-up e-mails with what First Pocatello viewed as an inflammatory response (invoking such language as "conversion" and "stolen goods" with respect to the Building 3 Documents) that made plain that the parties would not be able to work out a prompt, reasonable, efficient, and fair resolution of the Building 3 Documents issue without Court involvement. *Id.* at ¶ 12, Exh. K.

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 12

48627.0003.11069669.3

21. On May 11, 2018, Yellowstone Poky filed its Motion to Compel Return of Documents and for Entry of a Protective Order [Dkt. 99], accompanied by a supporting Memorandum [Dkt. 99-1]. First Pocatello will respond separately, in accordance with the usual briefing schedule under the applicable rules, to Yellowstone Poky's May 11, 2018 motion.

## III.
## ARGUMENT

It is well settled that this Court "has the inherent authority to enforce its orders." *Wellard v. U.S. Dep't of Justice*, No. CV-06-260-E-BLW, 2007 WL 951898, at *1 (D. Idaho Mar. 28, 2007) (citing *Degen v. U.S.*, 517 U.S. 820, 827 (1996) (district court "has at its disposal an array of means to enforce its orders ... [and] its powers include those furnished by ... inherent authority"). On January 26, 2018, this Court ordered from the bench that the Building 3 Documents were to be copied and then returned to Mr. Featherston, with the logistics and confidentiality issues to be worked out between the parties informally. Unfortunately, the parties have not been able to reach an agreement governing the copying and delivery of the Building 3 Documents and related confidentiality issues.

The Building 3 Documents issue continues at every turn to be unfairly used against First Pocatello by Yellowstone Poky, when, in fact (as the record makes clear), Mr. Featherston himself deliberately and repeatedly refused – it now appears, for strategic reasons all along – to make arrangements to pick up, or receive delivery of, the Building 3 Documents and other personal items that he had accumulated in Building 3. Indeed, it is First Pocatello's position that Yellowstone Poky has bootstrapped Mr. Featherston's deliberate refusals from the outset to pick up or accept delivery of the Building 3 Documents into a misappropriation of trade secrets claim,

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 13

48627.0003.11069669.3

and now attempts to use First Pocatello's continued possession of the Building 3 Documents as a stall tactic to further delay the full and final resolution of this case on the merits.

First Pocatello's counsel initiated on April 2, 2018 the communications with Yellowstone Poky's newly-substituted counsel to work out the logistics for the copying and delivery of the Building 3 Documents, and First Pocatello presented on April 9, 2018 a focused, reasonable, and efficient proposal that fully satisfies this Court's January 26, 2018 ruling from the bench. By contrast, Yellowstone Poky has proposed only an overly broad, procedurally complex, and entirely unnecessary form of Stipulation that goes well beyond what is necessary for the narrow purpose of the copying and delivery of the Building 3 Documents as directed by the Court. In addition to being overly broad and unduly complex, the proposed Stipulation effectively could result in *all* of the Building 3 Documents being deemed indefinitely to be for "attorney's eyes only" – thus unfairly and improperly shifting to First Pocatello the burden and expense of *objecting* to a conclusory claim by Yellowstone Poky of confidential or trade secret status for those documents rather than properly placing the burden on Yellowstone Poky to *establish* any genuine confidential or trade secret status. Further, Mr. Atkin's proposal to simply agree to an indefinite "attorney's eyes only" designation for the Building 3 Documents until such time as a generally-applicable protective order is worked out clearly would constitute a disincentive for Mr. Featherston *ever* to actually work out a generally-applicable protective order. Indeed, Mr. Featherston presumably would be content to leave the "attorney's eyes only" protection in place for as long as possible (thus constituting yet another means for Mr. Featherston to continue to prolong the litigation while repeating his consistently empty promises that proof of available financing is just around the corner). First Pocatello's April 9, 2018 proposal, summarized below,

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 14

48627.0003.11069669.3

properly assigns the burden of establishing any genuine confidentiality of any of the Building 3 Documents to Yellowstone Poky, and provides to Mr. Atkin a fully-adequate sixty (60) day time period and straightforward mechanism to establish and preserve protected treatment for any genuinely confidential financial and/or trade secret information that may be contained in the Building 3 Documents.

