Exhibit B



# RE-23 COMMERCIAL/INVESTMENT
## REAL ESTATE PURCHASE AND SALE AGREEMENT

JULY 2014 EDITION

Idaho Association of Realtors®

THIS IS A LEGALLY BINDING CONTRACT, READ THE ENTIRE DOCUMENT, INCLUDING ALL ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT BEFORE SIGNING.



Page 1 of 6

**NO WARRANTIES, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF HABITABILITY, AGREEMENTS OR REPRESENTATIONS NOT EXPRESSLY SET FORTH HEREIN SHALL BE BINDING UPON EITHER PARTY.**

1  ID# FH 122315

2                                                                                                  DATE____23 December 2015

3  **LISTING AGENCY** Coldwell Banker Commercial Advisors _____ Office Phone #_____ Fax #_____
4  Listing Agent Don Zebe _____ E-Mail_____ Phone #_____
5  **SELLING AGENCY** Coldwell Banker Commercial Advisors _____ Office Phone #_____ Phone #_____
6  Selling Agent Don Zebe _____ E-Mail don.zebe@cbcadvisors.com _____ Phone # 208 403 1973

7
8  **1. BUYER:** Featherstone Holdings or Assigns
9  (Hereinafter called "BUYER") agrees to purchase, and **SELLER** First Pocatello Associates LP
10 (Hereinafter called "SELLER") agrees to sell the following described real estate hereinafter referred to as "PROPERTY"
11 COMMONLY KNOWN AS 669 Quinn Road
12 City POCATELLO _____ County BANNOCK _____, Idaho, Zip 83201 _____ legally described as:
13 _____RPCPP023305_____
14 OR Legal Description Attached as exhibit  A Site Map _____ **(Exhibit must accompany original offer and be signed or initialed by**
15 **BUYER and SELLER.)**
16
17 **2.** 19,000,000  21,000,000  **PURCHASE PRICE:** Nineteen Million  Twenty One Million
18 _____ DOLLARS,
19 which shall be payable by federal wire transfer or other collected funds at Closing, unless otherwise specified in an addendum hereto. Title of SELLER is to
20 be conveyed by X warranty deed ____ special warranty deed or _____ deed (not including closing costs).

21 **3. FINANCING CONTINGENCY: THIS IS NOT AN ALL CASH OFFER.** If this is an all cash offer, BUYER'S OBLIGATION TO CLOSE SHALL NOT
22 BE SUBJECT TO ANY FINANCING CONTINGENCY. **If this is not an all cash offer and an appraisal is required by lender, the PROPERTY must**
23 **appraise at not less than purchase price and BUYER'S Earnest Money shall be returned at BUYER'S request.** BUYER may also apply for a loan with
24 different conditions and costs and close transaction provided all other terms and conditions of this Agreement are fulfilled, and the new loan does not
25 increase the costs or requirements of the SELLER. This Agreement is only subject to a satisfactory appraisal and final lender underwriting after the release
26 of all contingencies, inspections, due diligence and feasibility studies have been completed to the satisfaction of BUYER.

27
28 **4. EARNEST MONEY:** BUYER hereby deposits $ Two Hundred Twenty Five Thousand Dollars _____ as Earnest Money, together with interest
29 thereon, if any. Evidenced by: ...cash personal check **x** cashier's check ...note (due date):_____
30 ...other _____and a receipt is hereby acknowledged.  Earnest Money to be deposited in trust account
31 ...upon receipt or X upon acceptance by BUYER and SELLER or X other FIRST AMERICAN TITLE COMPANY 223 N 15TH STREET POCATELLO
32 IDAHO 83201 Attn: Melissa Raschke  208 232 6224  and shall be held by: ...Listing Broker  ...Selling Broker
33 X other FIRST AMERICA TITLE, POCATELLO _____ for the benefit of the parties hereto.
34 Unless otherwise agreed to in writing, the Earnest Money shall be applicable to the purchase price.
35 THE RESPONSIBLE BROKER SHALL BE: Steve Bogden, COLDWELL BANKER COMMERCIAL ADVISORS

36
37 **5.  OTHER TERMS AND/OR CONDITIONS:** This Agreement is made subject to the following special terms, considerations, addenda and/or
38 contingencies which must be satisfied prior to closing 1. Buyer understands the purchase of the property is "AS IS"
39 2. Upon removal of due diligence earnest money shall be non-refundable and earnest money shall be applied to the purchase price
40 3. Seller to provide all leases, rent rolls, maintenance records, surveys, inspections, reports, clearances, that are in sellers possession, upon delivery due
41 diligence shall commence.
42 4. Buyer shall have one option to extend due diligence for 60 days with 5 day written notice.
43 _____
44 _____
45 _____

46 **6. DEADLINES:** The following deadlines shall be binding on the parties and referred by name in this Agreement. TIME IS OF THE ESSENCE IN THIS
47 **AGREEMENT.**
48      (A) "SELLER DISCLOSURE DEADLINE":       20 _CALENDAR DAYS (ten [10] if left blank)
49      (B) "DUE DILIGENCE DEADLINE":           90 CALENDAR DAYS (thirty [30] if left blank)
50      (C) "SETTLEMENT AND CLOSING DEADLINE":  28 June 2016

51 **7. TITLE COMPANY:** The parties agree that First American Title Company
52 Title Company located at 223 N 15 St. Pocatello, Idaho 83201  208 232 6224 Att: Melissa Raschke _____ shall provide the title
53 policy and preliminary report of commitment.

54 **8. ACCEPTANCE:** This offer is made subject to the acceptance of SELLER and BUYER on or before (Date) 2 January 2016 at  (Local
55 Time in which PROPERTY is located) 5 _____...A.M. X P.M.

56 **9. ASSIGNMENT:** This Agreement and any rights or interests created herein X may ... may not be sold, transferred, or otherwise assigned.

BUYER'S Initials (____)(____) Date 12/24/15       SELLER'S Initials (____)(____) Date 12/30/15

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

PROPERTY ADDRESS: 669 Quinn Road _____ ID#: FH 122315

**10. ITEMS INCLUDED & EXCLUDED IN THIS SALE:** All existing fixtures and fittings that are attached to the PROPERTY are **INCLUDED IN THE PURCHASE PRICE** (unless excluded below), and shall be transferred free of liens. Unless specifically excluded below, the fixtures and fittings included in the purchase price shall include (1) all personal property owned by the SELLER and used primarily in connection with the PROPERTY, and (2) all rights and easements appurtenant to the PROPERTY.
**ITEMS SPECIFICALLY INCLUDED IN THIS SALE:** **All materials, equipment, parts, vehicles, used for property maintenance. Equipment inventory.**
_____
_____
_____
_____

**ITEMS SPECIFICALLY EXCLUDED IN THIS SALE:** Sellers personal property
_____
_____
_____
_____

**11. SETTLEMENT AND CLOSING:**

(A). **SETTLEMENT:** Settlement and Closing shall take place on the Settlement and Closing Deadline, unless the parties to this Agreement agree upon another date in writing. Settlement and Closing shall be deemed to have occurred only when all of the following have been fully completed: (a) BUYER and SELLER have signed and delivered to the Escrow Agent all documents required by this Agreement, by any lender, or by applicable law; (b) any monies required to be paid by the BUYER under this Agreement (including any proceeds of any new loan) have been delivered by BUYER, or BUYER's lender, to the Escrow Agent; (c) any monies required to be paid by the SELLER under this Agreement have been delivered by SELLER to the Escrow Agent; and (d) the applicable closing documents have been recorded in the official records of the County Recorder of the county in which the PROPERTY is located. At Closing, SELLER and BUYER shall execute an Assignment and Assumption Agreement transferring all leases and vendor contracts assumed by BUYER through written agreement of the Parties.

(B). **SETTLEMENT AND CLOSING COSTS:** SELLER and BUYER shall each pay one-half of the fee charged by the Escrow Agent for its services in the Settlement and Closing. Taxes and assessments for the current year, rents, and interest on any assumed obligations shall be prorated at Settlement as set forth in this section. Tenant deposits (including, but not limited to, security deposits and prepaid rents) shall be paid or credited by SELLER to BUYER at Settlement. Prorations set forth in this section shall be made by the Escrow Agent as of the Settlement Date unless otherwise agreed to by the parties in writing.

**12. TITLE INSURANCE:** There may be types of title insurance coverages available other than those listed below and parties to this agreement are advised to talk to a title company about any other coverages available that will give the BUYER additional coverage.

(A). **PRELIMINARY TITLE COMMITMENT:** No later than the Seller Disclosure Deadline, SELLER shall furnish to BUYER, at SELLER's sole cost and expense, a preliminary commitment of a title insurance policy showing the condition of the title to said PROPERTY, together with a copy of each instrument, agreement or document listed as an exception to title in the title commitment that is reasonably available to SELLER. BUYER shall have fifteen (15) business days from receipt of the preliminary commitment within which to object in writing to the condition of the title as set forth in the preliminary commitment. If BUYER does not so object, BUYER shall be deemed to have accepted the conditions of the title. It is agreed that if the title of said PROPERTY is not marketable, or cannot be made so within ten (10) business days after notice containing a written statement of defect is delivered to SELLER, then BUYER, at BUYER's option, may either: (a) terminate this agreement by written notice to the SELLER, in which BUYER's Earnest Money deposit shall be returned to BUYER and neither party shall have any further rights, obligations or liabilities except as expressly set forth in this Agreement; or (b) continue with this Agreement and, if closing occurs, accept title subject to the uncured title defects other than monetary liens. SELLER covenants and agrees that all monetary liens shall be removed by SELLER at closing or insured against by the title insurer, whether or not BUYER has designated such monetary liens as title defects.

(B). **STANDARD COVERAGE OWNER'S POLICY:** At Settlement, SELLER shall, at SELLER's sole expense, furnish to BUYER a title insurance policy in the amount of the purchase price of the PROPERTY showing marketable and insurable title subject to the liens, encumbrances and defects to be discharged or assumed by BUYER as provided herein. BUYER, at its sole option, cost and expense, may elect to obtain an Extended Coverage ALTA policy of title insurance or additional specific endorsements.

**13. SQUARE FOOTAGE VERIFICATION:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE REAL PROPERTY OR IMPROVEMENTS IS APPROXIMATE. IF SQUARE FOOTAGE IS MATERIAL TO THE BUYER, IT MUST BE VERIFIED BY BUYER DURING THE INSPECTION PERIOD.

**14. COVENANTS, CONDITIONS AND RESTRICTIONS (CC&Rs):** As part of the BUYER'S due diligence and inspection of the PROPERTY as set forth in Section 16, BUYER is responsible for obtaining and reviewing a copy of any CC&Rs which may affect the PROPERTY. BUYER shall have 10 business days to review and approve of any such CC&Rs that may affect the PROPERTY. Unless BUYER delivers to SELLER a written and signed objection to the terms of any applicable CC&Rs with particularity describing BUYER'S reasonable objections within such time period as set forth above, BUYER shall be deemed to have conclusively waived any objection to the terms of any CC&Rs affecting the PROPERTY.

