Blake S. Atkin ISB# 6903
Atkin Law Offices, P.C.
7579 North Westside Highway
Clifton, Idaho 83228
Telephone: (801) 533-0300
Facsimile: (801) 533-0380
Email: blake@atkinlawoffices.net

*Attorney for Plaintiff/Counterdefendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YELLOWSTONE POKY, LLC, an Idaho Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST POCATELLO ASSOCIATES, L.P.,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND ORDER**<br><br>Case No. 4:16-cv-00316-DCN |
| FIRST POCATELLO ASSOCIATES, L.P.,<br><br>Counterclaimant,<br><br>vs.<br><br>YELLOWSTONE POKY, LLC, FEATHERSTONE HOLDINGS, INC., and ROGER FEATHERSTON,<br><br>Counterdefendants. | |

On February 27, 2018, this Court by Memorandum Decision and Order dismissed pursuant to rule 12(b)(6) count one of Plaintiff's complaint alleging breach of contract. The basis on which this Court dismissed count one was the finding that the contract attached as an exhibit to the complaint failed to satisfy the Idaho statute of frauds by providing a legally-sufficient description of the Property. By this motion Plaintiff is asking the Court to revisit that February 27, 2018 order on the basis of newly discovered evidence in which the seller's General Partner admits, under oath, that the contract in question included all the property the Defendant ever owned in Idaho except for his personal residence that was specifically excluded in the language of the contract.

### Standard of Decision

The Court's February 27, 2018 decision is not a final order. As seen from the various motions that have been filed in this action, there is much adjudication left to be completed. Little discovery has been completed and Defendant is yet to make initial disclosures in the case. Plaintiff has filed a motion to amend. Defendant has filed a motion for summary judgment with respect to some, but not all, claims remaining in the case. Because the decision is not a final order it is subject to review.

> [A]ny order or other form of decision however designated, which adjudicates fewer than all the claims or the rights and liabilities of the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Rule 54(b) Federal Rules of Civil Procedure.

Plaintiff is not asking the Court to revisit the decision because Plaintiff disagrees with the Court about the ruling, but is seeking a modification of the ruling because new evidence, discovered on October 30, 2018, sheds a whole new light on the controversy and the application

of the statute of frauds to the agreement between the parties.  On October 30, 2018, just three days ago, Plaintiff discovered new evidence that justifies revisiting the February 27, 2018 decision and reinstatement of the claim.  This new evidence emerged when Plaintiff took the deposition of Earl T. Swift, General Partner of the seller who had signed the contract on behalf of the seller.  In that deposition, Mr. Swift, not once, but several times admitted, under oath that the contract he had entered into with the Plaintiff was for the sale of the entire property known as Gateway West Industrial Center consisting of 24 buildings in property enclosed by a chain link fence which he had relied upon when purchasing the property in 1990.  He even agreed that the deed by which his corporation had conveyed the property to the seller in 1990 containing a metes and bounds legal description was what was being sold in the contract between First Pocatello Associates, L.P. and the Plaintiff in this matter.   Mr. Swift's testimony under oath takes this agreement out of the statute of frauds.

### FACTS REVEALED IN THE DEPOSITION OF EARL T. SWIFT ON OCTOBER 30, 2018

1.   Earl T. Swift is the General Partner of the seller of the property, First Pocatello Associates, L.P.

> 8     A.  Yes, I'm the general partner.
>
> 9     Q.  Okay.  And that was going to be my next
>
> 10    question.  So you, personally, Earl Swift, is the
>
> 11    general partner of First Pocatello Associates?
>
> 12    A.  Yes, sir.

Deposition of Earl T. Swift dated October 30, 2018 at 14 (Rough draft)

2.   Mr. Swift is the only General Partner of the Seller and has full authority to make decisions for the L.P without permission from any other person.

Deposition of Earl T. Swift dated October 30, 2018 at 18-19 (Rough draft)

3.  The property being sold to Featherston was, besides his personal residence that was

specifically excluded by the language of the contract, the only property Mr. Swift had

ever bought in Idaho.

8    Q.  And we'll talk about that, because I think the

9    residence is referred to in one of the contracts.

10   A.  That's right.

11   Q.  But we'll talk about it.  So other than this

12   property and your residence, have you ever bought any

13   other property in Idaho?

