Howard D. Burnett, ISB No. 3377
HAWLEY TROXELL ENNIS & HAWLEY LLP
412 West Center Street, Suite 2000
P.O. Box 100
Pocatello, ID 83204
Telephone:  208.233.0845
Facsimile:  208.233.1304
Email: hburnett@hawleytroxell.com

Justin Cranney, ISB No. 8061
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone:  208.344.6000
Facsimile:  208.954.5248
Email:  jcranney@hawleytroxell.com

Austin Strobel, ISB No. 9803
HAWLEY TROXELL ENNIS & HAWLEY LLP
2010 Jennie Lee Drive
Idaho Falls, ID 83404
Telephone:  208.529.3005
Facsimile:  208.529.3065
Email:  astrobel@hawleytroxell.com

Attorneys for Defendant/Counterclaimant
First Pocatello Associates, L.P.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YELLOWSTONE POKY, LLC, an Idaho Limited Liability Company,<br><br>       Plaintiff,<br><br>vs.<br><br>FIRST POCATELLO ASSOCIATES, L.P., a New Jersey limited partnership,<br><br>       Defendant. | Case No. 4:16-CV-00316-DVB<br><br>MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND ORDER |

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 1

FIRST POCATELLO ASSOCIATES, L.P.,

         Counterclaimant,

vs.

YELLOWSTONE POKY, LLC,
FEATHERSTON HOLDINGS, INC., and
ROGER FEATHERSTON,

         Counterdefendants.

Defendant/Counterclaimant First Pocatello Associates, L.P. ("First Pocatello") respectfully submits this memorandum in opposition to Plaintiff/Counterdefendant Yellowstone Poky, LLC's ("Yellowstone Poky's") Motion for Reconsideration of This Court's February 27, 2018 Memorandum Decision and Order.

## I.
## INTRODUCTION

On November 2, 2018, Yellowstone Poky filed its Motion for Reconsideration of this Court's February 27, 2018 Memorandum Decision and Order (the "Motion") [Dkt. 116], together with a Memorandum in Support of Motion for Reconsideration of This Court's February 27, 2018 Memorandum Decision and Order (the "Memorandum") [Dkt. 116-1]. Simply put, Yellowstone Poky asserts that the Court should reconsider its dismissal with prejudice of Yellowstone Poky's breach of contract claim in the Court's February 27, 2018 Memorandum Decision and Order (the "Memorandum Decision") [Dkt. 97] – and now *make new law* in Idaho – because: (1) Earl Swift testified on October 30, 2018 – in a non-party deposition given in an entirely separate state court action brought by Yellowstone Poky against

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND ORDER - 2

realtor Don Zebe and Intermountain Real Estate Idaho, LLC – that Mr. Swift intended for First Pocatello to convey to the prospective purchaser all of the property owned by First Pocatello in Idaho except for Mr. Swift's personal residence; and (2) under Tenth Circuit precedent interpreting Oklahoma state law, such testimony would meet a "judicial admissions" exception to the statute of frauds.

As a threshold matter, Yellowstone Poky's attempt in its Memorandum to reframe First Pocatello's invocation of the statute of frauds "as a sword to escape a bargain it rues" or as "a cure for seller's remorse" (*see* Dkt. 116-1 at 11) is, at best, revisionist history and, at worst, a blatant attempt to mislead the Court.  In fact, nothing could be further from the truth with respect to the undisputed factual context of this case.  First Pocatello wanted to sell the entire Gateway West Industrial Center ("GWIC") property to the prospective purchaser (and Earl Swift truthfully so testified in the deposition testimony appended to Yellowstone Poky's Memorandum).  First Pocatello prepared and submitted to the title company all of the paperwork necessary to close, and First Pocatello showed up at the scheduled June 28, 2016 closing ready to sign the documents of sale (*see* Dkt. 110-2 at 9), only to learn of the filing that very day by Yellowstone Poky of this lawsuit.