To finally resolve the matter of the copying and delivery of the Building 3 Documents, First Pocatello respectfully requests that the Court enter an order regarding the copying and delivery of the Building 3 Documents based on the terms and conditions outlined in the April 9, 2018 letter from Mr. Burnett to Mr. Atkin, summarized as follows:

> (1) Counsel for First Pocatello and counsel for Yellowstone Poky will arrange to be physically present at the earliest mutually feasible date and time, to observe the removal of the Building 3 Documents from their current locked storage area at the Gateway West Industrial Center in Pocatello. Various non-document personal items that were left in Building 3 by Roger Featherston will be delivered to Yellowstone Poky's counsel at that time. Upon the removal of the Building 3 Documents from the locked storage area, the parties' respective counsel will accompany the transport of the Building 3 Documents to the nearby FedEx copying service in Pocatello, Idaho, where they will be placed in the possession of the FedEx personnel for copying. No representative of Yellowstone Poky nor any representative of First Pocatello will be allowed to access the Building 3 documents while they are being copied by the FedEx personnel. First Pocatello will be solely responsible for the expense of copying the Building 3 documents (including the simultaneous preparation by FedEx of an electronic file of the Building 3 documents in .pdf format).
>
> (2) Counsel for First Pocatello and counsel for Yellowstone Poky will instruct FedEx to simultaneously notify both counsel as soon as FedEx has completed its preparation of copies of all of the Building 3 Documents, whereupon both counsel will arrange at the earliest mutually feasible date and time to meet at the FedEx copying facility. Counsel for Yellowstone Poky will take immediate possession of the entire set of originals of the Building 3 Documents. Counsel for First Pocatello will take immediate possession of the entire set of copies of the Building 3 Documents (including the electronic file of the Building 3 documents in .pdf format).

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 15

48627.0003.11069669.3

(3) For a period of sixty (60) days following the date that the parties' respective counsel take possession from FedEx of the originals and copies, respectively, First Pocatello's counsel will: (i) treat the copies (including the electronic copies prepared by FedEx) as restricted to "attorneys' eyes only" (except as Yellowstone Poky's counsel may otherwise expressly agree); and, (ii) not disclose any of those copies to any representative of First Pocatello (except as Yellowstone Poky's counsel may otherwise expressly agree) or to any third party (except as Yellowstone Poky's counsel otherwise expressly agree, and except as may be required by legal process, in which case, counsel for First Pocatello will promptly notify counsel for Yellowstone Poky so that Yellowstone Poky may intervene if it wishes).

(4) During the aforementioned sixty (60) day period, counsel for Yellowstone Poky may provide to counsel for First Pocatello a log of specific documents (including an identification of their specific provisions) that Yellowstone Poky in good faith believes constitute genuinely confidential financial and/or trade secret information of Yellowstone Poky that is properly protectable in the litigation, and counsel for Yellowstone Poky's proposed means of protection for each applicable provision of each such document. Counsel for First Pocatello will review Yellowstone Poky's log and advise of the proposed designations and protections to which the parties can agree. If and to the extent the parties cannot agree on any of the proposed designations or protections, Yellowstone Poky will be free to seek a protective order from the Court.

(5) Upon expiration of the aforementioned sixty (60) day period, any of the Building 3 documents as to which Yellowstone Poky has not specifically sought confidential or restricted treatment will thereafter be treated as documents produced in the normal course of discovery without any confidentiality or use restrictions.

(6) To the extent the parties agree on specific documents (or portions thereof) that should be protected and the scope of the proposed protection, the parties will memorialize their agreement on those items at that time. To the extent the parties are unable to agree on whether certain documents (or portions thereof) are properly protectable, or the parties are unable to agree on the scope of the proposed protection, First Pocatello's counsel nonetheless will continue with respect to those particular materials to abide by the same confidentiality restrictions described in subparagraph (3)(i) and (3)(ii) above until the Court has ruled on the matter, provided that Yellowstone Poky files a motion for a protective order with the Court within thirty (30) days of First Pocatello's notice to Yellowstone Poky of any disagreement as to any of Yellowstone Poky's proposed designations or protections.

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 16

48627.0003.11069669.3

### III.
### CONCLUSION

The terms and conditions set forth in the April 9, 2018 letter from Howard D. Burnett to Blake S. Atkin (Burnett Decl., Exh. C) constitute the most reasonable, efficient and fair manner promptly to carry out this Court's January 26, 2018 directive from the bench regarding the copying and delivery of the Building 3 Documents, and First Pocatello respectfully requests that the Court enter an order implementing those terms and conditions as described above.

DATED this 15th day of May, 2018.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By: /s/ *Howard D. Burnett*
    Howard D. Burnett, ISB No. 3377

Attorneys for Defendant/Counterclaimant
First Pocatello Associates, L.P.

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 17

48627.0003.11069669.3

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 15th day of May, 2018, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3 DOCUMENTS with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Blake S. Atkin                          batkin@atkinlawoffices.net
ATKIN LAW OFFICES, PC

[Attorneys for Plaintiff/Counterdefendants]

                                               /s/ Howard D. Burnett
                                               Howard D. Burnett

MEMORANDUM IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S
MOTION FOR ORDER RE: COPYING AND DELIVERY OF BUILDING 3
DOCUMENTS - 18

48627.0003.11069669.3