**15. SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline, SELLER shall disclose, and provide copies if available, to BUYER the following:

(a) any studies and/or reports that have previously been performed in connection with or for the PROPERTY, including without limitation, environmental reports, soil studies, seismic studies, site plans and surveys;
(b) any notices relating to a violation of applicable law including, without limitation, environmental law and laws relating to land use, zoning or compliance with building codes;

BUYER'S Initials ( _RTK_ )( ) Date _12/24/15_          SELLER'S Initials ( _CH_ )( ) Date _12/30/15_

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is approved for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

**PROPERTY ADDRESS: 669 Quinn**                                                                    **ID#: FH 122315**

134        (c) SELLER shall make available for inspection all documents in SELLER's possession relating to ownership, operation, renovation or
135  development of the PROPERTY including: statements for real estate tax assessments and utilities for the last year; property management agreements;
136  leases or other occupancy agreements; maintenance records, accounting records and audit records for the past year; and installment purchase contracts or
137  leases of personal property used in connection with the PROPERTY; and
138        (d) all other documents described in any Addenda or Counteroffer to this Agreement.
139
140  **16. FEASIBILITY CONTINGENCY:**
141
142        **(A).** BUYER's obligations under this Agreement are conditioned upon BUYER's satisfaction, in BUYER's sole discretion, concerning all aspects of the
143  feasibility of the PROPERTY for BUYER's intended purpose.  This shall include, but is not limited to: the contracts and leases affecting the
144  PROPERTY; the potential financial performance of the PROPERTY; the availability of government permits and approvals; and the outcome of any
145  appraisals and lender underwriting.  This contingency shall be deemed waived unless BUYER gives written notice to SELLER on or before the Due
146  Diligence Deadline that the PROPERTY is unfit for BUYER's intended purpose.  If such notice is given, the Earnest Money shall be refunded to
147  BUYER.
148
149        **(B).** INSPECTION OF VENDOR CONTRACTS: In addition to the documents to be disclosed under the Seller Disclosures, SELLER shall make
150  available for inspection by BUYER and its agents by the Seller Disclosure Deadline all "Vendor Contracts" which shall include maintenance and service
151  contracts, and installment purchase contracts or leases and personal property or fixtures used in connection with the PROPERTY.  BUYER shall
152  determine by the Due Diligence Deadline: (i) whether SELLER will agree to terminate any objectionable Vendor Contracts; and (ii) whether SELLER will
153  agree to pay any damages or penalties resulting from the termination of objectionable Vendor Contracts.  BUYER's voluntary waiver of the Feasibility
154  contingency shall signify BUYER's acceptance of all Vendor Contracts that SELLER has not agreed in writing to terminate.  BUYER shall be solely
155  responsible for obtaining any required consents to assumptions of Vendor Contracts and the payment of any assumption fees.  SELLER shall
156  cooperate with BUYER's efforts to receive any such consents but shall not be required to incur any additional expenses or liabilities in doing so.
157
158  **17. INSPECTION/DUE DILIGENCE:**
159
160        **(A).** In conducting BUYER's due diligence prior to the Due Diligence Deadline, or at any time thereafter if and to the extent required by the lender,
161  BUYER shall have the right to conduct inspections, investigations, tests, surveys and other studies at BUYER'S expense unless otherwise agreed
162  upon in writing by the parties.  BUYER must provide reasonable advance notice of BUYER's intent to inspect or test the PROPERTY, and all
163  inspections, investigations, tests, surveys and other studies must be conducted at reasonable times.  SELLER shall have the right to accompany
164  BUYER and any of its agents on the PROPERTY at all times.  All inspections and tests shall be conducted in a manner that does not unreasonably
165  disrupt the activities and business of SELLER and its tenants.  BUYER shall indemnify, hold harmless and defend SELLER, its tenants and employees
166  for any claims for liens, physical damage or personal injury resulting from BUYER's due diligence inspections and/or tests.
167
168        **(B).** SATISFACTION/REMOVAL OF INSPECTION DUE DILIGENCE CONTINGENCIES:
169        (1). If BUYER, in BUYER's sole discretion, determines that the results of the BUYER's due diligence are not acceptable, then BUYER, no later
170  than the Due Diligence Deadline, shall either: (a) cancel this Agreement providing written notice to SELLER, in which event the Earnest Money deposit
171  shall be returned to BUYER; or (b) providing to SELLER a written notice setting forth BUYER's disapproved items.
172
173        (2). If BUYER does not within the strict time period specified take either of the actions stated in Section 17(B)(1), BUYER shall conclusively be
174  deemed to have: (a) completed all inspections, investigations, review of applicable documents and disclosures; (b) elected to proceed with the
175  transaction; (c) assumed all liability, responsibility and expense for repairs or corrections other than for items which SELLER has otherwise agreed
176  in writing to repair or correct; and (d) unless another condition or contingency set forth in an Addendum or Counteroffer remains unsatisfied, the
177  Earnest Money deposit shall become nonrefundable except upon an instance of SELLER's default.
178
179        (3). If BUYER timely provides notice of disapproved items to SELLER, BUYER and SELLER shall have five (5) business days after SELLER's
180  receipt of the notice of disapproved items in which to agree in writing upon the manner of resolving the disapproved items.  If BUYER and SELLER
181  have not agreed in writing upon the manner of resolving the disapproved items by the deadline, BUYER may cancel this Agreement by delivering
182  written notice to SELLER no later than fifteen (15) days after SELLER's receipt of the notice of disapproved items; whereupon the Earnest Money
183  deposit shall be returned to BUYER and neither party shall have any further rights or obligations under this Agreement.  If BUYER does not give such
184  written notice of cancellation within the strict time periods specified, BUYER shall conclusively be deemed to have elected to proceed with the
185  transaction without repairs or corrections other than for items which SELLER has otherwise agreed in writing to repair or correct and the Earnest Money
186  deposit shall become nonrefundable except upon an instance of SELLER's default.
187
188  **18. SELLER REPRESENTATIONS AND WARRANTIES:**  SELLER represents and warrants that the following statements are true and complete as
189  of the date of SELLER's execution of this agreement and shall be true as of the date of Settlement and Closing:
190        (a). There is no action, suit, administrative proceeding or other proceeding pending in any court or before any arbitrator of any kind or before or by
191  any governmental body or, to SELLER's knowledge, threatened against SELLER and/or the PROPERTY which may adversely affect this transaction;
192        (b). All work which will be performed in, on or about the PROPERTY or materials furnished to the PROPERTY which might, in any circumstance,
193  give rise to a mechanic's or materialman's lien will be paid and no such liens shall encumber the PROPERTY at the time of Settlement and Closing;
194        (c). SELLER has not received any written notice or citation indicating that the PROPERTY is in material violation of any applicable law;
195        (d). Neither SELLER nor any other person, to SELLER's knowledge, have ever caused or permitted any hazardous materials to be placed, held,
196  located or disposed of on, under, or at the PROPERTY in violation of applicable law; and
197        (e). To SELLER's knowledge, the consummation of the transaction contemplated by this Agreement does not and will not conflict with or result in a
198  material breach of any of the terms or provisions of any other agreement, arrangement, undertaking, accord, document or instrument to which SELLER is a
199  party or by which SELLER or the PROPERTY is bound.
00
01  **19. CONDITION OF PROPERTY AT CLOSING:**  Upon expiration of the Due Diligence Deadline, BUYER agrees to purchase the PROPERTY in as-
02  is-condition with all faults and with no further repairs required, subject only to the representations and warranties stated herein, or unless otherwise agreed
03  upon by the parties in writing.  Upon Closing, BUYER will assume all obligations with respect to the PROPERTY.

BUYER'S Initials (RTP)(     ) Date 12/24/15          SELLER'S Initials (    )(     ) Date 12/30/15

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is copyrighted for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

**20. OPERATIONS PRIOR TO CLOSING:** Between the parties' execution of this Agreement and Closing, and except otherwise agreed to by the parties in writing, SELLER: (a) shall not execute any lease affecting the PROPERTY; (b) shall comply with all applicable laws affecting the PROPERTY; (c) shall not create or force to be created any further monetary liens on the PROPERTY; (d) shall not make any substantial alterations or improvements to the PROPERTY; (e) shall continue and maintain all current casualty and liability insurance policies covering the PROPERTY; (f) shall not use, produce manufacture, generate, treat, handle, store, release or dispose of any hazardous material in, on or under the PROPERTY, except as permitted by applicable environmental laws; (g) SELLER shall continue to operate the PROPERTY in the ordinary course of its business; and (h) maintain the PROPERTY in the same or better condition than as existing on the date of Mutual Acceptance but shall not be required to repair material damage from casualty except as otherwise provided by this Agreement. After the Feasibility Period, SELLER shall not enter into or modify existing rental agreements or leases (except that SELLER may enter into, modify, extend, renew or terminate residential rental agreements or residential leases in the ordinary course of its business), service contracts, or other agreements affecting the PROPERTY which have terms extending beyond Closing without first obtaining BUYER's consent, which shall not be unreasonably withheld.

**21. CLOSING COSTS AND PRORATIONS:** SELLER shall deliver an updated rent roll to Closing Agent not later than five (5) days before the scheduled Closing date and any other information reasonably requested by Closing Agent to allow Closing Agent to prepare a settlement statement for Closing. SELLER certifies that the information contained in the rent roll is correct as of the date submitted. SELLER and BUYER shall each pay one-half of the escrow fees. Real and personal property taxes and assessments payable in the year of closing; collected rents on any existing tenancies; interest; utilities; and other operating expenses shall be pro-rated as of Closing. If tenants pay any of the foregoing expenses directly, then Closing Agent shall only pro rate those mortgage reserves for assumed financing for which BUYER receives the benefit after Closing. BUYER shall pay all costs of financing including the premium for the lender's title policy. If the PROPERTY was taxed under a deferred classification prior to Closing, then SELLER shall pay all taxes, interest, penalties, deferred taxes or similar items which result from removal of the PROPERTY from the deferred classification. At Closing, all refundable deposits on tenancies shall be credited to BUYER or delivered to BUYER for deposit in a trust account if required by state or local law. BUYER shall pay any sales or use tax applicable to the transfer of personal property included in the sale.

**22. POST-CLOSING ADJUSTMENTS, COLLECTIONS AND PAYMENTS:** To the extent any items were prorated or credited at Closing based upon estimates, BUYER and SELLER shall reconcile the actual amount of revenues or liabilities upon receipt or payment thereof after Closing. Any bills or invoices received by BUYER after Closing which relate to services rendered or goods delivered to the SELLER or the PROPERTY prior to Closing shall be paid by SELLER upon presentation of such bill or invoice. At BUYER's option, BUYER may pay such bill or invoice and be reimbursed the amount paid plus interest at the rate of 12% per annum beginning fifteen (15) days from the date of BUYER's written demand to SELLER for reimbursement until such reimbursement is made. Notwithstanding the foregoing, if tenants pay certain expenses based on estimates subject to a post-closing reconciliation to the actual amounts of those expenses, then BUYER shall be entitled to any surplus and shall be liable for any credit resulting from the reconciliation. Rents collected from each tenant after Closing shall be applied first to rentals due most recently from such tenant for the period after closing, and the balance shall be applied for the benefit of SELLER for delinquent rentals owed for a period prior to closing. The amounts applied for the benefit of SELLER shall be turned over by BUYER to SELLER promptly after receipt. SELLER shall be entitled to pursue any lawful methods of collection of delinquent rents but shall have no right to evict tenants after Closing.