14   A.  No.

Deposition of Earl T. Swift dated October 30, 2018 at 13 (Rough draft)

23   MR. ATKIN:  Thank you.  That's clearer.

24   Q.  (BY MR. ATKIN)  Let's look at the addendum to

25   the real estate purchase agreement, and the second page

1    of that addendum, which is page 12 of 24.

2   MR. BURNETT:  You are on it.

3   Q.  (BY MR. ATKIN)  And there it says under No. 7,

4   "Items Specifically Excluded in This Sale.  The

5   following items are specifically excluded from sale

6   under the agreement."  And A you have, "The seller's

7   personal residence commonly described as 1499 Partridge

8   Cove, Pocatello, Idaho."

9   Is that the home that you are talking about?

10   A.  Yes.

11   Q.  That's the only other property --

12  A.  I own in Idaho.

13  Q.  -- that you owned in Pocatello?

14  A.  Yes.

15  MR. BURNETT:  The only other real property.

16  Q  (BY MR. ATKIN)  Right, the only other real

17  property.  And all of the rest property of the real

18  property that you owned in Pocatello, you were selling

19  to Roger Featherston under this contract; correct?

20  A.  Yes.

Deposition of Earl T. Swift dated October 30, 2018 at 59-60 (Rough draft)

4.  The property being sold was referred to by Mr. Swift as Gateway West.  It consisted of
24 buildings, and was the whole property Mr. Swift had purchased in the '89 - '90 time
period.

22    Q.  And again, we're talking about the property

23     that you had entered into a contract with Roger

24     Featherston to sell to him.  And you would refer to it

25     as the Gateway West property?

1    A.  Yes, sir.

12    Describe for me what Gateway West entails?

13    How many buildings, for instance, are included in

14    Gateway West?

15    A.  I believe, approximately, 24.

16   Q.  And each of those buildings is numbered?

17   A.  Yes.

18   Q.  Are they numbered consecutively; 1 through 24?

19  A.  No.

20  Q.  But there are approximately 24 buildings?

21  A.  Yes.

22  Q.  How many acres of ground?

23  A.  150 acres, I understand, by the tax bills.

24  Q.  And is this Gateway West project that you were

25  selling to Roger Featherston, is it the whole property

1   that you bought in the '89 and '90 time period?

2   A.  Yes.

3   Q.  And you or your company have owned it and

4   operated it through 1989 through present; you are still

5   operating it?

6   A.  Until now.

Deposition of Earl T. Swift dated October 30, 2018 at 15-17 (Rough draft)

5.  Mr. Swift repeatedly told his real estate brokers and others that he would sell the whole

property only, but he would not sell any parts.  For him it was sell it all or nothing.

13  Q.  And that's what you told Don Zebe?

14  A.  That's right.

15  Q.  You would sell the whole thing, but not a

16  portion of it?

17  A.  That's right.  I've told many people that.

Deposition of Earl T. Swift dated October 30, 2018 at 43 (Rough draft)

6.  The property being sold is easily identified because it is surrounded by a chain link fence

that has delineated the Gateway West property since before Mr. Swift owned it.

17   Q.  (BY MR. ATKIN)  Let me have you look at what's

18    been marked Exhibit 2.  And these are just good color

19    copies of those Exhibit A, that exist in Exhibit No. 1?

20   MR. BURNETT:  That's this one, and that's that

21   one.

22   THE WITNESS:  Okay.

23   Q.  (BY MR. ATKIN)  Let's get that on the record.

24   If you look at the first one, Exhibit No. 2, can you

25   tell me what that is showing?

 1   A.  I don't know what these numbers are.  I can't

 2   read them, but...  It would be basically the property by

 3   the perimeter it would mean more than anything.

 4   Q.  And do you know who prepared that exhibit?

 5   A.  No, not me.  I never saw one of these.

 6   Q.  Okay.  I'll find another witness that knows.

 7   Now, let me ask you about Exhibit 3.  Tell me what that

 8   is, if you know?

 9   A.  That's an aerial photograph of the property.

10   Q.  The Gateway West property?

11   A.  The Gateway West.

12   Q.  And you'll notice there are some pencil

13   drawings that are -- I don't know if they are pencils,

14   but there is an orange outline.  Do you see that?

15   A.  Yeah, that would match this one here

16   (indicating).