By contrast, neither Roger Featherston nor his company *ever* provided the required proof of funds to close the then-anticipated $21 million dollar transaction.  Neither Roger Featherston nor his company *ever* delivered to the title company *any* of the paperwork necessary to close the transaction.  Roger Featherston did *not* show up at the June 28, 2016 closing. *Id.* Instead, Roger Featherston, through a purported successor-in-interest entity, Yellowstone Poky, initiated

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 3

litigation against First Pocatello, presumably as a means of delaying the day of reckoning because Mr. Featherston and his company simply did not have (and never have demonstrated any proof of) the financial wherewithal or availability of funds to make the then-anticipated $21 million dollar purchase of the GWIC.

In short, First Pocatello did not invoke the statute of frauds because of "seller's remorse" or as a "sword to escape a bargain it rued." First Pocatello wanted to and was prepared to close a $21 million transaction. Rather, First Pocatello invoked the statute of frauds as a defense to a lawsuit that had been *instigated by Yellowstone Poky* as a delay tactic to tie up the property indefinitely as Roger Featherston searched for funds or investors to close the then-anticipated sale of the GWIC. By this latest Motion, Yellowstone Poky is simply undertaking yet another attempt to prolong this litigation and further tie up the GWIC property.

In any event, Yellowstone Poky's argument in support of reconsideration is completely without merit. Succinctly stated, Yellowstone Poky's argument fails because: (1) this Court – in its thoroughly-reasoned Memorandum Decision – properly identified and correctly applied the controlling Idaho state law on the statute of frauds with respect to the adequacy of property descriptions in real estate purchase and sale agreements; and (2) there exists no reasonable basis to suggest that the Idaho Supreme Court would be willing to functionally overturn more than 100 years of Idaho Supreme Court precedent by adopting a "judicial admissions" exception to the statute of frauds in the context of a *real estate* transaction.

Accordingly, and for the reasons more fully set forth below, First Pocatello respectfully requests that the Court deny Yellowstone Poky's Motion for Reconsideration.

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 4

## II.
## LEGAL STANDARD

District courts in the Ninth Circuit have the inherent authority to entertain motions for reconsideration of interlocutory orders. *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("[I]nterlocutory orders ... are subject to modification by the district judge at any time prior to final judgment."); *see also* Fed. R. Civ. P. 54(b); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989). "To determine the merits of a request to reconsider an interlocutory order, the court applies the standard required under a Rule 59(e) reconsideration motion." *Philippe Charriol Int'l Ltd. v. A'lor Int'l Ltd.*, No. 13-CV-01257-BAS(JLB), 2015 WL 11254685, at *1 (S.D. Cal. Mar. 30, 2015).

However, granting reconsideration is a matter of judicial discretion, and is considered an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotation marks omitted). A losing party cannot use a Rule 59(e) motion to relitigate old matters or to raise arguments that could have been raised before the entry of judgment. *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  Rather, there are four limited grounds upon which a motion for reconsideration may be granted: (1) the motion is necessary to correct manifest errors of fact or law; (2) the moving party presents newly discovered evidence; (3) reconsideration is necessary to prevent manifest injustice; or (4) there is an intervening change in the law. *Vanzant v. Wilcox*, No. 115CV00118BLWCWD, 2018 WL 4762115, at *1 (D. Idaho Oct. 2, 2018) (citing *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003)).

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 5

## III.
## ARGUMENT

**A.    The Motion for Reconsideration should be denied because this Court correctly applied well-settled Idaho law on the strict application of the statute of frauds to property descriptions in real estate transactions in its February 27, 2018 Memorandum Decision and Order.**

Notably absent from Yellowstone Poky's Motion and Memorandum is any assertion that

the Court improperly identified or applied the applicable Idaho law on the statute of frauds with

respect to the adequacy of property descriptions in real estate purchase and sale agreements.  As

the Court stated in its Memorandum Decision:

> "A description of real property must adequately describe the property so that it is possible for someone to identify 'exactly' what property the seller is conveying to the buyer." *Id.* at 1178 (quoting *Garner v. Barschi*, 80 P.3d 1031, 1036 (Idaho 2003) ). A description "will be sufficient so long as quantity, identity or boundaries of property can be determined from the face of the instrument, or by reference to extrinsic evidence to which it refers." *Id.* (quoting *City of Kellogg v. Mission Mountain Interests Ltd., Co.*, 16 P.3d 915, 920 (Idaho 2000) ).