**23. RISK OF LOSS OR NEGLECT:** Prior to closing of this sale, all risk of loss shall remain with SELLER. In addition, should the PROPERTY be materially damaged by fire, neglect, or other destructive cause prior to closing, this agreement shall be voidable at the option of BUYER.

**24. SECTION 1031 TAX DEFERRED EXCHANGE:** If applicable, each party shall cooperate with the other Party in effectuating an exchange under IRS Section 1031; provided however, that the other Party's cooperation shall be conditioned on the following: (a) the exchange shall be at no additional liability and/or cost to the other Party; (b) the exchange shall not delay Settlement or Closing; and (c) the other Party shall not be required to acquire title to any proposed exchange properties to accommodate an exchange. The exchanging party shall indemnify, defend and hold the other Party harmless from and against any and all claims, demands, costs and expenses which the other Party may sustain or incur resulting from the attempt by the exchanging Party to consummate the sale or acquisition of the PROPERTY as a 1031 exchange.

**25. POSSESSION:** SELLER shall deliver physical possession of the PROPERTY to BUYER with twenty-four (24) hours following Closing or at such other date and time as is agreed to by the parties in writing.

**26. TRANSMISSION OF DOCUMENTS:** Facsimile or electronic transmission of any signed original document, and retransmission of any signed facsimile or electronic transmission shall be the same as delivery of an original. At the request of either the BUYER or SELLER, or the lender, or the Closing Agency, the BUYER and SELLER will confirm facsimile or electronic transmitted signatures by signing an original document.

**27. BUSINESS DAYS:** A business day is herein defined as Monday through Friday, 8:00 A.M. to 5:00 P.M. in the local time zone where the subject PROPERTY is physically located. A business day shall not include any Saturday or Sunday, nor shall a business day include any legal holiday recognized by the state of Idaho as found in Idaho Code §73-108. The time in which any act required under this agreement is to be performed shall be computed by excluding the date of execution and including the last day. The first day shall be the day after the date of execution. If the last day is a legal holiday, then the time for performance shall be the next subsequent business day.

**28. CALENDAR DAYS:** A calendar day is herein defined as Monday through Sunday, 8:00 A.M. to 5:00 P.M., in the local time zone where the subject PROPERTY is physically located. A calendar day shall include any legal holiday. The time in which any act required under this agreement is to be performed shall be computed by excluding the date of execution and including the last day, thus the first day shall be the day after the date of execution. Any reference to "day" or "days" in this agreement means the same as calendar day, unless specifically enumerated as a "business day."

**29. DEFAULT:** If BUYER defaults in the performance of this Agreement, SELLER shall be entitled, as SELLER's sole and exclusive remedy, to terminate this Agreement by written notice to the BUYER, in which event the Earnest Money deposit shall be paid to SELLER as liquidated damages. If SELLER defaults, having approved said sale and fails to consummate the same as herein agreed, BUYER's Earnest Money deposit shall be returned to him/her and SELLER shall pay for the costs of title insurance, escrow fees, credit report fees, inspection fees, Brokerage fees and attorney's fees, if any. This shall not be considered as a waiver by BUYER of any other lawful right or remedy to which BUYER may be entitled.

BUYER'S Initials (____)(____) Date 12/24/15      SELLER'S Initials (____)(____) Date 12/30/15

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been approved for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

**PROPERTY ADDRESS:** 669 Quinn                                                                                 ID#: FK 122315

**30. EARNEST MONEY DISPUTE / INTERPLEADER:** Notwithstanding any termination or breach of this Agreement, BUYER and SELLER agree that in the event of any controversy regarding the Earnest Money and things of value held by Broker or closing agency, Broker may reasonably rely on the terms of this Agreement or other written documents signed by both parties to determine how to disburse the disputed money. However, Broker or closing agency shall not be required to take any action but may await any proceeding, or at Broker's or closing agency's option and sole discretion, may interplead all parties and deposit any moneys or things of value into a court of competent jurisdiction and shall recover all costs which were incurred as a result of the dispute including, but not limited to, reasonable attorney's fees. If either parties' Broker incurs attorney's fees as a result of any Earnest Money dispute, whether or not formal legal action is taken, said Broker is entitled to recover actual fees incurred from either BUYER or SELLER.

**31. ATTORNEY'S FEES:** If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's fees, including such costs and fees on appeal.

**32. SEVERABILITY:** In the case that any one or more of the provisions contained in this Agreement, or any application thereof, shall be invalid, illegal or unenforceable in any respect, the validity, legality or enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**33. COUNTERPARTS:** This Agreement may be executed in counterparts. Executing an agreement in counterparts shall mean the signature of two identical copies of the same agreement. Each identical copy of an agreement signed in counterparts is deemed to be an original, and all identical copies shall together constitute one and the same instrument.

**34. AUTHORITY OF SIGNATORY:** If BUYER or SELLER is a corporation, partnership, trust, estate, or other entity, the person executing this agreement on its behalf warrants his or her authority to do so and to bind BUYER or SELLER.

**35. ENTIRE AGREEMENT:** This Agreement, including any Addendums or exhibits, constitutes the entire Agreement between the parties and no warranties, including any warranty of habitability or representations have been made or shall be binding upon either party unless herein set forth. All implied warranties of merchantability and/or fitness for a particular purpose are hereby excluded.

**36. ACKNOWLEDGMENT OF PROFESSIONAL REVIEW:** BUYER and SELLER hereby acknowledge that their Broker and/or Agent advised both parties to obtain professional inspections of the PROPERTY, including inspections of the PROPERTY's title and platting, zoning requirements and the PROPERTY's services and utilities. Additionally, BUYER and SELLER have been advised to obtain appropriate tax, accounting, legal or other professional advice or counsel when necessary, including, but not limited to, independent legal review of this Agreement. Furthermore, it is acknowledged that the parties Brokers and/or Agents have not made any representations or warranties or conducted any independent investigation of the condition or financial feasibility of the PROPERTY. BUYER and SELLER have not relied on any marketing material or assertions of any Broker and/or Agent in determining the viability or fitness of the PROPERTY for its intended purpose.

**37. REPRESENTATION CONFIRMATION:** Check one (1) box in Section 1 and one (1) box in Section 2 below to confirm that in this transaction, the brokerage(s) involved had the following relationship(s) with the BUYER(S) and SELLER(S).

Section 1:
- ... A. The brokerage working with the BUYER(S) is acting as an AGENT for the BUYER(S).
- ... B. The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S), without an ASSIGNED AGENT.
- ... C. The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S) and has an ASSIGNED AGENT acting solely on behalf of the BUYER(S).
- X  D. The brokerage working with the BUYER(S) is acting as a NONAGENT for the BUYER(S).

Section 2:
- X  A. The brokerage working with the SELLER(S) is acting as an AGENT for the SELLER(S).
- ... B. The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S), without an ASSIGNED AGENT.
- ... C. The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S) and has an ASSIGNED AGENT acting solely on behalf of the SELLER(S).
- ... D. The brokerage working with the SELLER(S) is acting as a NONAGENT for the SELLER(S).

Each party signing this document confirms that he has received, read and understood the Agency Disclosure Brochure adopted or approved by the Idaho real estate commission and has consented to the relationship confirmed above. In addition, each party confirms that the brokerage's agency office policy was made available for inspection and review. EACH PARTY UNDERSTANDS THAT HE IS A "CUSTOMER" AND IS NOT REPRESENTED BY A BROKERAGE UNLESS THERE IS A SIGNED WRITTEN AGREEMENT FOR AGENCY REPRESENTATION.

BUYER'S Initials ( RJJ )(    )  Date  12/24/15          SELLER'S Initials ( CA )(    )  Date  12/30/15

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.





THIS SKETCH IS MADE SOLELY
FOR THE PURPOSE OF ASSISTING
IN LOCATING THE PREMISES.
THE COMPANY ASSUMES NO
LIABILITY FOR ALLEGED LOSS OR
DAMAGE WHICH MAY RESULT
FROM RELIANCE ON THIS MAP.



# ADDENDUM NO. 4
## TO
## REAL ESTATE PURCHASE AND SALES AGREEMENT

**THIS IS AN ADDENDUM** to that REAL ESTATE PURCHASE AND SALES AGREEMENT (the "REPSA") with an Effective Date of December 30, 2015 between Featherston Holdings or Assigns. Buyer, and First Pocatello Associates, L.P., ID# FH 122315, regarding the Property located at **669 Quinn Road Pocatello, Idaho**.  The following terms are hereby incorporated as part of the REPSA.

1. Earnest Money Paragraph #4, including Addendum #3, replaced with the following: Buyer shall deposit no later than 28 January, 2016 $150,000. Of which Fifty Thousand Dollars ($50,000.00) shall be immediately released to the Seller, applied to the closing and shall become NON REFUNDABLE.

2. Buyer shall have one options to extend the Due Diligence by sixty (60) days, by depositing and additional One Hundred Twenty-Five Thousand Dollars ($125,000) as Earnest money of which Twenty Five Thousand Dollars ($25,000) shall be immediately released to Seller, applied to the closing and shall become NON REFUNDABLE.

**Entire Agreement.** The Agreement, the First Addendum, Second Addendum, Third Addendum and this Forth Addendum constitute the entire agreement between the Parties.

**No Changes to Other Terms:** All other terms and provisions of the Agreement shall remain as they are presently stated. To the extent the terms of this Addendum modify of conflict with any provisions of the Agreement, the terms of this Addendum shall control.

To the extend the terms of this Addendum modify or conflict with any provisions of the REPSA, including all prior addenda and counteroffers, these terms shall control.  All other terms of the REPSA, by Addendum One, Two and this Addendum shall remain the same.

Upon its execution by the Parties, the Addendum is made an integral part of the Agreement.

## ACCEPTANCE

☐ Buyer ☐ Seller Signature    (Date) (Time)      ☐ Buyer ☐ Seller Signature   (Date) (Time)

## ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT

This **ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT** ("Addendum") is made effective this 30th day of December, 2015, by and among **FEATHERSTONE HOLDINGS**, a California corporation ("Buyer") and **FIRST POCATELLO ASSOCIATES, L.P.**, a New Jersey limited partnership qualified to transact business in Idaho ("Seller"). Buyer and Seller are collectively referred to herein as the "Parties."