17  Q.  Okay.  And is that orange the perimeter of the

18  Gateway West property that was being sold?

19  A.  Yes.  Yes.

20  Q.  Is the property surrounded by a fence, or is

21  it enclosed somehow?

22  A.  It's all fenced in.

23  Q.  What kind of fence?

24  A.  Chain-link fence.

25  Q.  It goes all the way around the property?

1   A.  Yes.

2   Q.  So you can tell where the perimeter is on the

3    ground by walking the fence?

4    A.  Yes.  As a matter of fact, that's how the

5    determination when I bought it, they were trying to say

6    what was included.  I said the easiest thing is

7    everything inside the fence.

8    Q.  So the fence was there when you bought the

9    property?

10  A.  Yes.

Deposition of Earl T. Swift dated October 30, 2018 at 72-74 (Rough draft)

7.   Mr. Swift caused his corporation to convey the property to the seller in a warranty deed

with a metes and bounds legal description.  That property described in that warranty deed

is what Mr. Swift was selling to Roger Featherston and designated by 669 Quinn Road in

the contract at issue in this case.

16    A.  It's a warranty deed.  It's a legal

17    description from Pioneer Title if I'm not mistaken.

18    Q.  Okay.  And turning to the second page of the

19    deed, do you recognize whose signature that is?

20    A.  Yes, it's mine.

21    Q.  Now, this deed as I understand the document,

22    this was a deed transferring real certain real property

23    from early T Swift corporation to First Pocatello

24    Associates; is that correct?

25    A.  Yes, sir.

1    Q.  And again, as I understand the deed, it's

2    referring to an address called 669 West Quinn.  And it

3    says Building No. 2 Pocatello -- or, no, that's your

4    business address.  What I want to ask you is, is this

5    deed for 669 West Quinn --

6    A.  Yes.

7    Q.  -- the whole property?

8    A.  Yes.

9    Q.  And is the same property that --

10    A.  Our picture.

11    Q.  -- was described in Exhibit No. 1 on page 2,

12    where it says, 669 Quinn Road?

13    MR. BURNETT:  Object to the form of the

14    question; insofar as the description in Exhibit No. 1

15    has been held by a federal judge not to constitute an

16    adequate description of the property under the Idaho

17   Statute of frauds.

18   Q.  (BY MR. SEBASTIAN)  That's fine.  In your

19   mind, is the property that's referenced in the warranty

20   deed the property that was referenced as 669 Quinn Road

21   in the real estate agreement?

22   MR. BURNETT:  The same objection but you may

23   answer.

24   THE WITNESS:  Yes.

25   Q.  (BY MR. SEBASTIAN)  Okay.  And that's the

1    property that's been illustrated in an outline form on

2    Exhibit 3 and No. 2 and 3?

3    MR. BURNETT:  The same objection insofar as

4    those exhibits also have been held by a federal judge

5    not to constitute an adequate description of the

6    property under Idaho Statute of frauds.

7    Subject to that objection, you may answer.

8    THE WITNESS:  Yes.

9    Q.  (BY MR. SEBASTIAN)  Okay.  And at least from

10   your perspective, was there in regard to the real estate

11   and purchase sale agreement, did you have any question

12   in your mind that when it referred to the 669 Quinn Road

13   it was not the whole of the property that we've just

14   talked about that was in Exhibit this last Exhibit No. 7

15   and Exhibits 2 and 3?

16   MR. BURNETT:  The same objection.

17   You may answer.

18   THE WITNESS:  I believe it, you know, that

19   covers it.  The address covers, but I don't know if the

20   address 669, the metes and bounds, but it refers to

21   basically that property.

22   Q.  (BY MR. SEBASTIAN)  Let me rephrase it then

23    slightly.  In entering into the purchase and sale

24    agreement your intent was to to sell that property?