>> Whether a description is such that the property can be 'exactly' identified is an objective determination made by the court. *This objective determination is not affected by the understanding or intentions of the contracting parties at the time they drafted the property description. Such considerations are irrelevant.* They do not aid the court in determining whether the *document itself*, *standing alone* (including any outside materials *directly* referenced therein) meets the necessary qualifications.

> *The David and Marvel Benton Trust v. McCarthy*, 384 P.3d 392, 398 (Idaho 2016).

> The Idaho Supreme Court has made clear that these principles are both well-established and long-standing: "For over 100 years, this Court has held that a contract for the sale of real property must speak for itself and that a court may not admit parole evidence to supply any of the terms of the contract, including the description." *Ray v. Frasure*, 200 P.3d at 1177; *see also Magnolia Enters., LLC v. Schons*, No. 08CV376, 2009 WL 1658022, at *3-4 (D. Idaho June 11, 2009)

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 6

(recognizing that "[t]his standard [that the property be identified without resort to parole evidence] is as strict as it appears," and [t]he decisions of the Idaho Supreme Court indicate that this requirement is exacting).

Memorandum Decision [Dkt. 97] at 6-7 (emphasis added). Applying this well-settled Idaho law to the undisputed facts of this case, the Court properly reached its conclusion that "[n]one of the Property 'identifiers' listed in the Agreement contain an adequate description of the Property, and none of the 'identifiers' are references to extrinsic documents that themselves contain an adequate description of the property. Even combining all of the 'identifiers' in the Agreement, an adequate description of the property would still require extrinsic evidence not expressly referenced in the Agreement, which would be in violation of the statute of frauds." *Id.* at 14.

As set forth more fully below, neither the alleged "new evidence" nor the Tenth Circuit precedent cited by Yellowstone Poky has any bearing whatsoever on the correctness of the Court's Memorandum Decision.  The Motion for Reconsideration should be denied.

**B.**    **The Motion for Reconsideration should be denied because the Idaho Supreme Court would not adopt a "judicial admissions" exception to the statute of frauds in the context of real estate transactions.**

Rather than asking this Court to reconsider its application of well-settled Idaho law, Yellowstone Poky implores the Court instead to make *entirely new law* by adopting in this litigation's *real property* transaction context a "judicial admissions" exception to the statute of frauds along the lines of an exception purportedly adopted by the Tenth Circuit in *Gibson v. Arnold*, 288 F.3d 1242 (10th Cir. 2002), a case interpreting Oklahoma state law.[1]  Yellowstone

_____

[1] While this Court has no need even to consider the content of Earl Swift's deposition testimony given well-settled Idaho law that renders such parole evidence irrelevant to a real estate statute of

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 7

Poky expressly concedes that no Idaho Supreme Court case has ever adopted a "judicial admissions" exception to the statute of frauds, let alone in the context of a real estate transaction. Memorandum [Dkt. 116-1] at 11 ("Counsel has been unable to find any case by the Idaho Supreme Court where it has adopted the admission exception to the Statute of Frauds.").

Yet, despite the complete and undisputed absence of any Idaho case adopting a "judicial admissions" exception that would take a real estate transaction outside the statute of frauds, Yellowstone Poky argues that the Idaho Supreme Court would adopt a "judicial admissions" exception in this context if given the opportunity because: (1) other courts have adopted a "judicial admissions" exception (Memorandum at 12-15); and (2) Idaho has adopted a "judicial admissions" exception by statute for UCC commercial sales transactions (Memorandum at 15). As discussed below, both of these arguments are without merit.