### *RECITALS*

**WHEREAS**, Buyer signed the Real Estate Purchase and Sale Agreement dated as of December 23, 2015 (the "Agreement") for the sale of real property from Seller to Buyer; and

**WHEREAS**, the Parties mutually desire to revise the Agreement on the terms set forth herein.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the recitals above, and in consideration of the promises and the mutual representations, covenants, agreements contained hereinafter, Buyer and Seller represent, covenant, and agree as follows:

### AGREEMENT

1. **Purchase Price.** Section 2 of the Agreement is hereby amended to increase the Purchase Price of the Property to Twenty-One Million and no/100ths dollars ($21,000,000.00).

2. **Allocation of Purchase Price.** The Purchase Price shall be allocated for federal and state tax purposes among real property, personal property, and intangibles by the Parties on terms as the Parties may mutually agree at a later date.

3. **Demonstration of Financial Capacity.** Before the Buyer conducts any Due Diligence on the Property, the Buyer shall deliver to Seller a financing commitment valid through the Closing Date from a state chartered or nationally chartered bank or lending institution for the full amount of the Purchase Price, less Earnest Money deposited by Buyer.

4. **Conveyance of Title.** Title to the Property shall be conveyed by a Warranty Deed. Title to the Property shall be marketable and insurable and shall be free and clear of all liens, encumbrances, and restrictions, subject to the following matters, which shall be deemed to be Permitted Exceptions (i) the lien of all ad valorem real estate taxes and assessments not yet due and payable as of the Closing Date, subject to adjustment as herein provided; (ii) the rights of tenants, as tenants only, under any existing leases and any new leases entered into between the date of the Agreement and Closing and, where required, approved by Buyer in accordance with the terms of the Agreement; (iii) local, state and federal laws, ordinances or governmental regulations, including but not limited to, building and zoning laws, ordinances and regulations, now or hereafter in effect relating to the Property; and (iv) items appearing of record, including, but not limited to, exceptions shown on the Preliminary Title Commitment or shown on any survey (or, if no survey is furnished by Buyer, any matter that would be shown on a current ALTA

survey of the Property) and, in either case, not objected to by Buyer prior to the Due Diligence Deadline.

5. **Assumption of Leases and Indemnification.** At the Closing, Seller shall execute an assignment of leases then in effect on the Property ("Leases"), in such form as is reasonably agreeable by the parties so that the Leases are assigned to Buyer as of the Closing (the "Assignment"). A form of the Assignment shall be presented to Buyer by Seller within thirty (30) days of the date of this Addendum. Such Assignment shall also provide that effective as of the day immediately following the date of closing of the sale under the Agreement, Buyer will assume and perform all of Seller's obligations with respect to the Leases. Buyer will indemnify, defend, and hold harmless Seller with respect to all obligations of Lessor, and claims against Lessor accruing under the Leases and relating to periods falling after Closing. Buyer's obligation under this paragraph will specifically survive the Closing. Seller will indemnify, defend, and hold harmless Buyer with respect to all obligations of Seller, and claims against Lessor accruing under, the Leases, and relating to periods occurring prior to the date of sale closing under this Agreement. Seller's obligations under this paragraph will specifically survive the Closing.

6. **Settlement and Closing Costs.** The second sentence of Subparagraph 11(B) ("Settlement and Closing Costs") is hereby deleted and replaced with the following:

> Utilities (including but not limited to water, sewer, trash, gas, and electricity), taxes and assessments for the current year, rents, and interest on any assumed obligations shall be prorated at Settlement as set forth in this section.

Subparagraph 11(B) is otherwise unchanged.

7. **Items Specifically Excluded In This Sale.** The following items are specifically excluded from sale under the Agreement:

A. The Seller's personal residence, commonly described as 1499 Partridge Cove, Pocatello, Idaho 83201; and

B. The Seller's personal vehicles: (i) a 2009 white Ford F-150 pickup truck; (ii) a 2014 red Ford F-350 pickup truck; (iii) a 2013 red Ford Explorer; and (iv) a Gooseneck trailer.

8. **Seller Representations and Warranties.** Subparagraphs 18(c) and 18(d) of the Agreement ("Seller Representations and Warranties") are hereby deleted and replaced with the following:

> (c)     Seller has not received any written notification from any governmental or public authority that the Property is in violation of any applicable hazardous substance or environmental, fire, health, building, use, occupancy, or zoning laws where such violation remains outstanding.

ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT – *2/5*

Client:4034788.





# ADDENDUM NO. _3_
## TO
## REAL ESTATE PURCHASE AND SALES AGREEMENT

**THIS IS AN ADDENDUM** to that REAL ESTATE PURCHASE AND SALES AGREEMENT (the "REPSA") with an Effective Date of December 30, 2015 between Featherston Holdings or Assigns. Buyer, and First Pocatello Associates, L.P., ID# FH 122315, regarding the Property located at **669 Quinn Road Pocatello, Idaho**.  The following terms are hereby incorporated as part of the REPSA.

**Addendum #2.** Item 1 (One) to be deleted in its entirety and replaced with, Within 90 days from the start of the due diligence period Buyer shall provide Seller with proof of funds. The Buyer may extend the deadline for an additional 60 days to show proof of funds by depositing an additional $50,000 earnest money which shall be credited at closing.

**Earnest Money Paragraph #4 deposit date to be replace with.** First deposit of Earnest Money of $100,000 to be deposited on or before 26 January, 2016 which shall be the effective date of the agreement.

**Entire Agreement.** The Agreement, the First Addendum, Second Addendum and this Third Addendum constitute the entire agreement between the Parties.

**No Changes to Other Terms:** All other terms and provisions of the Agreement shall remain as they are presently stated. To the extent the terms of this Addendum modify of conflict with any provisions of the Agreement, the terms of this Addendum shall control.

To the extend the terms of this Addendum modify or conflict with any provisions of the REPSA, including all prior addenda and counteroffers, these terms shall control.  All other terms of the REPSA, by Addendum One, Two and this Addendum shall remain the same.

Upon its execution by the Parties, the Addendum is made an integral part of the Agreement.

## ACCEPTANCE

☐ Buyer ☐ Seller Signature   (Date) (Time)    ☐ Buyer ☐ Seller Signature  (Date) (Time)

later than seventy-five (75) days after the execution of the Second Addendum.

2.  **Confidentiality.** The following provision is hereby inserted into the First Addendum immediately after Subparagraph 10(A):

    B.  Prior to Closing, Seller and its representatives shall hold in strictest confidence all data and information obtained with respect to Buyer, its business, or the Property, whether obtained before or after the execution and delivery of the Agreement, and shall not disclose the same to others except pursuant to court order or as otherwise required by law; provided, however, that it is understood and agreed that Seller may disclose such data and information to the employees, consultants, accountants, lenders and attorneys of Seller provided that such persons are instructed to treat such data and information confidentially. The foregoing shall not apply to information obtained from a source other than Buyer or otherwise available in the public domain. If the Agreement is terminated or Seller fails to perform hereunder, Seller shall promptly return to Buyer any statements, documents, schedules, exhibits or other written information obtained from Buyer in connection with the Agreement or the transaction contemplated herein. In the event of a breach or threatened breach by Seller or its agents or representatives of this Section, Buyer shall be entitled to an injunction restraining Seller or its agents or representatives from disclosing, in whole or in part, such confidential information. Nothing herein shall be construed as prohibiting Buyer from pursuing any other available remedy at law or in equity for such breach or threatened breach. This Section of the Addendum shall survive Closing or any termination of the Agreement.

3.  **Entire Agreement.** The Agreement, the First Addendum and this Second Addendum constitute the entire agreement between the Parties.

4.  **Defined Terms.** Terms used but not defined in this Second Addendum shall have the meanings ascribed thereto in the Agreement.

5.  **No Change to Other Terms.** All other terms and provisions of the First Addendum and the Agreement shall remain as they are presently stated. To the extent the terms of this Second Addendum modify or conflict with any provision of the First Addendum or the Agreement, the terms of this Second Addendum shall control. To the extent the terms of the First Addendum modify or conflict with any provision in the Agreement, the terms of the First Addendum shall control. Upon its execution by the Parties, this Second Addendum is made an integral part of the Agreement.

6.  **Counterparts.** This Second Addendum may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

    *{Remainder of Page Intentionally Blank, Signature Page follows}*

**SECOND ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT – 2**

Client:4036101.2

IN WITNESS WHEREOF, the Parties have set their hands effective the date first written above, and state that they are authorized to execute this agreement.

**BUYER:**

FEATHERSTONE HOLDINGS, a California corporation

By_____

   Its_____

**SELLER:**

FIRST POCATELLO ASSOCIATES, L.P. an Idaho limited partnership

By_____

Its_____

14 of



THIS SKETCH IS MADE SOLELY
FOR THE PURPOSE OF ASSISTING
IN LOCATING THE PREMISES.
THE COMPANY ASSUMES NO
LIABILITY FOR ALLEGED LOSS OR
DAMAGE WHICH MAY RESULT
FROM RELIANCE ON THIS MAP.

– EXHIBIT A –

RTF 12/24/15



## SECOND ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT

This **SECOND ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT** ("Second Addendum") is made effective this _31_ day of _December, 2015_ by and among **FEATHERSTONE HOLDINGS**, a California corporation ("Buyer") and **FIRST POCATELLO ASSOCIATES, L.P.**, a New Jersey limited partnership qualified to transact business in Idaho ("Seller"). Buyer and Seller are collectively referred to herein as the "Parties."

### RECITALS

**WHEREAS**, Buyer signed the Real Estate Purchase and Sale Agreement dated as of December 23, 2015 (the "Agreement") for the sale of real property from Seller to Buyer;

**WHEREAS**, Seller executed the Agreement subject to the terms of the Addendum to the Real Estate Purchase and Sale Agreement dated December 30, 2015 ("First Addendum"); and

**WHEREAS**, the Parties mutually desire to revise the Agreement as amended on the terms set forth herein.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the recitals above, and in consideration of the promises and the mutual representations, covenants, agreements contained hereinafter, Buyer and Seller represent, covenant, and agree as follows:

### AGREEMENT

1. **Demonstration of Financial Capacity.** The third paragraph in the First Addendum ("Demonstration of Financial Capacity") is hereby deleted and replaced with the following:

    **Demonstration of Financial Capacity.**

    A. No later than ten (10) days after the execution of the Second Addendum, Buyer shall provide Seller a financial statement in the form of a balance sheet signed by an officer of the Buyer dated no earlier than December 1, 2015.

    B. No later than ninety (90) days after the execution of the Second Addendum, Buyer shall deliver to Seller a financing commitment valid through the Closing Date from a state chartered or nationally chartered bank or lending institution for the full amount of the Purchase Price, less Earnest Money deposited by Buyer (the "Financing Commitment"). The Buyer may extend the deadline for providing the Financing Commitment by an additional sixty (60) days by depositing an additional fifty-thousand and no/100ths dollars ($50,000.00) of Earnest Money no

SECOND ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT — 1

Client:4036101.2

_12/31/15_





Subparagraph 18(c) of the Agreement is hereby re-designated Subparagraph 18(d).