25    A.  In its entirety.

1    Q.  In its entirety.  Okay.  Thank you very much.


Deposition of Earl T. Swift dated October 30, 2018 at 141-144 (Rough draft)


**ARGUMENT**

The purpose of the statute of frauds is to shield persons with interests in land from being deprived of those interests by perjury, not to arm contracting parties with a sword they may use to escape bargains they rue.  *Flight Systems, Inc. v. Electronic Data Systems*, 112 F. 3d 124 (3d cir. 1997).  The statute of frauds is not a cure for seller's remorse.  For this reason modern courts universally have held that when a party admits under oath that the contract was entered into and admits under oath what it was meant to convey, the statute of frauds cannot be held as a bar to enforcement of the contract.  (This is commonly referred to as "the admissions exception" to the statute of frauds)

Counsel has been unable to find any case by the Idaho Supreme Court where it has adopted the admission exception to the Statute of Frauds.   In its only mention of the admission

exception to the statute of frauds, the Idaho Supreme Court refused to address the issue because

the proponent raised the issue for the first time on appeal.  Ray v. Frasure, 200 P.3d 1174, 1177

(Idaho 2009).  This Court is then left with the unenviable duty of trying to predict what the Idaho

Supreme Court would do if faced with this decision.  The Court is not left to make that

determination in a vacuum however.  Many courts have faced the issue and have universally

determined that there is and should be an admission exception to the statute of frauds so that the

statute does not itself become a vehicle for committing a fraud and refusing to perform what the

parties so clearly intended.  The Tenth Circuit Court of Appeals set out a useful framework for

making that analysis in the case of *Gibson v. Arnold*, 288 F.3d 1242 (10th Cir. 2002)

In *Gibson v. Arnold*, 288 F.3d 1242 (10th Cir. 2002), the tenth circuit reversed the trial

court's misreading of the tea leaves when it decided that the Oklahoma Supreme Court would

not apply the admission  exception to the statute of frauds.  Like Idaho, the Oklahoma Supreme

Court had never determined whether the admission exception to the statute of frauds would take

the contract in question out of the statute of frauds.

On analyzing the state of the law however, the Court of Appeals held that the District

Judge's projection of what the Oklahoma Supreme Court would do if faced squarely with the

question was wrong.  The court found it likely, on facts strikingly similar to those in this case,

that the Oklahoma Supreme Court would apply the admission exception to the statute of frauds

when given the chance.  Following the reasoning the Tenth Circuit Court of Appeals, this Court

should project that the Idaho Supreme Court, when faced with this decision would follow the

weight of judicial authority and adopt the admissions exception to the statute of frauds.

The court first noted that in attempting to predict the decision the Supreme Court of the state would make "we are free to consider all resources available, including decisions of [Oklahoma] courts, other state courts and federal courts, in addition to the general weight and trend of authority." *FDIC v. Schuchmann,* 235 F.3d 1217, 1225 (10th Cir.2000).

Interestingly, the Court did not find persuasive  the case of *Purcell v. Corder,* 33 Okla. 68, 124 P. 457 (Okla.1912)  in which the Oklahoma Supreme Court adopted language from an ancient New Jersey case that  "[a] defendant may answer and admit the parol agreement; but, if at the same time he insists on the protection of the statute [of frauds], no decree can be made against him merely on the ground of the admission of the agreement." *Id.* at 460 (quoting *In Van Dyne v. Vreeland,* 11 N.J.Eq. 370 (N.J.Ch.1857)).  The Tenth Circuit did not find this case persuasive of the direction the modern Oklahoma Supreme Court would take for two reasons.  First, because *Purcell* had been decided on a demurrer which the court analogized to a motion to dismiss, and not on facts showing that the defendant had "expressly admitted" in "sworn testimony" to all the material facts of the agreement. Secondly, the court noted that the case had been decided almost ninety years earlier and the Court of Appeals sensed a distinct shift in the courts with regard to the admission exception.  The Idaho Supreme Court has never made any statement even in dicta or in the distant past condoning the use of the statute of frauds to avoid freely made and acknowledged contractual obligations.

One important factor in the Court of Appeals decision not to follow the dicta in the ancient Oklahoma case was because it was "at odds with the growing weight of authority in this country because virtually every court that has addressed the issue during the last twenty-five years has held that judicial admissions are an exception to the statute of frauds."  The court made this impressive list of courts that had adopted the admission exception to the statute of frauds.  *Flight Sys., Inc. v. Elec. Data Sys. Corp.,* 112 F.3d 124, 127-28 (3d Cir.1997) (applying Pennsylvania law and holding that