---

frauds analysis, First Pocatello notes simply as a matter of completeness that there exists a variety of reasons why Mr. Swift's testimony does not, as a matter of law, rise to the level of a judicial admission that would fit within any exception urged by Yellowstone Poky. First, authority in other jurisdictions holds that deposition testimony can *never* qualify as a judicial admission, largely because witnesses are free to change their testimony at trial and thereby risk being impeached. *See Lasalle National Bank v. Freshfield Meadows, LLC,* 69 Conn. App. 824, 830, 798 A.2d 445 (2002) (distinguishing in-court testimony from deposition testimony; the latter is "not conclusive as a judicial admission"); *Bonner v. City of New Haven*, No. NNHCV116025382S, 2014 WL 1193524, at *4 (Conn. Super. Ct. Feb. 21, 2014); *Howell v. Am. Cas. Co. of Reading, Pennsylvania*, 96-0694 (La. App. 4 Cir. 3/19/97). Second, Earl Swift's percipient witness deposition testimony in his individual capacity (i.e., testimony *not* given in a FRCP 30(b)(6) deposition) is, as a matter of law, not binding on First Pocatello. Third, even if the testimony had been given in a Rule 30(b)(6) deposition of First Pocatello, Ninth Circuit case law is clear that a Rule 30(b)(6) designee's deposition testimony "does not absolutely bind the corporation in the sense of a judicial admission." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) (citing 7 James Wm. Moore, et al., *Moore's Federal Practice* § 30.25[3] (3d ed. 2016)).

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND ORDER - 8

i.     **More than 100 years of unequivocal Idaho precedent utterly rebuts any speculative assertion that Idaho's Supreme Court would adopt a "judicial admissions" exception that would take a real estate transaction outside the statute of frauds.**

With respect to Yellowstone Poky's first argument that the Idaho Supreme Court would, if given the opportunity, adopt a "judicial admissions" exception to the statute of frauds, Yellowstone Poky relies on *Gibson v. Arnold*, 288 F.3d 1242 (10th Cir. 2002), a Tenth Circuit case interpreting Oklahoma state law. What Yellowstone Poky fails to point out is that *Gibson* upheld an *oral litigation settlement agreement* (*not* a real estate contract) based on the judicial admissions on *two occasions* in *open court* by one of the parties. *Gibson*, 288 F.3d at 1246 ("Arnold has expressly admitted in court, both in his sworn testimony in this case and at the settlement conference before the magistrate judge in the conversion case, that he agreed to the settlement agreement and all of its material terms."). The present litigation pending before this Court is readily distinguishable from the facts of *Gibson*, because it does not involve an oral settlement agreement at all, let alone an oral settlement agreement that was admitted to in open court by the party belatedly seeking the protection of the statute of frauds. Further still, the present case is a *real property case* with well-defined Idaho law specifically addressing the application of the statute of frauds in a real property transaction context. Simply put, the factual context of *Gibson* is completely inapposite to the factual context present here.

Moreover, the present case is also distinguishable in that the judicial admissions in *Gibson* occurred *before* the statute of frauds had been invoked (evidencing an intent by Mr. Arnold in the *Gibson* case to extricate himself from a bargain he had twice admitted to in open court), whereas here, the purported "judicial admission" of Earl Swift (namely, that he intended

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 9

for First Pocatello to sell the entirety of the GWIC property) occurred more than two years *after* First Pocatello first invoked the statute of frauds in this case, and nearly a year after this Court granted First Pocatello's motion to dismiss with prejudice Yellowstone Poky's breach of contract claim based on the real estate contract's failure to comply with the statute of frauds (thus evidencing from the outset First Pocatello's good faith invocation of the statute of frauds only as a defense to a lawsuit *instigated by Yellowstone Poky*).   In any event, and as stated above, Mr. Swift's so-called "judicial admission" was simply a truthful statement of his *intent* for First Pocatello to sell the entirety of the Gateway West Industrial Center – and that *intent* has never been disputed.   Unfortunately for Yellowstone Poky, Idaho law simply does not allow for extrinsic evidence of the parties' *intent* to override the actual documentary content of the property description in a deed or  in a real estate purchase and sale agreement (inclusive of documents directly and expressly referenced therein).   Adopting Yellowstone Poky's proposed "judicial admissions" exception to the statute of frauds in a real estate context would do just that, and would functionally overturn more than 100 years of Idaho Supreme Court precedent.