9.  **Condition of Property at Closing.** Paragraph 19 in the Agreement ("Conditions of Property at Closing") is hereby deleted in its entirety and replaced with the following:

> 19.  **Condition of Property at Closing.** Upon expiration of the Due Diligence Deadline, and subject only to the representations and warranties stated herein, BUYER agrees to purchase the PROPERTY in as-is condition, without representations, warranties, and covenants, express or implied, of any kind of nature from Seller to Buyer in connection with this sale as to the condition, quality, or suitability of the property sold or its environmental condition. Upon Closing, BUYER shall assume all obligations with respect to the Property.

10. **Confidentiality.**

> A.  Prior to Closing, Buyer and its representatives shall hold in strictest confidence all data and information obtained with respect to Seller, its business, or the Property, whether obtained before or after the execution and delivery of the Agreement, and shall not disclose the same to others except pursuant to court order or as otherwise required by law; provided, however, that it is understood and agreed that Buyer may disclose such data and information to the employees, consultants, accountants, lenders and attorneys of Buyer provided that such persons are instructed to treat such data and information confidentially. The foregoing shall not apply to information obtained from a source other than Seller or otherwise available in the public domain. If the Agreement is terminated or Buyer fails to perform hereunder, Buyer shall promptly return to Seller any statements, documents, schedules, exhibits or other written information obtained from Seller in connection with the Agreement or the transaction contemplated herein. In the event of a breach or threatened breach by Buyer or its agents or representatives of this Section, Seller shall be entitled to an injunction restraining Buyer or its agents or representatives from disclosing, in whole or in part, such confidential information. Nothing herein shall be construed as prohibiting Seller from pursuing any other available remedy at law or in equity for such breach or threatened breach. This Section of the Addendum shall survive Closing or any termination of the Agreement.

11. **Entire Agreement.** The Agreement and this Addendum constitute the entire agreement between the Parties.

12. **Defined Terms.** Terms used but not defined in this Addendum shall have the meanings ascribed thereto in the Agreement.

13. **No Change to Other Terms.** All other terms and provisions of the Agreement shall remain as they are presently stated. To the extent the terms of this Addendum modify or conflict with any provision of the Agreement, the terms of this Addendum shall control.

ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT — 3/5

Client:4034788.1

Upon its execution by the Parties, this Addendum is made an integral part of the Agreement.

14.   **Counterparts.**  This Addendum may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

*{Remainder of Page Intentionally Blank, Signature Page follows}*

Client:4094799.1

IN WITNESS WHEREOF, the Parties have set their hands effective the date first written above, and state that they are authorized to execute this agreement.

**BUYER:**

FEATHERSTONE HOLDINGS, a California corporation

By_____

   Its_____

**SELLER:**

FIRST POCATELLO ASSOCIATES, L.P.
an Idaho limited partnership

By_____

   Its  GENERAL  PARTNER



**SECOND ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT**

This **SECOND ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT** ("Second Addendum") is made effective this 31 day of December, 2015 by and among **FEATHERSTONE HOLDINGS**, a California corporation ("Buyer") and **FIRST POCATELLO ASSOCIATES, L.P.**, a New Jersey limited partnership qualified to transact business in Idaho ("Seller"). Buyer and Seller are collectively referred to herein as the "Parties."

### RECITALS

**WHEREAS**, Buyer signed the Real Estate Purchase and Sale Agreement dated as of December 23, 2015 (the "Agreement") for the sale of real property from Seller to Buyer;

**WHEREAS**, Seller executed the Agreement subject to the terms of the Addendum to the Real Estate Purchase and Sale Agreement dated December 30, 2015 ("First Addendum"); and

**WHEREAS**, the Parties mutually desire to revise the Agreement as amended on the terms set forth herein.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of the recitals above, and in consideration of the promises and the mutual representations, covenants, agreements contained hereinafter, Buyer and Seller represent, covenant, and agree as follows:

### AGREEMENT

1.   **Demonstration of Financial Capacity.** The third paragraph in the First Addendum ("Demonstration of Financial Capacity") is hereby deleted and replaced with the following:

**Demonstration of Financial Capacity.**

A.   No later than ten (10) days after the execution of the Second Addendum, Buyer shall provide Seller a financial statement in the form of a balance sheet signed by an officer of the Buyer dated no earlier than December 1, 2015.

B.   No later than ninety (90) days after the execution of the Second Addendum, Buyer shall deliver to Seller a financing commitment valid through the Closing Date from a state chartered or nationally chartered bank or lending institution for the full amount of the Purchase Price, less Earnest Money deposited by Buyer (the "Financing Commitment"). The Buyer may extend the deadline for providing the Financing Commitment by an additional sixty (60) days by depositing an additional fifty-thousand and no/100ths dollars ($50,000.00) of Earnest Money no

12/31/15

Client:4036101.2

later than seventy-five (75) days after the execution of the
Second Addendum.

2.  **Confidentiality.**  The following provision is hereby inserted into the First Addendum
    immediately after Subparagraph 10(A):

    B.  Prior to Closing, Seller and its representatives shall hold in strictest confidence all
        data and information obtained with respect to Buyer, its business, or the Property,
        whether obtained before or after the execution and delivery of the Agreement, and
        shall not disclose the same to others except pursuant to court order or as otherwise
        required by law; provided, however, that it is understood and agreed that Seller
        may disclose such data and information to the employees, consultants,
        accountants, lenders and attorneys of Seller provided that such persons are
        instructed to treat such data and information confidentially.  The foregoing shall
        not apply to information obtained from a source other than Buyer or otherwise
        available in the public domain.  If the Agreement is terminated or Seller fails to
        perform hereunder, Seller shall promptly return to Buyer any statements,
        documents, schedules, exhibits or other written information obtained from Buyer
        in connection with the Agreement or the transaction contemplated herein.  In the
        event of a breach or threatened breach by Seller or its agents or representatives of
        this Section, Buyer shall be entitled to an injunction restraining Seller or its agents
        or representatives from disclosing, in whole or in part, such confidential
        information.  Nothing herein shall be construed as prohibiting Buyer from
        pursuing any other available remedy at law or in equity for such breach or
        threatened breach.  This Section of the Addendum shall survive Closing or any
        termination of the Agreement.

3.  **Entire Agreement.**  The Agreement, the First Addendum and this Second Addendum
    constitute the entire agreement between the Parties.

4.  **Defined Terms.**  Terms used but not defined in this Second Addendum shall have the
    meanings ascribed thereto in the Agreement.

5.  **No Change to Other Terms.**  All other terms and provisions of the First Addendum and
    the Agreement shall remain as they are presently stated.  To the extent the terms of this
    Second Addendum modify or conflict with any provision of the First Addendum or the
    Agreement, the terms of this Second Addendum shall control.  To the extent the terms of
    the First Addendum modify or conflict with any provision in the Agreement, the terms of
    the First Addendum shall control.  Upon its execution by the Parties, this Second
    Addendum is made an integral part of the Agreement.

6.  **Counterparts.**  This Second Addendum may be executed in one or more counterparts,
    each of which shall be deemed an original but all of which together will constitute one
    and the same instrument.

*{Remainder of Page Intentionally Blank, Signature Page follows}*

(2/31/15

**SECOND ADDENDUM TO REAL ESTATE PURCHASE AND SALE AGREEMENT – 2**     Client:4036101.2

22 of

**ADDENDUM NO. 3**
**TO**
**REAL ESTATE PURCHASE CONTRACT**

**THIS IS AN X ADDENDUM** to that REAL ESTATE PURCHASE CONTRACT (the "REPC")
with an Effective Date of December 23, 2015 between Featherston Holdings or Assigns.
Buyer, and First Pocatello Associates, L.P., regarding the Property located at **669 Quinn Road**
**Pocatello, Idaho**. The following terms are hereby incorporated as part of the REPC.

**Binding Arbitration**. All claims and disputes arising under or relating to this Agreement are to
be settled by binding arbitration in the state Idaho or another location mutually agreeable to the
parties. The arbitration shall be conducted on a confidential basis pursuant to the Commercial
Arbitration Rules of the American Arbitration Association. Any decision or award as a result of
any such arbitration proceeding shall be in writing and shall provide an explanation for all
conclusions of law and fact and shall include the assessment of costs, and expenses. Any such
arbitration shall be conducted by an arbitrator experienced in Real Estate and shall include a
written record of the arbitration hearing. The parties reserve the right to object to any individual
who shall be employed by or affiliated with a competing organization or entity. The parties agree
and waive their right to a trial and agree to accept the arbitrator's decision as final.

**Entire Agreement.** The Agreement, the First Addendum, Second Addendum and this Third
Addendum constitute the entire agreement between the Parties.


To the extend the terms of this ADDENDUM modify or conflict with any provisions of the REPC,
including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC,
not modified by this ADDENDUM shall remain the same.


**ACCEPTANCE**


☐ Buyer ☐ Seller Signature     (Date) (Time)        ☐ Buyer ☐ Seller Signature     (Date)(Time)



# RE-23 COMMERCIAL/INVESTMENT
# REAL ESTATE PURCHASE AND SALE AGREEMENT

JULY 2014 EDITION

**Idaho Association of Realtors®**
*The Voice for Real Estate™ in Idaho*

THIS IS A LEGALLY BINDING CONTRACT, READ THE ENTIRE DOCUMENT, INCLUDING ANY ATTACHMENTS.
IF YOU HAVE ANY QUESTIONS, CONSULT YOUR ATTORNEY AND/OR ACCOUNTANT BEFORE SIGNING.

Page 1 of 6

**NO WARRANTIES, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF HABITABILITY, AGREEMENTS
OR REPRESENTATIONS NOT EXPRESSLY SET FORTH HEREIN SHALL BE BINDING UPON EITHER PARTY.**

1  ID# FH 122315                                                                    DATE 23 December 2015

3  **LISTING AGENCY** Coldwell Banker Commercial Advisors        Office Phone #_____  Fax #_____
4  Listing Agent Don Zebe                        E-Mail_____                Phone #_____
5  **SELLING AGENCY** Coldwell Banker Commercial Advisors       Office Phone #_____  Fax #_____
6  Selling Agent Don Zebe                 E-Mail don.zebe@cbcadvisors.com    Phone # 208 403 1973

8  **1. BUYER:** Featherstone Holdings or Assigns
9  (Hereinafter called "**BUYER**") agrees to purchase, and **SELLER** First Pocatello Associates LP
10 (Hereinafter called "**SELLER**") agrees to sell the following described real estate hereinafter referred to as "**PROPERTY**"
11 COMMONLY KNOWN AS 669 Quinn Road
12 City POCATELLO                County BANNOCK             , Idaho, Zip 83201              legally described as:_____
13                                    RPCPP023305
14 OR Legal Description Attached as exhibit  A Site Map             (**Exhibit must accompany original offer and be signed or initialed by**
15 **BUYER and SELLER.**)

17 **2.** 19,000,000                  **PURCHASE PRICE:** Nineteen Million                              **DOLLARS,**
18 which shall be payable by federal wire transfer or other collected funds at Closing, unless otherwise specified in an addendum hereto. Title of SELLER is to
19 be conveyed by X warranty deed ____ special warranty deed or _____ deed (not including closing costs).