Pennsylvania's statute of frauds does not bar an oral agreement if the party against whom the agreement is sought to be enforced admits to the existence of the contract in pleadings or testimony); *Consolidation Servs., Inc. v. KeyBank Nat'l Ass'n,* 185 F.3d 817, 820 (7th Cir.1999) (same, applying Indiana law); *Stoetzel v. Cont'l Textile Corp. of Am.,* 768 F.2d 217, 222 (8th Cir.1985) (same, applying Missouri law); *Anchorage-Hynning & Co. v. Moringiello,* 697 F.2d 356, 361-62 (D.C.Cir.1983) (same, applying District of Columbia law); *Paris Util. Dist. v. A.C. Lawrence Leather Co.,* 665 F.Supp. 944, 956-57 (D.Me.1987) (same, applying Maine law); *Timberlake v. Heflin,* 180 W.Va. 644, 379 S.E.2d 149, 152-53 (W.Va.1989) (same, applying West Virginia law); *Litzenberg v. Litzenberg,* 307 Md. 408, 514 A.2d 476, 480 (Md. 1986) (same, applying Maryland law); *Bentley v. Potter,* 694 P.2d 617, 621 (Utah 1984) (same, applying Utah law); *Adams-Riker, Inc. v. Nightingale,* 119 R.I. 862, 383 A.2d 1042, 1044-45 (R.I.1978) (same, applying Rhode Island law); *Herrera v. Herrera,* 126 N.M. 705, 974 P.2d 675, 679-80 (N.M.Ct.App.1999) (same, applying New Mexico law); *Davis v. Roberts,* 563 N.W.2d 16, 21 (Iowa Ct.App.1997) (same, applying Iowa law); *Wolf v. Crosby,* 377 A.2d 22, 26-27 (Del.Ch.1977) (same, applying Delaware law). *But see Key Design Inc. v. Moser,* 138 Wash.2d 875, 983 P.2d 653, 659-61 (Wash.1999) (declining to adopt judicial admission exception as an 1247*1247 exception to the requirement under Washington's statute of frauds that contracts for the sale of real property contain a legal description of the property); *Durham v. Harbin,* 530 So.2d 208, 212 n. 5 (Ala.1988) (recognizing strong arguments favoring judicial admission exception, but declining to depart from prior case law rejecting exception where the oral contract sued upon was not sufficiently admitted to by defendant).

As part of its analysis, the Tenth Circuit referred to Oklahoma's adoption of the Uniform Commercial Code's admission exception to the statute of frauds.  The Court noted that that provision did not apply directly to a real estate transaction, but found the legislative action relevant to the inquiry about what the Supreme Court would say about adopting such an exception and applying it to

the real estate statute of frauds because "[t]his sensible provision represents legislative recognition of a policy common to the statute of frauds."  Like Oklahoma, the Idaho legislature has adopted the admission exception to enforcement of the statute of frauds.  In Idaho a commercial contract which does not satisfy the statute of frauds writing requirement is enforceable "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made."  Idaho Code Section 28-2-201(3)(b).  No doubt, if given the opportunity, the Idaho Supreme Court would apply  "this sensible provision" to the facts of this case and find this contract enforceable despite its lack of a metes and bounds legal description.  "It cannot give a court any great satisfaction to permit a defendant to escape from performing a contract he admits he has made."  2 Corbin on Contracts Section 320 at 153 (1950).

The decision this Court made on February 27,  2018, made before there were judicial admissions by the seller that the contract was made and that the contract was for all of the property he owned in Pocatello except his personal residence, that the property which he agreed to sell to the Plaintiff was all of the property he had purchased in 1989 known as the Gateway West Industrial Center consisting of 24 buildings and encompassed in a chain link fence, and described in a metes and bounds description in a warranty deed he had signed, needs to be reversed on the basis of this newly discovered evidence and this matter set for completion of discovery and then trial.

Dated this 2nd day of November, 2018.

Atkin Law Offices, P.C.
Blake S. Atkin

_____
Attorneys for the Plaintiff/Counterdefendants

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2018, I served the foregoing MEMORANDUM IN

SUPPORT OF MOTION FOR RECONSIDERATION OF THIS COURT'S FEBRUARY 27,

2018 MEMORANDUM DECISION AND ORDER on the following party via e-mail:


Howard D. Burnett
Hawley Troxell Ennis & Hawley
412 W. Center St., Suite 2000
P.O. Box 100
Pocatello, ID  83204
Email: hburnett@hawleytroxell.com
Phone:  (208) 233-0845
Fax:  (208) 233-1304


_Jennifer Mariscal_
Jennifer Mariscal