Moreover, the Tenth Circuit in *Gibson* qualified its holding with the proviso that its ruling was limited to the egregious facts of that case:

> *Although we are not prepared to predict that the Oklahoma Supreme Court would adopt the judicial admission exception for all oral contracts covered by Oklahoma's statute of frauds*, we predict that the Court would adopt at least a limited variation of the exception if it had to decide this case given that: (1) Arnold unequivocally admitted under oath at the trial in this case that he agreed to all of the material terms of the settlement agreement; (2) Arnold admitted and expressly agreed to the terms of the settlement agreement at a court-ordered settlement conference before a United States magistrate judge; and (3) the net result of the district court's ruling is not that the parties are returned to the pre-agreement status quo, but instead Arnold would receive a judicial windfall with

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 10

> no liability despite his express admission that "he willfully injured the property of
> Mr. Gibson to the extent of value loss to Mr. Gibson in the sum of $400,000.00."

*Gibson*, 288 F.3d at 1247 (emphasis added).  Frankly, the equities in the present case are the complete opposite of those in *Gibson*.  Here, First Pocatello did not invoke the statute of frauds after twice judicially admitting to an oral settlement agreement in open court.  Here, First Pocatello will not be receiving any "windfall" as a result of its invocation of the statute of frauds. On the contrary, First Pocatello only invoked the protection of the statute of frauds in this case after it first learned at the scheduled June 28, 2016 closing of the anticipated transaction that Yellowstone Poky had elected instead to pursue litigation rather than consummate the transaction.

In any event, and as tacitly confirmed in *Gibson*, the question of whether a real property description satisfies a *state* statute of frauds is a question of *state* law.  While the Tenth Circuit in *Gibson* found that the Oklahoma Supreme Court, applying Oklahoma law, would adopt a "judicial admissions" exception under the specific, egregious facts of *Gibson* involving an oral litigation settlement agreement, nothing about Idaho's strict approach to the statute of frauds with respect to property descriptions in real estate contracts – which specifically precludes the consideration of extrinsic evidence of the parties' *intent* as to what was to be conveyed – suggests that the Idaho Supreme Court would adopt any kind of "judicial admissions" exception to the statute of frauds in a real property context.  Indeed, the adoption of such an exception – which would allow the purported *intent* of the parties to override the actual content of the property description (as contained in the agreement itself or in a document directly and expressly

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 11

referenced therein) – would swallow Idaho's statute of frauds requirements for real estate contracts and overturn more than 100 years of Idaho Supreme Court precedent.

>    **ii.    Idaho's statutory adoption of a judicial admission exception in the UCC commercial sales context does not foreshadow the adoption of a "judicial admissions" exception in the context of property descriptions in real estate transactions.**

Yellowstone Poky next argues that the Idaho Supreme Court would adopt a "judicial admissions" exception in the real estate context because the Idaho legislature has done so in the UCC context.  While it is true that Idaho adopted a "judicial admissions" exception to the statute of frauds for *commercial sales* transactions in its 1967 codification of the Uniform Commercial Code, no Idaho court has ever suggested that such an exception would also apply in a real estate conveyance context. *See* Idaho Code § 28-2-201(3)(b) (requiring that contracts for the sale of goods over $500 be in writing unless "the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made…").