21 **3. FINANCING CONTINGENCY: THIS IS NOT AN ALL CASH OFFER.** If this is an all cash offer, BUYER'S OBLIGATION TO CLOSE SHALL NOT
22 BE SUBJECT TO ANY FINANCING CONTINGENCY. **If this is not an all cash offer and an appraisal is required by lender, the PROPERTY must
23 appraise at not less than purchase price** and BUYER'S Earnest Money shall be returned at BUYER'S request. *BUYER may also apply for a loan with*
24 *different conditions and costs and close transaction provided all other terms and conditions of this Agreement are fulfilled, and the new loan does not*
25 *increase the costs or requirements of the SELLER.* This Agreement is only subject to a satisfactory appraisal and final lender underwriting after the release
26 of all contingencies, inspections, due diligence and feasibility studies have been completed to the satisfaction of BUYER.

28 **4. EARNEST MONEY:** BUYER hereby deposits $ Two Hundred Twenty Five Thousand Dollars        as Earnest Money, together with interest
29 thereon, if any. Evidenced by: ...cash personal check **x** cashier's check ...note (due date):_____
30 ...other_____                              and a receipt is hereby acknowledged.    Earnest Money to be deposited in trust account
31 ...upon receipt or **X upon acceptance** by BUYER and SELLER or **x** other FIRST AMERICAN TITLE COMPANY 223 N 15TH STREET POCATELLO
32 IDHAO 83201 Attn: Melissa Raschke  208 232 6224 and shall be held by: ...Listing Broker ...Selling Broker
33 **X** other FIRST AMERICA TITLE, POCATELLO            for the benefit of the parties hereto.
34 Unless otherwise agreed to in writing, the Earnest Money shall be applicable to the purchase price.
35 **THE RESPONSIBLE BROKER SHALL BE:** Steve Bogden, COLDWELL BANKER COMMERCIAL ADVISORS

37 **5. OTHER TERMS AND/OR CONDITIONS:** This Agreement is made subject to the following special terms, considerations, addenda and/or
38 contingencies which must be satisfied prior to closing 1.  Buyer understands the purchase of the property is "AS IS"
39 2. Upon removal of due diligence earnest money shall be non-refundable and earnest money shall be applied to the purchase price
40 3. Seller to provide all leases, rent rolls, maintenance records, surveys, inspections, reports, clearances, that are in sellers possession, upon delivery due
41 diligence shall commence.
42 4. Buyer shall have one option to extend due diligence for 60 days with 5 day written notice.
43 _____
44 _____
45 _____
46 _____

48 **6. DEADLINES:** The following deadlines shall be binding on the parties and referred by name in this Agreement. **TIME IS OF THE ESSENCE IN THIS**
49 **AGREEMENT.**
50    **(A) "SELLER DISCLOSURE DEADLINE":**      20  CALENDAR DAYS (ten [10] if left blank)
51    **(B) "DUE DILIGENCE DEADLINE":**           90 CALENDAR DAYS (thirty [30] if left blank)
52    **(C) "SETTLEMENT AND CLOSING DEADLINE":**  28 June 2016

54 **7. TITLE COMPANY:** The parties agree that First American Title Company
55 Title Company located at 223 N 15 St. Pocatello, Idaho 83201 208 232 6224 Att: Melissa Raschke                shall provide the title
56 policy and preliminary report of commitment.

58 **8. ACCEPTANCE:** This offer is made subject to the acceptance of SELLER and BUYER on or before (Date) 2 January 2016 at (Local
59 Time in which PROPERTY is located) 5_____ ...A.M. XP.M.

62 **9. ASSIGNMENT:** This Agreement and any rights or interests created herein X may ... may not be sold, transferred, or otherwise assigned.

64 **BUYER'S** Initials (_____)(_____) Date 12/24/15      **SELLER'S** Initials (_____)(_____) Date_____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

JULY 2014 EDITION     RE-23 COMMERCIAL / INVESTMENT REAL ESTATE PURCHASE AND SALE AGREEMENT     Page 2 of 6

PROPERTY ADDRESS:  669 Quinn Road _____     ID#: FH 122315

**10. ITEMS INCLUDED & EXCLUDED IN THIS SALE:** All existing fixtures and fittings that are attached to the PROPERTY are **INCLUDED IN THE PURCHASE PRICE** (unless excluded below), and shall be transferred free of liens. Unless specifically excluded below, the fixtures and fittings included in the purchase price shall include (1) all personal property owned by the SELLER and used primarily in connection with the PROPERTY, and (2) all rights and easements appurtenant to the PROPERTY.
**ITEMS SPECIFICALLY INCLUDED IN THIS SALE:  All materials, equipment, parts, vehicles, used for property maintenance, Equipment inventory.**
_____
_____
_____
_____

**ITEMS SPECIFICALLY EXCLUDED IN THIS SALE: Sellers personal property** _____
_____
_____
_____
_____

**11. SETTLEMENT AND CLOSING:**

**(A). SETTLEMENT:** Settlement and Closing shall take place on the Settlement and Closing Deadline, unless the parties to this Agreement agree upon another date in writing. Settlement and Closing shall be deemed to have occurred only when all of the following have been fully completed: (a) BUYER and SELLER have signed and delivered to the Escrow Agent all documents required by this Agreement, by any lender, or by applicable law; (b) any monies required to be paid by the BUYER under this Agreement (including any proceeds of any new loan) have been delivered by BUYER, or BUYER's lender, to the Escrow Agent; (c) any monies required to be paid by the SELLER under this Agreement have been delivered by SELLER to the Escrow Agent; and (d) the applicable closing documents have been recorded in the official records of the County Recorder of the county in which the PROPERTY is located. At Closing, SELLER and BUYER shall execute an Assignment and Assumption Agreement transferring all leases and vendor contracts assumed by BUYER through written agreement of the Parties.

**(B). SETTLEMENT AND CLOSING COSTS:** SELLER and BUYER shall each pay one-half of the fee charged by the Escrow Agent for its services in the Settlement and Closing. Taxes and assessments for the current year, rents, and interest on any assumed obligations shall be prorated at Settlement as set forth in this section. Tenant deposits (including, but not limited to, security deposits and prepaid rents) shall be paid or credited by SELLER to BUYER at Settlement. Prorations set forth in this section shall be made by the Escrow Agent as of the Settlement Date unless otherwise agreed to by the parties in writing.

**12. TITLE INSURANCE: There may be types of title insurance coverages available other than those listed below and parties to this agreement are advised to talk to a title company about any other coverages available that will give the BUYER additional coverage.**

**(A). PRELIMINARY TITLE COMMITMENT:** No later than the Seller Disclosure Deadline, SELLER shall furnish to BUYER, at SELLER's sole cost and expense, a preliminary commitment of a title insurance policy showing the condition of the title to said PROPERTY, together with a copy of each instrument, agreement or document listed as an exception to title in the title commitment that is reasonably available to SELLER. BUYER shall have fifteen (15) business days from receipt of the preliminary commitment within which to object in writing to the condition of the title as set forth in the preliminary commitment. If BUYER does not so object, BUYER shall be deemed to have accepted the conditions of the title. It is agreed that if the title of said PROPERTY is not marketable, or cannot be made so within ten (10) business days after notice containing a written statement of defect is delivered to SELLER, then BUYER, at BUYER's option, may either: (a) terminate this agreement by written notice to the SELLER, in which BUYER'S Earnest Money deposit shall be returned to BUYER and neither party shall have any further rights, obligations or liabilities except as expressly set forth in this Agreement; or (b) continue with this Agreement and, if closing occurs, accept title subject to the uncured title defects other than monetary liens. SELLER covenants and agrees that all monetary liens shall be removed by SELLER at closing or insured against by the title insurer, whether or not BUYER has designated such monetary liens as title defects.

**(B). STANDARD COVERAGE OWNER'S POLICY:** At Settlement, SELLER shall, at SELLER's sole expense, furnish to BUYER a title insurance policy in the amount of the purchase price of the PROPERTY showing marketable and insurable title subject to the liens, encumbrances and defects to be discharged or assumed by BUYER as provided herein. BUYER, at its sole option, cost and expense, may elect to obtain an Extended Coverage ALTA policy of title insurance or additional specific endorsements.

**13. SQUARE FOOTAGE VERIFICATION:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE REAL PROPERTY OR IMPROVEMENTS IS APPROXIMATE. IF SQUARE FOOTAGE IS MATERIAL TO THE BUYER, IT MUST BE VERIFIED BY BUYER DURING THE INSPECTION PERIOD.

**14. COVENANTS, CONDITIONS AND RESTRICTIONS (CC&Rs):** As part of the BUYER'S due diligence and inspection of the PROPERTY as set forth in Section 16, BUYER is responsible for obtaining and reviewing a copy of any CC&Rs which may affect the PROPERTY. BUYER shall have 10 business days to review and approve of any such CC&Rs that may affect the PROPERTY. Unless BUYER delivers to SELLER a written and signed objection to the terms of any applicable CC&Rs with particularity describing BUYER'S reasonable objections within such time period as set forth above, BUYER shall be deemed to have conclusively waived any objection to the terms of any CC&Rs affecting the PROPERTY.

**15. SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline, SELLER shall disclose, and provide copies if available, to BUYER the following:
        (a) any studies and/or reports that have previously been performed in connection with or for the PROPERTY, including without limitation, environmental reports, soil studies, seismic studies, site plans and surveys;
        (b) any notices relating to a violation of applicable law including, without limitation, environmental law and laws relating to land use, zoning or compliance with building codes;

BUYER'S Initials ( _RTK_ )( _____ ) Date _12/24/15_     SELLER'S Initials ( _____ )( _____ ) Date_____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®. All rights reserved.