A telling example of a state that has codified a UCC "judicial admissions" exception but flatly rejected the extension of that exception to real estate transactions is the state of Washington (notably located, by the way, in the Ninth Circuit, of which Idaho is part).  In the case of *Key Design Inc. v. Moser*, 138 Wash. 2d 875, 887, 983 P.2d 653, 660, *amended,* 993 P.2d 900 (Wash. 1999) – expressly acknowledged by Yellowstone Poky as contrary authority at the end of the long string citation to otherwise inapplicable cases appearing in Yellowstone Poky's own Memorandum (Dkt. 116-1 at 14) – the Washington Supreme Court acknowledged the state's adoption of a UCC "judicial admissions" exception, but then proceeded to *reject* the extension of that exception to real estate transactions, citing the Washington Supreme Court's

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 12

earlier decision in *Martin v. Seigel*, which held that "it is fair and just to require people dealing with real estate to properly and adequately describe it, so that courts may not be compelled to resort to extrinsic evidence in order to find out what was in the minds of the contracting parties." *Key Design Inc.*, 138 Wash. 2d at 883, 983 P.2d at 658 (citing *Martin v. Seigel*, 35 Wash. 2d 223, 228, 212 P.2d 107, 109 (1949)). The Washington Supreme Court in *Key Design Inc.* further stated:

> The defendant who admits to the legal description of a property while pleading the statute of frauds carries out the purpose of the *Martin* rule, which is to encourage parties to include such proper descriptions in their contracts so that courts will not have to resort to extrinsic evidence in order to find out what was in their minds. *Martin,* 35 Wash.2d at 228, 212 P.2d 107. A defendant is not perpetrating a fraud upon the court when he honestly admits to the legal description while insisting that a land contract without a proper description is unenforceable under *Martin.*

*Id.*

Finally, it hardly need be said that the commercial sale of goods is materially different from the sale of *real property*, and that real property transactions warrant more rigorously defined descriptive evidence of the property to be conveyed than what otherwise might suffice in a typical sale of commercial goods. Moreover, given the more than 100 years of consistent legal precedent in Idaho establishing exacting requirements for property descriptions in real estate contracts, it can safely be assumed that the Idaho Supreme Court would – like its Washington counterpart – hold that the legislative adoption of a "judicial admissions" exception to UCC sales of goods cannot be read as portending a similar adoption of a judicial admission exception in the context of a property description in a real estate transaction.  Indeed, the Idaho Supreme Court has had many opportunities since 1967 to overturn its strict application of the statute of frauds to

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 13

property descriptions in real estate transactions – yet not only has it not done so, but instead has repeatedly, consistently, and explicitly reinforced that strict application. *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 281-82, 92 P.3d 526 (2004); *Bauchman-Kingston P'ship, LP v. Haroldsen*, 149 Idaho 87, 91-92, 233 P.3d 18 (2008); *Ray v. Frasure*, 146 Idaho 625, 629, 200 P.3d 1174, 1178 (2009); *The David & Marvel Benton Tr. v. McCarty*, 161 Idaho 145, 151, 384 P.3d 392, 398 (2016).

## III.
## CONCLUSION

Based on the foregoing, First Pocatello respectfully requests that the Court deny Yellowstone Poky's Motion for Reconsideration of this Court's February 27, 2018 Memorandum Decision and Order [Dkt. 116].

DATED this 21st day of November, 2018.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By: /s/ Howard D. Burnett
Howard D. Burnett, ISB No. 3377

Attorneys for Defendant/Counterclaimant
First Pocatello Associates, L.P.

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND ORDER - 14

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of November, 2018, I electronically filed the foregoing MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND ORDER with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Blake S. Atkin                                              batkin@atkinlawoffices.net
ATKIN LAW OFFICES, PC

[Attorneys for Plaintiff/Counterdefendants]


   _/s/  Howard D. Burnett_____
          Howard D. Burnett

MEMORANDUM IN OPPOSITION TO MOTION FOR RECONSIDERATION
OF THIS COURT'S FEBRUARY 27, 2018 MEMORANDUM DECISION AND
ORDER - 15