134      (c) SELLER shall make available for inspection all documents in SELLER's possession relating to ownership, operation, renovation or
135 development of the PROPERTY including: statements for real estate tax assessments and utilities for the last year; property management agreements;
136 leases or other occupancy agreements; maintenance records, accounting records and audit records for the past year; and installment purchase contracts or
137 leases of personal property used in connection with the PROPERTY; and
138      (d) all other documents described in any Addenda or Counteroffer to this Agreement.
139

**16. FEASIBILITY CONTINGENCY:**

141
142     **(A).** BUYER's obligations under this Agreement are conditioned upon BUYER's satisfaction, in BUYER's sole discretion, concerning all aspects of the
143 feasibility of the PROPERTY for BUYER's intended purpose. This shall include, but is not limited to: the contracts and leases affecting the
144 PROPERTY; the potential financial performance of the PROPERTY; the availability of government permits and approvals; and the outcome of any
145 appraisals and lender underwriting. This contingency shall be deemed waived unless BUYER gives written notice to SELLER on or before the Due
146 Diligence Deadline that the PROPERTY is unfit for BUYER's intended purpose. If such notice is given, the Earnest Money shall be refunded to
147 BUYER.
148
149     **(B). INSPECTION OF VENDOR CONTRACTS:** In addition to the documents to be disclosed under the Seller Disclosures, SELLER shall make
150 available for inspection by BUYER and its agents by the Seller Disclosure Deadline all "Vendor Contracts" which shall include maintenance and service
151 contracts, and installment purchase contracts or leases and personal property or fixtures used in connection with the PROPERTY. BUYER shall
152 determine by the Due Diligence Deadline: (i) whether SELLER will agree to terminate any objectionable Vendor Contracts; and (ii) whether SELLER will
153 agree to pay any damages or penalties resulting from the termination of objectionable Vendor Contracts. BUYER's voluntary waiver of the Feasibility
154 contingency shall signify BUYER's acceptance of all Vendor Contracts that SELLER has not agreed in writing to terminate. BUYER shall be solely
155 responsible for obtaining any required consents to assumptions of Vendor Contracts and the payment of any assumption fees. SELLER shall
156 cooperate with BUYER's efforts to receive any such consents but shall not be required to incur any additional expenses or liabilities in doing so.
157

**17. INSPECTION/DUE DILIGENCE:**

159
160     **(A).** In conducting BUYER's due diligence prior to the Due Diligence Deadline, or at any time thereafter if and to the extent required by the lender,
161 BUYER shall have the right to conduct inspections, investigations, tests, surveys and other studies at **BUYER's** expense unless otherwise agreed
162 upon in writing by the parties. BUYER must provide reasonable advance notice of BUYER's intent to inspect or test the PROPERTY, and all
163 inspections, investigations, tests, surveys and other studies must be conducted at reasonable times. SELLER shall have the right to accompany
164 BUYER and any of its agents on the PROPERTY at all times. All inspections and tests shall be conducted in a manner that does not unreasonably
165 disrupt the activities and business of SELLER and its tenants. BUYER shall indemnify, hold harmless and defend SELLER, its tenants and employees
166 for any claims for liens, physical damage or personal injury resulting from BUYER's due diligence inspections and/or tests.
167
168     **(B). SATISFACTION/REMOVAL OF INSPECTION DUE DILIGENCE CONTINGENCIES:**
169       (1). If BUYER, in BUYER's sole discretion, determines that the results of the BUYER's due diligence are not acceptable, then BUYER, no later
170 than the Due Diligence Deadline, shall either: (a) cancel this Agreement providing written notice to SELLER, in which event the Earnest Money deposit
171 shall be returned to BUYER; or (b) providing to SELLER a written notice setting forth BUYER's disapproved items.
172
173       (2). If BUYER does not within the strict time period specified take either of the actions stated in Section 17(B)(1), BUYER shall conclusively be
174 deemed to have: (a) completed all inspections, investigations, review of applicable documents and disclosures; (b) elected to proceed with the
175 transaction; (c) assumed all liability, responsibility and expense for repairs or corrections other than for items which SELLER has otherwise agreed
176 in writing to repair or correct; and (d) unless another condition or contingency set forth in an Addendum or Counteroffer remains unsatisfied, the
177 Earnest Money deposit shall become nonrefundable except upon an instance of SELLER's default.
178
179       (3). If BUYER timely provides notice of disapproved items to SELLER, BUYER and SELLER shall have five (5) business days after SELLER's
180 receipt of the notice of disapproved items in which to agree in writing upon the manner of resolving the disapproved items. If BUYER and SELLER
181 have not agreed upon the manner of resolving the disapproved items by the deadline, BUYER may cancel this Agreement by delivering
182 written notice to SELLER no later than fifteen (15) days after SELLER's receipt of the notice of disapproved items; whereupon the Earnest Money
183 deposit shall be returned to BUYER and neither party shall have any further rights or obligations under this Agreement. If BUYER does not give such
184 written notice of cancellation within the strict time periods specified, BUYER shall conclusively be deemed to have elected to proceed with the
185 transaction without repairs or corrections other than for items which SELLER has otherwise agreed in writing to repair or correct and the Earnest Money
186 deposit shall become nonrefundable except upon an instance of SELLER's default.
187

**18. SELLER REPRESENTATIONS AND WARRANTIES:** SELLER represents and warrants that the following statements are true and complete as
189 of the date of SELLER's execution of this agreement and shall be true as of the date of Settlement and Closing:
190     (a). There is no action, suit, administrative proceeding or other proceeding pending in any court or before any arbitrator of any kind or before or by
191 any governmental body or, to SELLER's knowledge, threatened against SELLER and/or the PROPERTY which may adversely affect this transaction;
192     (b). All work which will be performed in, on or about the PROPERTY or materials furnished to the PROPERTY which might, in any circumstance,
193 give rise to a mechanic's or materialman's lien will be paid and no such liens shall encumber the PROPERTY at the time of Settlement and Closing;
194     (c). SELLER has not received any written notice or citation indicating that the PROPERTY is in material violation of any applicable law;
195     (d). Neither SELLER nor any other person, to SELLER's knowledge, have ever caused or permitted any hazardous materials to be placed, held,
196 located or disposed of on, under, or at the PROPERTY in violation of applicable law; and
197     (e). To SELLER's knowledge, the consummation of the transaction contemplated by this Agreement does not and will not conflict with or result in a
198 material breach of any of the terms or provisions of any other agreement, arrangement, undertaking, accord, document or instrument to which SELLER is a
199 party or by which SELLER or the PROPERTY is bound.
200

**19. CONDITION OF PROPERTY AT CLOSING:** Upon expiration of the Due Diligence Deadline, BUYER agrees to purchase the PROPERTY in ~~as-~~
202 ~~is-condition~~ with all faults and with no further repairs required, subject only to the representations and warranties stated herein, or unless otherwise agreed
203 upon by the parties in writing. Upon Closing, BUYER will assume/all obligations with respect to the PROPERTY.

BUYER'S Initials ( _RTR_ )( ) Date _12/24/15_     SELLER'S Initials ( )( ) Date_____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

**PROPERTY ADDRESS: 669 Quinn** _____     **ID#:** FH 122315

204  **20.  OPERATIONS PRIOR TO CLOSING:** Between the parties' execution of this Agreement and Closing, and except otherwise agreed to by the
205  parties in writing, SELLER: (a) shall not execute any lease affecting the PROPERTY; (b) shall comply with all applicable laws affecting the PROPERTY; (c)
206  shall not create or force to be created any further monetary liens on the PROPERTY; (d) shall not make any substantial alterations or improvements to the
207  PROPERTY; (e) shall continue and maintain all current casualty and liability insurance policies covering the PROPERTY; (f) shall not use, produce
208  manufacture, generate, treat, handle, store, release or dispose of any hazardous material in, on or under the PROPERTY, except as permitted by applicable
209  environmental laws; (g) SELLER shall continue to operate the PROPERTY in the ordinary course of its business; and (h) maintain the PROPERTY in the
210  same or better condition than as existing on the date of Mutual Acceptance but shall not be required to repair material damage from casualty except as
211  otherwise provided by this Agreement.  After the Feasibility Period, SELLER shall not enter into or modify existing rental agreements or leases (except that
212  SELLER may enter into, modify, extend, renew or terminate residential rental agreements or residential leases in the ordinary course of its business),
213  service contracts, or other agreements affecting the PROPERTY which have terms extending beyond Closing without first obtaining BUYER's consent,
214  which shall not be unreasonably withheld.

216  **21.  CLOSING COSTS AND PRORATIONS:**  SELLER shall deliver an updated rent roll to Closing Agent not later than five (5) days before the
217  scheduled Closing date and any other information reasonably requested by Closing Agent to allow Closing Agent to prepare a settlement statement for
218  Closing.  SELLER certifies that the information contained in the rent roll is correct as of the date submitted.  SELLER and BUYER shall each pay one-half of
219  the escrow fees.  Real and personal property taxes and assessments payable in the year of closing; collected rents on any existing tenancies; interest;
220  utilities; and other operating expenses shall be pro-rated as of Closing.  If tenants pay any of the foregoing expenses directly, then Closing Agent shall only
221  pro rate those mortgage reserves for assumed financing for which BUYER receives the benefit after Closing.  BUYER shall pay all costs of financing
222  including the premium for the lender's title policy.  If the PROPERTY was taxed under a deferred classification prior to Closing, then SELLER shall pay all
223  taxes, interest, penalties, deferred taxes or similar items which result from removal of the PROPERTY from the deferred classification. At Closing, all
224  refundable deposits on tenancies shall be credited to BUYER or delivered to BUYER for deposit in a trust account if required by state or local law.  BUYER
225  shall pay any sales or use tax applicable to the transfer of personal property included in the sale.

227  **22.  POST-CLOSING ADJUSTMENTS, COLLECTIONS AND PAYMENTS:**  To the extent any items were prorated or credited at Closing based
228  upon estimates, BUYER and SELLER shall reconcile the actual amount of revenues or liabilities upon receipt or payment thereof after Closing.  Any bills or
229  invoices received by BUYER after Closing which relate to services rendered or goods delivered to the SELLER or the PROPERTY prior to Closing shall be
230  paid by SELLER upon presentation of such bill or invoice.  At BUYER's option, BUYER may pay such bill or invoice and be reimbursed the amount paid plus
231  interest at the rate of 12% per annum beginning fifteen (15) days from the date of BUYER's written demand to SELLER for reimbursement until such
232  reimbursement is made.  Notwithstanding the foregoing, if tenants pay certain expenses based on estimates subject to a post-closing reconciliation to the
233  actual amounts of those expenses, then BUYER shall be entitled to any surplus and shall be liable for any credit resulting from the reconciliation.  Rents
234  collected from each tenant after Closing shall be applied first to rentals due most recently from such tenant for the period after closing, and the balance shall
235  be applied for the benefit of SELLER for delinquent rentals owed for a period prior to closing.  The amounts applied for the benefit of SELLER shall be turned
236  over by BUYER to SELLER promptly after receipt.  SELLER shall be entitled to pursue any lawful methods of collection of delinquent rents but shall have no
237  right to evict tenants after Closing.

239  **23.  RISK OF LOSS OR NEGLECT:** Prior to closing of this sale, all risk of loss shall remain with SELLER. In addition, should the PROPERTY be
240  materially damaged by fire, neglect, or other destructive cause prior to closing, this agreement shall be voidable at the option of BUYER.

242  **24. SECTION 1031 TAX DEFERRED EXCHANGE:** If applicable, each party shall cooperate with the other Party in effectuating an exchange under
243  IRS Section 1031; provided however, that the other Party's cooperation shall be conditioned on the following: (a) the exchange shall be at no additional
244  liability and/or cost to the other Party; (b) the exchange shall not delay Settlement or Closing; and (c) the other Party shall not be required to acquire title to
245  any proposed exchange properties to accommodate an exchange.  The exchanging party shall indemnify, defend and hold the other Party harmless from
246  and against any and all claims, demands, costs and expenses which the other Party may sustain or incur resulting from the attempt by the exchanging Party
247  to consummate the sale or acquisition of the PROPERTY as a 1031 exchange.

249  **25.  POSSESSION:** SELLER shall deliver physical possession of the PROPERTY to BUYER with twenty-four (24) hours following Closing or at such other
250  date and time as is agreed to by the parties in writing.

252  **26.  TRANSMISSION OF DOCUMENTS:** Facsimile or electronic transmission of any signed original document, and retransmission of any signed
253  facsimile or electronic transmission shall be the same as delivery of an original.  At the request of either the BUYER or SELLER, or the lender, or the Closing
254  Agency, the BUYER and SELLER will confirm facsimile or electronic transmitted signatures by signing an original document.

255  **27. BUSINESS DAYS:** A business day is herein defined as Monday through Friday, 8:00 A.M. to 5:00 P.M. in the local time zone where the subject
256  PROPERTY is physically located. A business day shall not include any Saturday or Sunday, nor shall a business day include any legal holiday recognized
257  by the state of Idaho as found in Idaho Code §73-108. The time in which any act required under this agreement is to be performed shall be computed by
258  excluding the date of execution and including the last day. The first day shall be the day after the date of execution. If the last day is a legal holiday, then the
259  time for performance shall be the next subsequent business day.

261  **28. CALENDAR DAYS:** A calendar day is herein defined as Monday through Sunday, 8:00 A.M. to 5:00 P.M., in the local time zone where the subject
262  PROPERTY is physically located. A calendar day shall include any legal holiday. The time in which any act required under this agreement is to be performed
263  shall be computed by excluding the date of execution and including the last day, thus the first day shall be the day after the date of execution. Any reference
264  to "day" or "days" in this agreement means the same as calendar day, unless specifically enumerated as a "business day."

266  **29. DEFAULT:** If BUYER defaults in the performance of this Agreement, SELLER shall be entitled, as SELLER's sole and exclusive remedy, to
267  terminate this Agreement by written notice to the BUYER, in which event the Earnest Money deposit shall be paid to SELLER as liquidated damages.
268  If SELLER defaults, having approved said sale and fails to consummate the same as herein agreed, BUYER's Earnest Money deposit shall be returned to
269  him/her and SELLER shall pay for the costs of title insurance, escrow fees, credit report fees, inspection fees, Brokerage fees and attorney's fees, if any.
270  This shall not be considered as a waiver by BUYER of any other lawful right or remedy to which BUYER may be entitled.

BUYER'S Initials ( _RTR_ ) Date _12/24/15_          SELLER'S Initials ( ____ )( ____ ) Date_____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

instanet forms

271  **30. EARNEST MONEY DISPUTE / INTERPLEADER:** Notwithstanding any termination or breach of this Agreement, BUYER and SELLER agree
272  that in the event of any controversy regarding the Earnest Money and things of value held by Broker or closing agency, Broker may reasonably rely on the
273  terms of this Agreement or other written documents signed by both parties to determine how to disburse the disputed money. However, Broker or closing
274  agency shall not be required to take any action but may await any proceeding, or at Broker's or closing agency's option and sole discretion, may interplead
275  all parties and deposit any moneys or things of value into a court of competent jurisdiction and shall recover all costs which were incurred as a result of the
276  dispute including, but not limited to, reasonable attorney's fees. If either parties' Broker incurs attorney's fees as a result of any Earnest Money dispute,
277  whether or not formal legal action is taken, said Broker is entitled to recover actual fees incurred from either BUYER or SELLER.
278

279  **31. ATTORNEY'S FEES:** If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this
280  Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's fees, including such costs and fees
281  on appeal.
282

283  **32. SEVERABILITY:** In the case that any one or more of the provisions contained in this Agreement, or any application thereof, shall be invalid, illegal or
284  unenforceable in any respect, the validity, legality or enforceability of the remaining provisions shall not in any way be affected or impaired thereby.
285

286  **33. COUNTERPARTS:** This Agreement may be executed in counterparts. Executing an agreement in counterparts shall mean the signature of two
287  identical copies of the same agreement. Each identical copy of an agreement signed in counterparts is deemed to be an original, and all identical copies
288  shall together constitute one and the same instrument.
289

290  **34. AUTHORITY OF SIGNATORY:** If BUYER or SELLER is a corporation, partnership, trust, estate, or other entity, the person executing this
291  agreement on its behalf warrants his or her authority to do so and to bind BUYER or SELLER.
292

293  **35. ENTIRE AGREEMENT:** This Agreement, including any Addendums or exhibits, constitutes the entire Agreement between the parties and no
294  warranties, including any warranty of habitability or representations have been made or shall be binding upon either party unless herein set forth. All implied
295  warranties of merchantability and/or fitness for a particular purpose are hereby excluded.
296

297
298  **36. ACKNOWLEDGMENT OF PROFESSIONAL REVIEW:** BUYER and SELLER hereby acknowledge that their Broker and/or Agent advised both
299  parties to obtain professional inspections of the PROPERTY, including inspections of the PROPERTY's title and platting, zoning requirements and the
300  PROPERTY's services and utilities. Additionally, BUYER and SELLER have been advised to obtain appropriate tax, accounting, legal or other professional
301  advice or counsel when necessary, including, but not limited to, independent legal review of this Agreement. Furthermore, it is acknowledged that the parties
302  Brokers and/or Agents have not made any representations or warranties or conducted any independent investigation of the condition or financial feasibility of
303  the PROPERTY. BUYER and SELLER have not relied on any marketing material or assertions of any Broker and/or Agent in determining the viability or
304  fitness of the PROPERTY for its intended purpose.
305

306
307  **37. REPRESENTATION CONFIRMATION:** Check one (1) box in Section 1 and one (1) box in Section 2 below to confirm that in this transaction, the
308  brokerage(s) involved had the following relationship(s) with the BUYER(S) and SELLER(S).
309

310  Section 1:
311  ...  A.  **The brokerage working with the BUYER(S) is acting as an AGENT for the BUYER(S).**
312  ...  B.  **The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S), without an ASSIGNED AGENT.**
313  ...  C.  **The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S) and has an ASSIGNED AGENT**
314      **acting solely on behalf of the BUYER(S).**
315  X  D.  **The brokerage working with the BUYER(S) is acting as a NONAGENT for the BUYER(S).**
316  Section 2:
317  X  A.  **The brokerage working with the SELLER(S) is acting as an AGENT for the SELLER(S).**
318  ...  B.  **The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S), without an ASSIGNED AGENT.**
319  ...  C.  **The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S) and has an ASSIGNED AGENT**
320      **acting solely on behalf of the SELLER(S).**
321  ...  D.  **The brokerage working with the SELLER(S) is acting as a NONAGENT for the SELLER(S).**
322

323  Each party signing this document confirms that he has received, read and understood the Agency Disclosure Brochure adopted or approved by the Idaho
324  real estate commission and has consented to the relationship confirmed above. In addition, each party confirms that the brokerage's agency office policy
325  was made available for inspection and review. EACH PARTY UNDERSTANDS THAT HE IS A "CUSTOMER" AND IS NOT REPRESENTED BY A
326  BROKERAGE UNLESS THERE IS A SIGNED WRITTEN AGREEMENT FOR AGENCY REPRESENTATION.
327

BUYER'S Initials (_____)(_____) Date 12/24/15          SELLER'S Initials (_____)(_____) Date_____

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the
Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

PROPERTY ADDRESS: 669 Quinn                                                    ID#: FH 122315

### 38. BUYER'S SIGNATURES:

...SEE ATTACHED BUYER'S ADDENDUM(S): _____ (Specify number of BUYER addendum(s) attached.)

BUYER ...does X does not currently hold an active Idaho real estate license. BUYER ... IS X IS NOT related to agent.

BUYER Signature *Roger T. Featherston*                BUYER (Print Name) *Roger T. Featherston*

If BUYER is an entity: Name of Entity: *Featherston Holdings*     Signor's Position: *President & CEO*

Date *12/24/15*  Time *10:30 Am* ...A.M. ...P.M.   Phone # _____   Cell # _____

Address *23679 Calabasas Rd #957*   E-Mail *FEATHERSTONroger777@Gmail.com*

City *Calabasas*   State *CA*   Zip *91302*   Fax # _____

BUYER ...does X does not currently hold an active Idaho real estate license. BUYER ... IS X IS NOT related to agent.

BUYER Signature *Roger T. Featherston*                BUYER (Print Name) _____

If BUYER is an entity: Name of Entity: *Featherston Holdings*  Signor's Position: _____

Date *12/24/15*  Time *10:35*  ...A.M. ...P.M.   Phone # _____   Cell # _____

Address _____   E-Mail _____

City _____   State _____   Zip _____   Fax # _____

### 39. SELLER'S SIGNATURES: On this date, I/We hereby approve and accept the transaction set forth in the above Agreement and agree to carry out all the terms thereof on the part of the SELLER.

SIGNATURE(S) SUBJECT TO ATTACHED COUNTER OFFER.
SIGNATURE(S) SUBJECT TO ATTACHED ADDENDUM(S) # *1*

SELLER ...does X does not currently hold an active Idaho real estate license. SELLER ... IS X IS NOT related to agent.

SELLER Signature *Earl T. Swift*                SELLER (Print Name) *Earl T. Swift*

If SELLER is an entity: Name of Entity: *First Pocatello Associates dba Gateway West*  Signor's Position: *General Partner*

Date *12/30/15*  Time *11:25* A.M. ...P.M.   Phone # *732-264-0089*   Cell # *732-245-3687*

Address *120 Francis Street*   E-Mail *swiftproperties@optonline.net*

City *Keyport*   State *NJ*   Zip *07735*   Fax # *732-888-0667*

CONTRACTOR REGISTRATION # (if applicable) _____

SELLER ...does ...does not currently hold an active Idaho real estate license. SELLER ... IS ... IS NOT related to agent.

SELLER Signature _____                SELLER (Print Name) _____

If SELLER is an entity: Name of Entity: _____  Signor's Position: _____

Date _____   Time _____   ...A.M. ...P.M.   Phone # _____   Cell # _____

Address _____   E-Mail _____

City _____   State _____   Zip _____   Fax # _____

CONTRACTOR REGISTRATION # (If applicable) _____

### LATE ACCEPTANCE

If acceptance of this offer is received after the time specified, it shall not be binding on the BUYER unless BUYER approves of said acceptance within calendar days (three [3] if left blank) by BUYER initialing HERE _____. If BUYER timely approves of SELLER's late acceptance, an initialed copy of this page shall be immediately delivered to SELLER.

This form is printed and distributed by the Idaho Association of REALTORS®, Inc. This form has been designed and is provided for use by the real estate professionals who are members of the Idaho Association of REALTORS®. USE BY ANY OTHER PERSON IS PROHIBITED. ©Copyright Idaho Association of REALTORS®, Inc. All rights reserved.

IN WITNESS WHEREOF, the Parties have set their hands effective the date first written above, and state that they are authorized to execute this agreement.

**BUYER:**

FEATHERSTONE HOLDINGS, a California corporation
By_____
   Its_____

**SELLER:**

FIRST POCATELLO ASSOCIATES, L.P.
an Idaho limited partnership
By _____
  Its _GENERAL_ _PARTNER_____